IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| IN RE: CAPITAL ONE CONSUMER DATA SECURITY BREACH LITIGATION | ) ) ) ) | MDL No. 1:19md2915 (AJT/JFA) |

This Document Relates to ALL Cases

### APPLICATION OF NORMAN E. SIEGEL TO SERVE AS PLAINTIFFS' LEAD COUNSEL OR PLAINTIFFS' SETTLEMENT COUNSEL

**I.   Application for Lead Counsel or Co-Lead Counsel**

Based on the Court's criteria set forth in Pretrial Order #1 and Federal Rule of Civil Procedure 23(g), I respectfully submit that I am uniquely qualified to serve as Lead Counsel in this case. As explained below, I have led or substantively participated in nearly every major consumer[1] data breach case litigated over the last several years, including serving as court-appointed Lead Counsel in multi-district litigation in the *Equifax*, *Home Depot*, and *Quest* data breach cases. I also have extensive experience litigating data breach cases in this Circuit, including serving as a member of the plaintiffs' steering committee (PSC) in *Marriott* and as lead counsel in the key data breach standing case in the Fourth Circuit, *Hutton v. National Board of Examiners in Optometry*, 892 F.3d 613 (4th Cir. 2018).

**A.   Professional Experience in This Type of Litigation**

Over the last several years, I have devoted much of my practice to leading the largest data breach cases in the country, including representing consumers as Co-Lead Counsel and Chair of

---

[1] Many large data breach cases, including *Equifax*, *Home Depot*, and *Target* have included claims brought by both consumers and financial institutions that were litigated on separate tracks. Although representing financial institutions in these cases has some relevance, the legal issues and claims presented differ from those asserted by consumers. I have exclusively worked on behalf of consumers in these cases and am familiar with the unique issues presented in that context, including the threshold issue of standing.

1

the Settlement Committee in securing the $1.5 billion settlement in the Equifax data breach MDL before The Hon. Thomas Thrash in the Northern District of Georgia. I also recently served as Co-Lead Counsel in the *Home Depot* MDL (also before Judge Thrash), and as a member of the 3-lawyer PSC in the *Target* MDL before The Hon. Paul Magnusson in the District of Minnesota. I was also recently appointed as Co-Lead Counsel to lead the *Quest* track in the AMCA data breach litigation before The Hon. Madeline Cox Arleo in the District of New Jersey.

In addition to leading these important cases, I have also worked alongside leadership in several other large data breach MDLs, including as a member of the PSC leading the briefing committee in *Marriott*, and in *Anthem* and *Office of Personnel Management* where my firm represented a significant percentage of the named plaintiffs, and handled critical components of the litigation. Perhaps equally as important, I have served as lead counsel in several other non-MDL data breach class actions brought to successful resolution, as summarized in Exhibit A.

In *Target*, *Home Depot*, and *Anthem*, my firm took the lead in creating a proprietary database and handling intake and vetting of thousands of plaintiffs from all 50 states for consideration as class representatives in the consolidated proceedings. My firm briefed significant portions of the oppositions to the motions to dismiss in *Target*, *Home Depot*, *Equifax* and *Marriott*, and I was the lead negotiator of the settlement in *Home Depot* (which the court called an "exceptional result" and "the most comprehensive settlement achieved in large-scale data breach litigation") before leading negotiations in the historic *Equifax* settlement. By any measure, the Equifax settlement represents the largest data breach settlement recorded to date, and was the product of extraordinary efforts in first overcoming Equifax's motion to dismiss, and completing complex negotiations securing not just direct economic benefits to the class, but ground-breaking modifications to Equifax's data security never previously achieved in a data breach case.

Perhaps most relevant to the Court's consideration of threshold issues in this case, I served as Lead Counsel in *Hutton v. National Board of Examiners in Optometry*, a data breach class action where I successfully argued in the Fourth Circuit that the plaintiff had alleged Article III standing, reversing the District Court's dismissal. After remand, the case settled, and earlier this year received final approval. In approving the settlement, Chief Judge Bredar (D. Md.) found that the deal "reflects an outstanding result for the Class." The Court also noted the settlement's innovative terms, noting that: "Recovery for time spent dealing with the data breach, in particular, is highly beneficial to data breach victims, who often have little in the way of out-of-pocket loss, but who are required to spend tremendous amounts of time dealing with the effects of a data breach."

