IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| IN RE: CAPTIAL ONE CONSUMER DATA BREACH LITIGATION | MDL No. 1:19md2915 (AJT/JFA) |
| This Document Relates to ALL CASES | LEAD COUNSEL APPLICATION |

**Application of W. LEWIS GARRISON, JR. for LEAD COUNSEL**

**A. Applicant Information**

| | |
|---|---|
| Name | W. Lewis Garrison, Jr. |
| Law firm | Heninger Garrison Davis, LLC ("HGD") |
| Address | 2224 First Avenue North, Birmingham, AL 35203 |
| Email | lewis@hgdlawfirm.com |
| Phone | 205-326-3336 |
| Website | www.hgdlawfirm.com |
| Years of Practice | 36 years |
| Filed Case | *McDonough v. Capital One et. al.*; EDVA 1:19-cv-02947 |

**B. Local Counsel**

  **Steven Webster** of Webster Book, LLP has been my local counsel in this litigation since the start, and he supports my application for Lead counsel. HGD has a rich history working with Mr. Webster in complex litigation, most recently alongside him in thousands of Volkswagen "Clean Diesel" cases consolidated in Fairfax, VA under the Virginia Multiple Claimant Litigation Act. Mr. Webster was appointed lead counsel there, and his litigation skills, leadership, and dedication proved invaluable, as it would here. Mr. Webster has immense experience in this Court (73 cases), which is identified at Exhibit A.

**C. Applicant Support**

  I am supported for Lead counsel by Mr. Webster, Brian Gudmundson of Zimmerman Reed, Anne Regan of Helmuth & Johnson, and J. Andrew Meyer of Finn Law Group. I also have the support of Norman Siegel, of Stueve Siegel Hanson, and John Yanchunis, of Morgan & Morgan,

for a role on the PSC. This group of attorneys has substantial data breach experience, and accordingly, I support Mr. Gudmundson and Ms. Regan for the PSC and Mr. Siegel and Mr. Yanchunis for Lead roles. I wish to make it clear that, in the event the Court does not appoint me to a position of Lead, I would gratefully accept a role on the PSC if the Court appoints one.

**D. Professional Experience in This Type of Litigation**

In terms of data breach experience, I was most recently appointed by Honorable John A. Ross, U.S. District Judge, as Co-Lead Counsel in the *In Re: Ashley Madison Customer Data Security Breach Litigation*, MDL 2669. At the time, this data breach was one of the largest data breaches ever, exposing the data of 37 million users. In that case, like this one, the hacker had exploited particular knowledge of the systems employed by the hacked company to facilitate the hack. The stolen data was exposed to the public when it was placed on a server on the "dark web." That case had additional complexities because evidence was discovered in the stolen data that the hacked company had committed fraud. Despite this, my co-lead and I negotiated a favorable settlement and dismissal in less than 2.5 years.

My CV is Exhibit B, and it demonstrates I have practiced almost exclusively in the arenas of multi district litigation, class actions, and mass torts for the past 25+ years. I have held many and varied leadership roles, including as lead, co-lead, executive committee member, and PSC member, in MDLs throughout my career. I have also been appointed lead and co-lead class counsel in many federal and state courts, all of which are on my CV. I filed my first class action in the 1980s and became enamored with Rule 23 and its ability to recover sums for people where an individual case would not be cost effective. Within a few years of starting my practice, the bulk of my practice shifted to class action litigation, and when the JPML was formed, that quickly became a substantial part of my practice. I have litigated two cases in this District.[1]

---

[1] Cases 1:15-cv-02705-AJT-TRJ and 1:15-md-02627-AJT-TRJ in the *Lumber Liquidator* MDL.

**E.  Willingness and Availability to Commit**

I am already fully committed to this litigation.  I filed what I believe to be the second case in the country, and it was in this Division.  The day after a motion to transfer and consolidate this litigation (to another venue) was filed, I responded and sought to have the MDL assigned to Alexandria.  Once it was assigned here, I contacted all plaintiffs' counsel to host an "all hands" plaintiffs' counsel planning and strategy meeting, and that meeting was held on October 16, 2019, in Washington, DC.  That meeting was attended by over 30 firms. We secured a cybersecurity expert to speak at the meeting, and we also addressed topics such as relevant law in the Fourth Circuit, the likely mechanism of the Capital One breach, and other issues that could arise in the litigation.  Another purpose of the meeting was to gather as colleagues and to organize in anticipation of Pretrial Order #1 and the selection of leadership for this case. We believed that an organizational meeting might assist with efforts at reaching a consensus on leadership, or at the very least, allow people to meet others with whom they would like to work on the case.

When Pretrial Order #1 issued, and pursuant to that Order, HGD reached out to all Plaintiff counsel to gauge interest in those wishing to apply for leadership.   Although it became apparent no consensus would be reached, HGD transmitted the results of its efforts to keep all plaintiffs' counsel apprised of those seeking appointment. Additionally, HGD has retained one of the premier damages experts in the country for this type of case, and it has done substantial research on relevant Fourth Circuit law likely to govern the key issues here. Without doubt, if selected to serve as Lead or Co-lead Counsel for this MDL, I would continue my work here, and the litigation would be my top priority.  If selected for leadership, I will attend the January 21, 2020, Rule 16(b) Conference and will spearhead the tasks due before that conference, including responding to Defendants'

protective order proposal, formulating the Discovery Plan, creating the discovery depository and cost sharing proposal, proposing a statement of distinct legal issues, conveying Plaintiffs' thoughts on a representative complaint, and submitting a proposed litigation schedule.

