**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)**

|  |  |  |
|---|---|---|
| | : | |
| | : | |
| | : | |
| IN RE: CAPITAL ONE CUSTOMER DATA | : | MDL No. 1:19-md-2915 (AJT/JFA) |
| SECURITY BREACH LITIGATION | : | |
| | : | |
| | : | |
| | : | |
| This Document Relates to All Cases. | : | |
| | : | |

**OBJECTION OF PIERCE BAINBRIDGE BECK PRICE AND
HECHT LLP TO LEAD COUNSELS' JOINT STATEMENT REGARDING CASE
CLASSIFICATION PURSUANT TO PARAGRAPH 12 OF PRE-TRIAL ORDER NO. 1**

Pierce Bainbridge Beck Price & Hecht LLP, counsel for plaintiffs in Case No. 1:19-cv-1454 (the "*Broderick* action," DE 84-1), submits this objection to the Joint Statement Pursuant to Paragraph 12 of Pre-Trial Order No. 1 (the "Joint Statement," DE 264) submitted jointly by Plaintiffs' Co-Lead Counsel and Defendants (collectively, "Lead Counsel"), and states as follows:

***There is no dispute*** that the *Broderick* action ***has no overlap*** with the complaints for which Lead Counsel intends to file a representative complaint. Not a single claim asserted in *Broderick* seeks to recover for injury from the so-called "Cyber Incident." Lead Counsel nonetheless maintain in their latest Joint Statement that all of the cases in this MDL, except for the *Minsky* securities case, should proceed on a single track. But they do not address any of the substantive reasons to treat the *Broderick* action separately that the *Broderick* plaintiffs raised in their Response to Lead Counsel's Second Joint Report.[1] *See* DE 263.

Simply put, the *Broderick* action is nothing like the other consumer cases in this MDL (the "Data-Breach Cases"), and it merits its own track. While the Data-Breach Cases seek damages

---

[1] Pursuant to Paragraph 12 of Pre-Trial Order No. 1 (DE 3), counsel for the *Broderick* plaintiffs met and conferred with Plaintiffs' Lead Counsel before submitting this Objection.

from the so-called Cyber Incident, based on alleged breaches of contractual and common-law duties, the *Broderick* action does not. Indeed, the *Broderick* action seeks no damages stemming directly from the Cyber Incident at all. Rather, the *Broderick* action alleges a conspiracy between Capital One and Amazon to fraudulently induce Capital One's customers to provide their sensitive financial data to Capital One to be stored and mined on the Amazon Web Service ("AWS") public cloud. The *Broderick* plaintiffs allege that this fraudulent conspiracy resulted in an overcharge to Capital One's customers, who agreed to interest rates and benefit levels that they never would have accepted had they known that their private financial information would be knowingly exposed to the risk of theft.

Thus, the *Broderick* action is not merely a similar data-breach case with a twist, or with a unique claim tacked on the end; it is a fundamentally different case that alleges distinct damages from completely different misconduct: a fraudulent conspiracy alleged in painstaking detail over a 118-page complaint. To date, Lead Counsel has not articulated any plan for the *Broderick* action, which leaves the *Broderick* plaintiffs in limbo, a result that is particularly troubling given the *Broderick* plaintiffs' pursuit of injunctive relief to address ongoing harm.

As discussed more fully below, this Court can—and should—put the *Broderick* action on its own track and allow coordinated discovery related to the Cyber Incident.

## I.   THE COURT HAS BROAD DISCRETION TO ORGANIZE THIS MDL TO ACCOMMODATE DIFFERENCES AMONG THE CASES.

"[T]he essential purpose of Congress in enacting [the MDL statute] was to permit the centralization in one district of all pretrial proceedings '[w]hen civil actions involving one or more common questions of facts [sic] are pending in different districts.'" *Matter of New York City Mun. Sec. Litig.*, 572 F.2d 49, 51 (2d Cir. 1978) (quoting 28 U.C. § 1407(a)). Because MDLs may contain many types of actions with differing degrees of overlap, transferee judges are accorded

broad latitude to "use separate tracks or other appropriate pretrial techniques to accommodate any differences among the actions." *In re Juul Labs, Inc., Mktg., Sales Practices, & Prod. Liab. Litig.*, 396 F. Supp. 3d 1366, 1367–68 (J.P.M.L. 2019). As the judge overseeing an MDL involving auction-rate securities recognized:

> The transferee judge, of course, has the authority to group the pretrial proceedings on different discovery tracks according to the common factual issues or according to each defendant if necessary for the just and efficient conduct of the litigation, and to schedule any discovery unique to particular parties, actions or claims to proceed in separate discovery tracks concurrently with the common discovery, thus enhancing the efficient processing of all aspects of the litigation.

