UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| IN RE: CAPITAL ONE CONSUMER DATA SECURITY BREACH LITIGATION | ) ) ) | MDL No. 1:19md2915 (AJT/JFA) |

This Document Relates to ALL Cases[1]

### REPLY IN SUPPORT OF CAPITAL ONE'S MOTION TO COMPEL DISCOVERY RESPONSES FROM ALL PLAINTIFFS

"[W]hen a person chooses to file a lawsuit, she must be prepared to accept the duties attached to that choice, which include producing relevant information and properly participating in discovery." *LaFleur v. Dollar Tree Stores, Inc.*, No. 2:12-cv-363, 2013 WL 12181782, at *3 (E.D. Va. Oct. 7, 2013) (citation omitted). Lead Plaintiffs' Counsel argue that the overwhelming majority of named plaintiffs[2] should be exempt from this bedrock tenet of civil litigation because (i) Lead Plaintiffs' Counsel did not realize earlier that Capital One would seek discovery from all named plaintiffs, (ii) caselaw disfavoring "absent class member" discovery precludes discovery from the named plaintiffs not included in the Representative Complaint, and (iii) discovery from all named plaintiffs would be burdensome to Lead Plaintiffs' Counsel. None of these arguments is a reason to permit plaintiffs to avoid their discovery obligations and deprive Capital One of its

---

[1] This document relates to the consumer litigation, consisting of all cases consolidated in this multidistrict litigation proceeding other than the securities action styled *Minsky v. Capital One Financial Corporation*, No. 1:19-cv-1472.

[2] Throughout their Opposition, Lead Plaintiffs' Counsel misuse "Named Plaintiffs" to describe the nine plaintiffs identified in the Representative Complaint. This misnomer is especially confusing in light of their reliance on case law distinguishing "named plaintiffs" in class actions from "absent class members." The term should be reserved for its proper meaning—to refer to the 263 named plaintiffs who filed putative class action lawsuits against Capital One.

right to seek discovery from all named plaintiffs that is critical to its defense to those plaintiffs' claims and to its opposition to class certification of those claims.

> **A.**  *Lead Plaintiffs' Counsel's surprise is unfounded and, more importantly, is not a basis to deprive Capital One of necessary discovery.*

Lead Plaintiffs' Counsel devote the substantial majority of their Opposition (11 out of 16 pages) to asserting that Capital One changed its position with respect to the filing of a representative complaint or obtaining discovery from all named plaintiffs. Opp. at 1-2, 3-11. To the contrary, Capital One has consistently asserted its right to such discovery, including:

- Serving Requests for Production on December 20, 2019 that sought discovery from all plaintiffs (Ex. 1);

- Arguing for a superseding, Consolidated Complaint rather than a Representative Complaint (Dkt. 297);

- Raising its concerns on January 27, 2020, including discovery concerns, with Lead Plaintiffs' Counsel's plan to file a non-superseding representative complaint (*Id.*); and

- Serving Interrogatories on February 20, 2020 (before the representative complaint was even filed) that sought discovery from "any party named as a plaintiff in any Complaint" (Ex. 3).

Lead Plaintiffs' Counsel's argument that Capital One "abruptly reversed course" on March 17 to seek discovery from all named plaintiffs who filed complaints in this case simply is not true.

Nor did Capital One ever agree to limit discovery to the nine hand-selected plaintiffs named in the Representative Complaint. Lead Plaintiffs' Counsel fail to cite any agreement by Capital One that it would forego seeking discovery from all plaintiffs—because none exists. The statements Lead Plaintiffs' Counsel cite by Capital One's counsel (Opp. at 6-7, ¶¶ 1-3) simply acknowledge Lead Plaintiffs' Counsel's intent to file a representative complaint; they do not agree

with that approach, much less indicate that Capital One agreed to abandon its rights to obtain discovery from all plaintiffs.[3]

