1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

```
IN RE: CAPITAL ONE CUSTOMER    .    Civil Action No. 1:19md2915
DATA SECURITY BREACH           .
LITIGATION,                    .    Alexandria, Virginia
                               .    May 22, 2020
                               .    10:04 a.m.
                               .
. . . . . . . . . . . .
```

TRANSCRIPT EXCERPT OF MOTION HEARING
BEFORE THE HONORABLE JOHN F. ANDERSON
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

FOR THE PLAINTIFFS:            JOHN A. YANCHUNIS, SR., ESQ.
                               PATRICK A. BARTHLE, II, ESQ.
                               Morgan & Morgan
                               Complex Litigation Group
                               201 North Franklin Street
                               7th Floor
                               Tampa, FL 33602

FOR CAPITAL ONE DEFENDANTS:    DAVID L. BALSER, ESQ.
                               King & Spalding LLP
                               1180 Peachtree Street, N.E.
                               Atlanta, GA 30309-3521

FOR AMAZON DEFENDANTS:         ROBERT R. VIETH, ESQ.
                               Hirschler Fleischer, PC
                               8270 Greensboro Drive, Suite 700
                               Tysons Corner, VA 22102
                                 and
                               TYLER G. NEWBY, ESQ.
                               Fenwick & West LLP
                               555 California Street, 12th Floor
                               San Francisco, CA 94104

TRANSCRIBER:                   ANNELIESE J. THOMSON, RDR, CRR
                               U.S. District Court, Third Floor
                               401 Courthouse Square
                               Alexandria, VA 22314
                               (703)299-8595

(Proceedings recorded by electronic sound recording, transcript produced by computerized transcription.)

2

1         P R O C E E D I N G S
2              *      *      *      *      *
3         THE COURT: All right. I, I have reviewed the
4    pleadings and have heard the arguments from counsel. I'm going
5    to deal with the financial issue first. I think it's the
6    easier of the two.
7         You know, I've looked at Interrogatory No. 17 and
8    Deposition Item No. 21; and, you know, there is an unjust
9    enrichment claim in this case. Damages discovery is open
10   pursuant to, you know, Pretrial Order No. 6; so this isn't a
11   case in which damages discovery isn't allowed. And I do think
12   that the general issues that are included in those two items
13   are discoverable in this case.
14        You know, with the unjust enrichment claim, I do
15   think that there is an argument at this point in time that
16   would make it relevant to know what, what benefits were
17   received by Amazon as a result of allegedly its deceptive,
18   false, misleading, unfair representations in this case. That's
19   an allegation that's made in the case, and that they're
20   unjustly enriched.
21        So I am going to require Amazon to respond to
22   discovery requests that relate to financial benefits that it
23   received in its use of the PII information. If it didn't use
24   it, then, you know, that should be pretty simple; but if it
25   did, then it needs to respond as to what the element is in

these kinds of situations.

You know, there wasn't really any argument or a support for a proportionality argument on the financial side of things. I think it just -- that issue goes straight to the relevancy issue, and I think given the allegations in the complaint, given the claims that are raised, given the damages discovery has opened, that information is relevant, so I'm going to grant the motion to compel in part as to those discovery items.

The other issue is obviously a little bit more complicated and a little bit more difficult to deal with, having to do with the knowledge of the potential security issues, and as I think the plaintiffs have narrowed down in their discussions and in their briefing here today, that they are really dealing with, I think, four different types of security issues that they believe are involved in this action.

There's -- I know Amazon doesn't agree, but that's what the plaintiffs are asserting here; and, you know, I think, you know, there, there is enough at this point to make all four of those issues relevant to the discovery in this case, that is, the web application firewall misconfiguration, and whether it is to a particular web application firewall or whether it is to all, I think it really is more of the, you know, specific kind of information that relates to Capital One.

The server side request forgery type attacks, you

1  know, I, I think the testimony that has been, you know, the
2  snippets of testimony that I got in the response and the reply
3  shows that that isn't an issue that is not worthy of being
4  addressed given that there's some misunderstanding or not clear
5  definition of what SSRFs are; so I think, you know, generalized
6  knowledge of those attacks or issues is certainly relevant in
7  this case beyond Capital One.  The same with open reverse proxy
8  attacks and the identity access management permissions being
9  too broad.
10         You know, that said, this is not the kind of
11 discovery where we're going to, you know, for each and every
12 customer, each and every instance of a concern or issues or
13 things like that.  This is generalized notice, awareness, and
14 understanding that Capital One had of these kinds of issues.
15         You know, this isn't that, you know, hard to get your
16 arms around.  I assume that Amazon would have known that if one
17 had a misconfigured web application firewall, that problems
18 could happen.  That doesn't seem to be very surprising.  You
19 know, that's -- when you say "misconfigured," that means not
20 configured in an appropriate manner, and so something might
21 happen inappropriately.
22         In concept, you know, these server side request
23 forgeries, that doesn't seem to be something that is not known
24 in the industry and aware of; and I understand that maybe other
25 entities were providing other kinds of protections which may or

1  may not have solved the problems; but, you know, that is an
2  issue that the plaintiff is raising, the same with the open
3  reverse proxy attacks.  And obviously, if, you know, identity
4  access management provisions are too broad, that's going to be
5  a problem.
6          But, you know, the idea that company Acme had this
7  issue and what did they do and how did it come, that's, you
8  know, that's a level of detail that I'm not going to require
9  Capital One to get into; but I do think the plaintiffs are
10 entitled to know in general what was Amazon's awareness and --
11 you know, the time period here, you know, I think the idea of
12 general awareness going back to the 2015-2016 time frame is
13 probably appropriate because that's when this relationship
14 started.  That was when it was being publicized.  That was when
15 certain information was being disclosed to the public about
16 security and, you know, protection of data, and obviously
17 having to do with the misrepresentation claims.
18         So, you know, I, I -- this is one that I'm granting
19 in part but only in a modest part; and I hope the plaintiffs
20 understand what I'm getting at here is that the kind of
21 discovery request that you actually served about, you know,
22 each and every notice and each and every instance and what did
23 you do in each and every kind of thing isn't the kind of
24 discovery that is appropriate in a case of this magnitude.
25 What we're talking about is sort of the, the company-wide

6

1  awareness of and concerns about, if there were concerns about
2  it.
3          And I, you know, this, this indication that, you
4  know, back in November, that, you know, analyses were being
5  made that, you know, we're -- security is our top priority --
6  this is Exhibit H of the -- from Mr. Schmidt's letter to
7  Senators Wyden and Warren -- you know, you know, we're always
8  looking at these kinds of things; it's our core mission; you
9  know, we have planning and development processes; you know,
10 we've looked at these things in our instance metadata service,
11 those kinds of things; all, I think, provide some understanding
12 that, you know, people like -- who work with Mr. Schmidt would
13 have the basic kind of information that wouldn't require one to
14 go client by client to get that information.
15         Okay.  Anything else from the parties on this motion?
16         MR. NEWBY:  No, Your Honor.
17         MR. BARTHLE:  Nothing further.
18         THE COURT:  Okay.  Thank you.
19         MR. NEWBY:  Thank you.
20         MR. BARTHLE:  Thank you, Judge.
21                       (Which were all the proceedings
22                        had at this time.)
23
24
25

7

1              CERTIFICATE OF THE TRANSCRIBER

2      I certify that the foregoing is a correct excerpt from the

3 official electronic sound recording of the proceedings in the

4 above-entitled matter.

6                                            /s/
                                      Anneliese J. Thomson