In addition to experience in data breach cases generally, I respectfully submit that my experience trying cases, including class actions, distinguishes my application. Although early settlements in data breach litigation are common and are to be encouraged, I am also uniquely qualified as Lead Counsel to take this case through trial, a skillset that also impacts the value of settlement. My firm is one of the few in the country that have successfully tried to verdict multiple class actions against Fortune 100 companies and multinationals, having won multi-million dollar jury verdicts for class plaintiffs three times in the last five years including a $34.3 million jury verdict I secured as lead trial counsel on behalf of a class of State Farm policyholders in *Vogt v. State Farm Life Ins. Co.*, No. 16-cv-4170 (W.D. Mo. 2018).

**B. Willingness and Availability to Commit to a Time-Consuming Project**

I will personally commit to this case as much time as needed to effectively and zealously represent the class and discharge the duties of Lead Counsel. If appointed, I will immediately engage defense counsel in charting the schedule for the litigation, and will attend the January 21, 2020, conference.

### C. Ability to Work Cooperatively with Others

One of the hallmarks of success as lead counsel in any complex case is the ability to work cooperatively and efficiently with other members of a team. I have a consistent track record of working cooperatively with others, including nearly all of the lawyers applying for leadership in this litigation. I also have a proven track record of working cooperatively across the aisle including with Capital One's lawyers at King & Spalding who also represented Home Depot and Equifax.

Although I am happy to work with any lawyers appointed by the Court, in submitting this application for Lead Counsel, I nominate John Yanchunis of Morgan & Morgan and Karen Hanson Riebel of Lockridge Grindal Nauen to serve as Co-Lead Counsel. I have worked with both Mr. Yanchunis and Ms. Riebel in data breach litigation, and believe they are well suited to serve as lead counsel here. Moreover, given the critical importance of local counsel in this district, I fully support the appointment of one or more lawyers experienced in this District, including Leonard Bennett, Kristi C. Kelly and Steven Webster. To the extent the Court appoints a PSC, I respectfully nominate Lew Garrison, Tom Loeser, and Sabita Soneji. As described in their respective applications, these lawyers have unique skillsets that will advance the prosecution of the litigation.

### D. Willingness to Commit Necessary Resources

Stueve Siegel Hanson is a 21-lawyer firm dedicated exclusively to litigation. My firm and I have a two-decade long history of providing all necessary resources to litigate cases where we have been provided the privilege of representing a class in multi-district litigation. As reflected in the attached resume, my firm will bring the necessary human capital to litigate this case – either on our own through the many talented attorneys who work in the data breach field or with Co-Lead Counsel. Moreover, my firm has sufficient economic resources to fund this case. My firm has never used nor sought litigation finance to fund any case, and I commit to not doing so here.

### E. Compensation Agreement

As contemplated by the Court's order, I will submit *in camera* my statement regarding compensation if this litigation is ultimately successful. Moreover, I recommend that the Court require *in camera* submission of periodic time reports so that the Court can consider the time and resources allocated to the case as it progresses, and can engage counsel as needed with any concerns regarding the efficiency of the prosecution of the litigation. As Lead Counsel I will enforce a rigorous timekeeping protocol consistent with these goals.

## II. Application for Settlement Counsel

In the event the Court selects different lead counsel from the pool of many qualified applicants, I respectfully submit that I am well suited to serve as Settlement Counsel. Designating Settlement Counsel is an emerging tool used in multi-district litigation and allows the Court to appoint "special settlement counsel separate from lead and liaison counsel." *See* Manual for Complex Litigation (Fourth), § 13.13. As discussed above, I was the lead negotiator for the class in the historic Equifax settlement, involving the same defense team from King & Spalding engaged by Capital One here. If not selected as lead counsel, I respectfully submit that I can serve the parties and the Court in this role if and when settlement discussions are appropriate. I have specifically addressed this option with Capital One's lead counsel David Balser, who has no objection to such an appointment.

Dated: November 18, 2019

Respectfully submitted,

/s/ *Norman E. Siegel*
Norman E. Siegel (*pro hac vice*)
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, MO 64112
Telephone: (816) 714-7100
siegel@stuevesiegel.com

/s/ *John G. Harnishfeger*
John G. Harnishfeger (Virginia Bar No. 36878)
**MURPHY, FALCON & MURPHY**
One South Street, Ste 2300
Baltimore, Maryland 21202
T: (410) 951-8744
F: (410) 539-6599
john.harnishfeger@murphyfalcon.com

*Counsel for Plaintiff in* Hilker v. Capital One Financial Corp. et al.*, No. 1:19-cv-00995*