**F.  Ability to Work Cooperatively with Others**

I have always put great effort into work cooperatively with others, and for one main reason—litigations run smoother and the work product of a collaborative effort is superior. In any large group of attorneys, there are differing opinions and difficult personalities. But in my experience, those influences force all attorneys to work harder and smarter, and differing opinions inevitably refine good work product into great work product. As noted above, I have already shown an ability to work with the group of attorneys in this litigation, and I will continue that collaborative approach to reach the best results for the plaintiffs.

**G.  Willingness to Commit Necessary Resources**

My firm and I have access to all the necessary resources to pursue this matter at the pace that is expected in this District. If we were not prepared for a rigorous schedule, we would not have filed our case in this District, nor would we have proposed this Division as this MDL's home. In terms of resources, HGD has approximately thirty (30) attorneys, and twenty (20) staff members at its disposal. In addition to myself, I have already dedicated three of my top partners to this case, and Mr. Webster is equally committed. As things progress, I will staff this case as needed.

As with most of its cases, HGD plans to fund this litigation itself. HGD does not need to make other funding arrangements that include any banks, third-party financiers, or vendors.

**H.  Compensation Arrangement Counsel Is Willing to Accept**

HGD's current fee arrangement with its individual clients is a standard 40% contingency fee arrangement. That said, given this litigation's development, HGD expects that this fee arrangement would be set aside in favor of a (a) percentage of the fund; or a (b) lodestar plus risk

multiplier, which are the two approaches used to assess reasonableness of fees in the Fourth Circuit. In terms of billing rates, HGD's rates are generally comparable to the ranges of the two matrices often employed in this District, including the Reilly Matrix (also known as the *Vienna Metro* matrix[2]) and the less favored Laffey Matrix[3] (the LSI model and U.S. Attorney's Office model[4]). HGD would also request its expenses incurred in prosecuting the litigation. Ultimately, HGD's fee request would focus on the time and effort expended, the nature and complexity of the services, the value of its services, and the results obtained, and it would be consistent with the rates charged in this District and only for such services deemed necessary and appropriate.

## I. Applicant Representation

I, W. Lewis Garrison, Jr., hereby represent that I am prepared to assume and discharge all duties of Lead Counsel personally. Although I am seeking a Lead role, I am also on a proposed slate submitted by Mr. Siegel and Mr. Yanchunis, where they recommend me for a role on the PSC, and I would gratefully accept such a role. It will take all levels of expertise and experience to do the best job for the plaintiffs in this case, and I have a long track record in complex litigation that would serve me well here. I would like to be a part of that team representing plaintiffs. Thank you for your consideration of my application in this matter.

---

[2] *Tech Systems, Inc. v. Pyles*, No. 1:12cv374 (GBL/JFA), 2013 U.S. Dist. LEXIS 110636, *19- 20 & n.4 (E.D. Va. Aug. 6, 2013); *Vienna Metro LLC v. Pulte Home Corp.*, No. 1:10cv502, Doc. 263 (E.D. Va. Aug. 24, 2011); *see also RECP IV WG Land Inv'rs, LLC v. Capital One Bank (USA), N.A.*, 93 Va. Cir. 282, 321 (Va. Cir. Ct. 2016). This matrix was developed by Craig C. Reilly, a prominent Virginia lawyer with substantial experience in federal court litigation.

[3] The Laffey Matrix is used as a guideline for reasonable attorneys' fees in the Washington/Baltimore area. *Smith v. Loudoun Cnty. Pub. Sch.,* No. 1:15cv956 (JCC/TCB), 2017 U.S. Dist. LEXIS 6474, at *8 n.1 (E.D. Va. Jan. 17, 2017) (*quoting Galvez v. Am. Servs. Corp.*, No. 1:11cv1351 (JCC/TCB), 2012 U.S. Dist. LEXIS 91070 (E.D. Va. June 29, 2012)).

[4] *Smith*, at *8, n.1 (*citing Salazar v. D.C.*, 991 F. Supp. 2d 39, 47 (D.D.C. 2014)). Several judges in E.D. Va. have found the LSI model to more accurately reflect the cost of legal services in this region. *Smith*, at *8, n.1 (further citation omitted)

Dated: November 18, 2019

Respectfully submitted by,

/s/ Steven T. Webster

**WEBSTER BOOK LLP**
Steven T. Webster
300 N. Washington St., Suite 404
Alexandria, Virginia 22314
Telephone: (888) 987-9991
Facsimile: (888) 987-9991
Email: swebster@websterbook.com

***On behalf of W. Lewis Garrison Jr.,***

/s/ W. Lewis Garrison, Jr.

**HENINGER GARRISON DAVIS, LLC**
W. Lewis Garrison, Jr. (ASB-3591-N74W)
2224 1st Avenue North
Birmingham, Alabama 35203
Email: lewis@hgdlawfirm.com
Telephone: (205) 326-3336
Facsimile: (205) 326-3332

***Attorneys for Plaintiff Rachel McDonough***

## CERTIFICATE OF SERVICE

I hereby certify that on this date a true copy of the above document was filed using this Court's ECF System which caused it to be served by electronic mail upon the attorneys of record.

Dated: November 18, 2019

/s/ Steven T. Webster
Steven T. Webster