*In re Merrill Lynch Auction Rate Sec. Litig.*, No. 09 MD 2030 (LAP), 2010 WL 2541227, at *2 (S.D.N.Y. June 11, 2010) (quoting *In re Multi-Piece Rim Prod. Liab. Litig.*, 464 F. Supp. 969, 974 (J.P.M.L. 1979)).

The fact that this MDL involves class actions provides an additional reason to avoid lumping all cases into a single track. Federal Rules of Civil Procedure 23(g)(1)(B) and 23(a)(4) require judges to ensure that class counsel can "fairly and adequately represent the interests of the class." In the context of MDLs, "[w]hen parties' interests conflict—or simply differ—fair and adequate representation generally requires that separate counsel be appointed for different groups of parties." Catherine R. Borden, *Managing Related Proposed Class Actions in Multidistrict Litigation*, FEDERAL JUDICIAL CENTER (2018) ("FJC").[2]

## II.    THE COURT SHOULD EXERCISE ITS DISCRETION TO PUT THE VERY DIFFERENT *BRODERICK* ACTION ON ITS OWN TRACK.

When determining whether to create separate groups or tracks for purported class actions

---

[2] Available at: https://www.fjc.gov/sites/default/files/materials/21/Managing_Related_Proposed_Class_Actions_in_Multidistrict_Litigation.pdf.

within a single MDL, the Federal Judicial Center counsels transferee judges to consider the "wide variety of possible dimensions along which to categorize the cases." *Id.* Here, the "dimensions" unique to the *Broderick* action tip pointedly to the creation of a separate track for at least six reasons: (1) the *Broderick* action seeks damages completely distinct from those sought in the Data-Breach Cases; (2) the *Broderick* action seeks remedies different from those sought in the Data-Breach Cases; (3) the *Broderick* action asserts different legal claims for different conduct than the Data-Breach Cases; (4) the *Broderick* action defines a broader class period for different conduct than the Data-Breach Cases; (5) the *Broderick* action has broader and more complex discovery needs than the Data-Breach Cases; and (6) the *Broderick* action involves the unique statutory and substantive requirements of the RICO statute, which is implicated in none of the Data-Breach Cases.

      1.      **The *Broderick* action seeks damages distinct from those sought in the Data-Breach Cases.**

Contrary to Lead Counsels' description of the cases brought by the so-called "Consumer Plaintiffs," the *Broderick* action does not seek damages for "harms the Consumer Plaintiffs allegedly suffered as a result of the [Cyber Incident]." Joint Statement at 1-2. As previously explained to the Court, the *Broderick* action "seek[s] relief for an ongoing fraud rather than for a one-time data theft." DE 120 at 2. *See also* DE 204 at 1 (distinguishing complaints seeking relief for the Cyber Incident from the *Broderick* complaint, which seeks relief for "ongoing, willful fraud by Amazon and Capital One"); DE 263 at 1-2 (explaining that Capital One customers were overcharged "based on the false pretense of security" represented by the Capital One-Amazon enterprise). *See generally* DE 84-1. From the perspective of the *Broderick* plaintiffs, the Cyber Incident is merely evidence of a larger, ongoing fraud perpetuated by the Capital One-Amazon Enterprise that resulted in significant overcharges to all of Capital One's customers. Because the

*Broderick* action seeks distinct damages for a different harm, it should not be lumped together with the Data-Breach Cases. *See also* FJC at 4-5 (noting that "even claimants of the same type may have different injuries" whose interests "will often be in conflict").

### 2. The *Broderick* action seeks remedies different from those sought in the Data-Breach Cases.

The *Broderick* action seeks to "[e]njoin Defendants from maintaining Class Members' sensitive personal information on the AWS cloud" and to "[e]njoin Defendants from maintaining web applications with permission to assume broadly defined IAM roles that provide access to the data lake." DE-84-1 at 117. Although some of the other complaints seek some form of injunctive relief regarding data security practices, to the best of Pierce Bainbridge's knowledge, only the *Broderick* action seeks to prevent Capital One from unreasonably aggregating customer information on AWS servers or maintaining broad IAM roles that allow data mining at the risk of security. Moreover, only the *Broderick* action seeks treble damages available for a RICO violation.