Finally, Lead Plaintiffs' Counsel's argument that Capital One had some obligation to raise the issue of discovery from all named plaintiffs at the January 29 status conference or Rule 16(b) conference ignores the order the Court had already entered that expressly permits such discovery. *See* PTO-1 [Dkt. 3] § 10.c (requiring the parties to propose and confer on discovery plans, including "[a] description of what fact information defendants require from **plaintiffs** as to defendants' alleged liability common to **all plaintiffs** or classes of plaintiffs" and "[a] general description of what individualized discovery, if any, defendants believe is appropriate from **each plaintiff** separately on liability issues." (emphases added)); *see also* Pretrial Order # 7 at 2, *In re Lumber Liquidators Chinese-Mfg'd Flooring Litig.*, No. 1:15-md-2627 (E.D. Va. Oct. 2, 2015), ECF No. 603. At bottom, Lead Plaintiffs' Counsel appear surprised that Capital One seeks discovery responses from all the named plaintiffs who have sued it—as PTO-1 contemplates and as the Court ordered in its previous MDL. That surprise, however, is unfounded, irrelevant and no basis to deny discovery.

---

[3] Lead Plaintiffs' Counsel's other "evidence" of Capital One's change in position is as follows: Capital One noticed depositions of representative-complaint plaintiffs first (*id.*, ¶ 5); Capital One agreed that Lead Plaintiffs' Counsel could identify their document sources after filing their Representative Complaint (Opp. at 8, ¶ 4); and Capital One's December document requests did not define "plaintiff" specifically to include all plaintiffs (*id.* at 9, ¶ 6). None of this shows an agreement to forego discovery from all named plaintiffs who are actively suing Capital One. Nor does Lead Plaintiff's Counsel explain why Capital One would make such a binding agreement (postured as an outright waiver of discovery rights), without any compromise from Lead Plaintiff's Counsel, at the earliest stages in the case. Presumably, had Lead Plaintiff's Counsel chosen a single plaintiff to name in the Representative Complaint, it nonetheless would be claiming that Capital One was bound to restrict its discovery to one individual representing .4% of the named plaintiffs. As it stands, Lead Plaintiff's counsel has hand-picked only nine individuals, all of whom are customers, and who only assert a subset of claims and factual allegations compared with other named plaintiffs. It is illogical to suggest Capital One would sign up for such an outcome in advance, with no line of sight into any of these circumstances.

### B. *Capital One has a legitimate need for discovery from all named plaintiffs.*

As Capital One explains in its opening Memorandum [Dkt. 384], the discovery it seeks from all named plaintiffs is aimed at the heart of their highly individualized and fact-specific claims, including their alleged identity theft, reliance, and financial injuries. *See* Mem. at 11. Lead Plaintiffs' Counsel do not dispute this. Rather, they argue, without any support, that such discovery should not be allowed because class certification should be decided solely on the basis of the representative-complaint plaintiffs. Opp. at 14-15. Lead Plaintiffs' Counsel argue that Capital One might discover and use individual issues regarding the named plaintiffs "to attack class certification." *Id*. They are correct: Capital One intends to vigorously oppose class certification in this MDL. The named plaintiffs seek to be members within the purported data breach class, and Capital One is entitled to discover information relevant to class certification.

Capital One is not limited to discovery from Lead Plaintiffs' Counsel's nine hand-picked plaintiffs. Instead, it is entitled to seek discovery from all plaintiffs as to whether the classes that plaintiffs seek to represent are certifiable. *See Doctor v. Seaboard Coast Line R. Co.*, 540 F.2d 699, 707 (4th Cir. 1976) (noting that a "court may, and often does, permit discovery relating to the issues involved in maintainability" of a class); *see also Paulino v. Dollar Gen. Corp.*, No. 3:12-cv-75, 2013 WL 1773892, at *9 (N.D. W. Va. Apr. 25, 2013) ("[D]istrict courts in the Fourth Circuit have held that 'discovery relating to class allegations is proper prior to certification' and 'the Court is unable to intelligently rule on the question [of class certification] without information from the parties, which is usually gathered through normal discovery.'"). Discovery from the representative-complaint plaintiffs alone would be insufficient. For example, the Representative Complaint purports to represent a class of "All persons in the United States whose PII was compromised in the Data Breach." Corrected Rep. Compl. [Dkt. 354] ¶ 146. Thus, Lead Plaintiffs' Counsel's alleged class extends to "people who had applied for its credit card products