### 3. The *Broderick* action is premised on different conduct and asserts different causes of action than the Data-Breach Cases.

The *Broderick* action is the only case in this MDL that alleges that Capital One and Amazon entered into a fraudulent enterprise for the purpose of monetizing Capital One's customers' personal information for profit. Moreover, the *Broderick* action is the only case that identifies the root of the security vulnerability: Capital One and Amazon's decision to host and mine Capital One's customers' information in a "data lake" on AWS servers vulnerable to a widely known attack vector. The *Broderick* action is also the only case to detail the fraudulent nature of Cloud Custodian—Capital One and Amazon's supposed defense against security vulnerabilities.

Lead Counsels' suggestion that the *Broderick* action is grounded in the same breach of contract and common law claims as the Data-Breach Cases, Joint Statement at 2, is simply

incorrect. Unlike the *Broderick* action, the Data-Breach Cases bring claims for breach of contract, common-law fraud, unjust enrichment, and violations of various state-law consumer-protection statutes based on the Cyber Incident. The *Broderick* action does not include a single claim for damages from the Cyber Incident, and any similar legal theories asserted (*e.g.*, fraud-based torts) are for entirely different injuries. *See* DE 84-1 ¶¶ 330-50 (describing the RICO enterprise); *cf. In re: Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 3920353, at *1 (S.D.N.Y. July 15, 2016) (explaining that personal injury and wrongful death claims were on a separate track than economic loss claims notwithstanding that both brought a negligence cause of action). Put simply, there is no overlap in claims whatsoever between the *Broderick* action and the largely duplicative and overlapping cases for which Lead Counsel intends to file a representative complaint.

> **4.      The Class Period in the *Broderick* action is generally longer than that of the Data Breach Cases and involves different conduct.**

The Class Period in the *Broderick* action is at least as long as that in the Data-Breach Cases, and in most cases longer, because (as explained above) the *Broderick* action seeks relief for overcharges stemming from Defendants' misconduct in maintaining and mining sensitive customer information on the AWS cloud, not just from the Cyber Incident or allegations of inadequate data security practices. Thus, even to the extent that some of the Data-Breach Cases purport to extend their class period to the present, only the *Broderick* action bases its class definition on continuing harm to all Capital One customers, who are still being overcharged based on false representations about the security of the personal data they have entrusted to Capital One.

> **5.      The *Broderick* action has broader and more complex discovery needs than the Data-Breach Cases because it must discover evidence to establish the Capital One-Amazon RICO Enterprise.**

Because the *Broderick* action alleges a RICO conspiracy to deceive consumers into

providing Capital One with their sensitive financial data, discovery in the *Broderick* action necessarily will include at least the following topics that are not directly relevant to the Data-Breach Cases:

- How Capital One mines customers' data for profit;

- Capital One's decision to store customer data in a "data lake" in order to more effectively mine it;

- AWS's desire to attract financial institutions and other large companies to host data on AWS servers;

- Capital One's relationship with AWS, including joint ventures and exclusivity arrangements;

- Capital One and AWS's knowledge of security vulnerabilities in the AWS cloud;

- The development and marketing of Cloud Custodian as a purported solution to inherent vulnerabilities in the AWS cloud;

- Capital One and AWS's knowledge of the ineffectiveness of Cloud Custodian as a security measure;

- False statements by Capital One and Amazon to third parties and the public about the security of data hosted on AWS servers before the data breach;

- False statements by Capital One and Amazon to the public about the security of the data of Capital One's customers after the data breach.

Obviously, discovery about the Cyber Incident itself will be important to both the Data-Breach Cases and the *Broderick* action, and discovery about the Cyber Incident should be coordinated to facilitate the efficient resolution of these actions.

      **6.**      **The *Broderick* action implicates the unique statutory and substantive requirements of the RICO statute.**

The *Broderick* plaintiffs will have to prove that a RICO enterprise exists, that Defendants engaged in a pattern of racketeering activity, and that the proposed class's damages were proximately caused by the RICO Enterprise. To do that, the *Broderick* plaintiffs will require

discovery that is not coextensive with mere discovery into a one-off Cyber Incident. Indeed, the allegations of a RICO conspiracy between Capital One and Amazon plainly distinguish the *Broderick* action from the Data-Breach Cases.