***and*** to Capital One credit card customers." *See* Capital One, Form 8-K Ex. (Press Release) (emphasis added), *cited in* Corrected Rep. Compl. ¶ 1 n.1.  Cardholders and applicants have different claims with different alleged injuries.  *See* Corrected Rep. Compl. ¶¶ 18-27.  Yet no representative-complaint plaintiff is a person who applied for (but did not receive) a credit card; they ***all*** are Capital One cardholders.

Lead Plaintiffs' Counsel's argument also ignores Capital One's right to seek discovery from all named plaintiffs for other purposes, including developing its defenses to each individual named plaintiff's claims.  This is particularly important in this case because, even though numerous plaintiffs filed lawsuits alleging injuries (including identity theft) within days of the announcement of the incident, the stolen personal information never was disseminated.  *See, e.g.*, Gov't Br. 6, *United States v. Thompson*, No. 2:19-cr-159 (W.D. Wash. Sept. 20, 2019), ECF No. 49 ("[T]he Government has not uncovered any evidence that would suggest [the hacker's] claim that she neither sold, nor otherwise disseminated, any of the data is untrue.").  Capital One believes that the named plaintiffs will not be able to prove that their alleged injuries were caused by the theft of any information from Capital One.  At a minimum, it is entitled to conduct discovery into each named plaintiff's claim of injury and its purported cause.

The case law cited by Lead Plaintiffs' Counsel does not support their position.  Lead Plaintiffs' Counsel contend that discovery of the 263 named plaintiffs would "defeat the purpose of certifying the class in the first place."  Opp. at 14 (quoting *McPhail v. First Command Fin. Planning, Inc.*, 251 F.R.D. 514, 517 (S.D. Cal. 2008)).  But Lead Plaintiffs' Counsel omit the first half of the *McPhail* court's quote, which clearly references discovery of *absent class members*, *see* 251 F.R.D. at 517 (quoting *On the House Syndication, Inc. v. Fed. Exp. Corp.*, 203 F.R.D. 452, 453 (S.D. Cal. 2001))—an issue, as discussed below, that is unrelated to discovery of the named

5

plaintiffs in this MDL. Furthermore, the *McPhail* case was not an MDL, and the defendants sought discovery of 178,527 absent class members, which was rightly deemed "impracticable and unrealistic." *See id.* at 517-18. Unlike the defendants in *McPhail*, Capital One has legitimate needs for discovery from the named plaintiffs regarding their claims and alleged injuries.[4]

        **C.**     *Named Plaintiffs who filed class action lawsuits against Capital One are not "absent class members."*

Lead Plaintiffs' Counsel argue that "absent class member" discovery generally is disfavored. *See* Opp. at 11-13. Yet this argument is misplaced—none of the named plaintiffs from whom Capital One seeks discovery are "absent class members"; they are *named* plaintiffs who elected to file lawsuits against Capital One, and those lawsuits remain pending. Analogizing these individuals who took the time and effort to sue Capital One and maintain those suits to this day to individuals from the public, who have not opted into litigation in any way, makes little sense.

Lead Plaintiffs' Counsel gloss over this threshold defect in their argument by asserting that the 263 MDL plaintiffs are "absent class members with respect to the Representative Complaint." Opp. at 12. That assertion ignores the fact that the Representative Complaint does not supersede or displace any other complaint—a fact Lead Plaintiffs' Counsel do not dispute, and a result they deliberately chose. *See* Corrected Rep. Compl. [Dkt. 354] preamble, at 1-2 ("This is not a consolidated, wholly superseding complaint . . . ."). When the pretrial proceedings for which this MDL were created conclude, the member cases will be remanded for trial of the claims asserted by those cases' plaintiffs. *See* PTO-1 [Dkt. 3] at 1-2 & § 2; JPML Transfer Order [Dkt. 1] at 2;

---

[4] Similarly, Lead Plaintiffs' Counsel's reliance on *Curtis v. Propel Prop. Tax Funding, LLC*, 915 F.3d 234 (4th Cir. 2019), which also pertains to absent class members in a single class action, is misplaced. *See* Opp. at 14-15. Capital One is seeking discovery from *named plaintiffs*, not absent class members. Furthermore, the decision in *Curtis* involved whether the named plaintiff had Article III standing—an issue that is irrelevant to Capital One's Motion to Compel.