In sum, the *Broderick* action is unlike any of the Data-Breach Cases in this MDL. Putting the *Broderick* action on a separate track will vindicate the MDL's purpose of "promot[ing] the just and efficient conduct" of consolidated actions, 28 U.S.C. § 1407(a), by (1) ensuring that the proposed classes are adequately represented, (2) advancing the discovery needs of the proposed classes, and (3) allowing motion practice to test the claims. Conversely, declining to separate out the *Broderick* action will elevate "assembly-line justice" over due process. *See, e.g.*, *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1250 (9th Cir. 2006) (reversing a district court's *sua sponte* dismissal of certain complaints in a MDL proceeding, because the lower court's failure to provide those plaintiffs "the individualized consideration to which they were entitled" sacrificed "due process and fundamental justice").

\*   \*   \*

In any event, Lead Counsel's strategy of simply brushing the *Broderick* action under the rug leaves it in an impermissible limbo. Lead Counsel (which includes the Defendants) know that the *Broderick* action does not fit within the representative complaint that Lead Plaintiffs' Counsel are preparing (and have virtually admitted as much), but they have refused to let the *Broderick* action proceed in any way (even ignoring it entirely in their recently filed proposed schedule). Defendants do not get to choose who sues them and for what, and Lead Plaintiffs' Counsel cannot leverage their authority to draft a representative complaint to impair an entirely distinct case that they do not purport to—and cannot—represent. The *Broderick* plaintiffs have brought different claims entirely, and neither Lead Plaintiffs' Counsel nor Defendants have explained why it would

be inefficient or improper for Defendants to respond separately to the *Broderick* complaint. In fact, it is puzzling that Lead Counsel so insistently resist any separate treatment at all.

### III.   CONCLUSION

For the reasons set forth above, and for all the reasons provided in its earlier submissions to this Court, Pierce Bainbridge objects to the Joint Statement's classification of the *Broderick* action as the same or substantially similar to the Data-Breach Cases, and respectfully requests that the Court place the *Broderick* action on a separate track for motion practice in this MDL. At a minimum, Defendants should have to respond separately to the entirely distinct set of claims asserted, and discovery should be coordinated.

Dated: January 13, 2020          Respectfully submitted,

/s/ Yavar Bathaee

Yavar Bathaee (admitted *pro hac vice*)
Michael M. Pomerantz (admitted *pro hac vice*)
David Hecht (admitted *pro hac vice*)
Maxim Price (admitted *pro hac vice*)
**PIERCE BAINBRIDGE BECK**
**PRICE & HECHT LLP**
277 Park Avenue, 45th Floor
New York, New York 10172
(212) 484-9866
ybathaee@piercebainbridge.com
dhecht@piercebainbridge.com
mprice@piercebainbridge.com
mpomerantz@piercebainbridge.com

/s/ Brian J. Dunne
Brian J. Dunne (admitted *pro hac vice*)
**PIERCE BAINBRIDGE BECK**
**PRICE & HECHT LLP**
355 South Grand Avenue, 44th Floor
Los Angeles, California 90071
(213) 262-9333
bdunne@piercebainbridge.com

9

*/s/ Andrew M. Williamson*
Andrew M. Williamson (VSB No. 83366)
Andrew J. Pecoraro (VSB No. 92455)
**PIERCE BAINBRIDGE BECK**
**PRICE & HECHT LLP**
601 Pennsylvania Avenue, NW
South Tower, Suite 700
Washington, DC 20004
202-318-9001 – Telephone
202-463-2103 – Facsimile
awilliamson@piercebainbridge.com
apecoraro@piercebainbridge.com

*Counsel for Andrew Broderick, Jacqueline Burke, Susan Corley, Lynn Fields, Kimberly Hernandez, Kristina Mentone, Mark Miller, Mordechai Nemes, Ryan Olsen, Debra Potzgo, Shawn Spears, Janett Stout, Cole Studebaker, and Jonathan Wong, each individually and on behalf of all others similarly situated.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of January 2020, I caused a copy of the foregoing to be e-filed and served via the Court's electronic filing system to all parties and counsel receiving electronic service.

/s/ Andrew M. Williamson
Andrew M. Williamson