6

*see also, e.g.*, *In re Air Crash Disaster at Greater Cincinnati Airport*, 354 F. Supp. 275, 276 (J.P.M.L. 1973) (remanding individual MDL cases where "all pretrial proceedings have been completed and . . . the cases are now ready for trial in the transferor forums"). By objecting to discovery from the named plaintiffs, Lead Plaintiffs' Counsel are not seeking to avoid "absent class member" discovery; they are asking that Capital One face the prospect of being sent to trial in the transferor forums without the benefit of any discovery pertaining to the overwhelming majority of named plaintiffs.

Lead Plaintiffs' Counsel do not cite any authority that permits such an unjust outcome.[5] Indeed, in *Lumber Liquidators*, this Court rejected that possibility and specifically ordered all-plaintiff discovery in similar circumstances. Mem. at 8-9. Lead Plaintiffs' Counsel's sole response to that precedent is that their counsel talked to the *Lumber Liquidators* plaintiffs' lawyers, who told them that the discovery was allowed in that MDL "because the case involved personal injury claims." Opp. at 16. That assertion is belied by the *Lumber Liquidators* record. In objecting to the discovery requests at issue, the *Lumber Liquidators* plaintiffs stated that they were "not seeking" damages for "health claims" or "personal injuries." Ex. D to Jt. Notice at 4, 6-7, *Lumber Liquidators*, ECF No. 582-4 (plaintiffs' objections to certain requests in the fact sheets). Indeed, the cases in *Lumber Liquidators* were consumer class actions in which the plaintiffs claimed to have relied on the defendant's false representations about the safety of its products and thereby "suffered harm in the form of the purchase price of the floors, installation costs, replacement costs, and related pecuniary injuries." PTO-8 at 4, *Lumber Liquidators*, ECF No. 722 (order on motion

---

[5] The only purported examples Lead Plaintiffs' Counsel point to are the *Kmart* and *Equifax* data breach class actions, in which, Lead Plaintiffs asserts, "Defendant and its counsel have participated." Opp. at 2. Lead Plaintiffs' Counsel also participated in those cases and thus know that plaintiffs in those cases filed **consolidated, superseding complaints** that displaced all other complaints—unlike the Representative Complaint filed here.

to dismiss). In other words, the *Lumber Liquidators* plaintiffs asserted highly individualized claims of reliance and financial injury remarkably similar to the claims asserted by the 263 named plaintiffs in this MDL.

### D. *Coordinating necessary discovery responses from all plaintiffs is not overly burdensome for Lead Plaintiffs' Counsel.*

Finally, Lead Plaintiffs' Counsel complain that coordinating discovery responses from all named plaintiffs would be burdensome—stating that they already have spent "hours" obtaining responses from their nine representative-complaint plaintiffs. Opp. at 13. And they object to discussing with Capital One any method of streamlining discovery, through facts sheets or any other format, on the ground that "[i]t is not Plaintiffs' job" to do so. Opp. at 14.

The "job" Lead Plaintiffs' Counsel applied for and were given is explained in PTO-1: Lead Plaintiffs' Counsel are "generally responsible for coordinating the activities of *plaintiffs* during pretrial proceedings," and they are required to "[d]etermine and coordinate how discovery is to be conducted on behalf of *plaintiffs*," "[c]onduct settlement negotiations on behalf of *plaintiffs*," and "ensure that the pretrial preparation for the *plaintiffs* is conducted efficiently and effectively and is assigned fairly and appropriately among counsel who wish to assume responsibilities for conducting pre-trial matters on behalf of *all plaintiffs*." PTO-1 [Dkt 3] § 3.b (emphases added). Thus, coordinating discovery responses from the "plaintiffs"—who include all of the named plaintiffs in the MDL, not a curated subset—is exactly among Lead Plaintiffs' Counsel's responsibilities.

There is no reason that Lead Plaintiffs' Counsel cannot fully perform those responsibilities. The Court has entered a litigation schedule with fact discovery continuing until September 21, 2020—more than adequate time (barring unforeseen events) to allow complete discovery from all plaintiffs. *See* PTO-8B [Dkt. 360]. Indeed, as Judge Anderson noted at the initial status

8

conference, "It is a schedule that is considerably longer than what we're generally used to in our court." Jan. 29, 2020 Hr'g Tr. [Dkt. 306] at 6:5-7.[6] The Court allowed that schedule, nonetheless, due in large part to the number of parties from whom discovery would be taken. To the extent obtaining discovery responses from all plaintiffs in the extended time period is time-consuming or burdensome for a single attorney or firm, the Court's PTO-1 specifies a ready solution: it fully authorizes Lead Plaintiffs' Counsel to obtain assistance from, and delegate tasks to, other plaintiffs' lawyers (e.g., each plaintiff's own retained counsel).

Moreover, contrary to Lead Plaintiffs' Counsel's assertions (Opp. at 15), Capital One's discovery of named plaintiffs is "proportional to the needs of the case." *See* Fed. R. Civ. P. 26(b)(1). Whether a discovery request is proportional is determined by "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*. Lead Plaintiffs' Counsel seek certification of a class of up to 100 million members. Corrected Rep. Compl. ¶¶ 1-2, 146. Furthermore, the potential burden of coordinating and responding to discovery for the 263 named plaintiffs *pales* in comparison to the significant burdens imposed on Capital One by the substantial discovery that Lead Plaintiffs' Counsel have sought and that Capital One is providing. Lead Plaintiffs' Counsel have both the time and resources necessary to engage in complete discovery.

---

[6] In light of the fact that five full months remain in the extended discovery schedule, Lead Plaintiffs' Counsel's argument that it is "too late" to now permit discovery of all plaintiffs lacks merit.

9

## **CONCLUSION**

For the reasons stated above and in Capital One's opening Memorandum, the Court should enter an order compelling all Plaintiffs named in actions comprising this MDL to respond to Capital One's discovery requests and directing Lead Plaintiffs' Counsel to coordinate those responses.

Dated: April 17, 2020

Respectfully Submitted,

/s/
David L. Balser (*pro hac vice*)
S. Stewart Haskins II (*pro hac vice*)
John C. Toro (*pro hac vice*)
Kevin J. O'Brien (VSB No. 78886)
Robert D. Griest (*pro hac vice*)
**KING & SPALDING LLP**
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309
Tel.: (404) 572-4600
Fax: (404) 572-5140
dbalser@kslaw.com
shaskins@kslaw.com
jtoro@kslaw.com
kobrien@kslaw.com
rgriest@kslaw.com

*Defendants' Lead Counsel*

Robert A. Angle (VSB No. 37691)
Tim St. George (VSB No. 77349)
Jon S. Hubbard (VSB No. 71089)
Harrison Scott Kelly (VSB No. 80546)
**TROUTMAN SANDERS LLP**
1001 Haxall Point
Richmond, VA 23219
Tel.: (804) 697-1200
Fax: (804) 697-1339
robert.angle@troutman.com
timothy.st.george@troutman.com
jon.hubbard@troutman.com
scott.kelly@troutman.com

Mary C. Zinsner (VSB No. 31397)
**TROUTMAN SANDERS LLP**
401 9th Street, NW, Suite 1000
Washington, DC 20004
Tel.: (703) 734-4334
Fax: (703) 734-4340
mary.zinsner@troutman.com

*Defendants' Local Counsel*

**CERTIFICATE OF SERVICE**

  I hereby certify that on April 17, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

/s/
David C. Balser