## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

|  |  |  |
|---|---|---|
| In re CAPITAL ONE DATA BREACH SECURITY LITIGATION | ) ) ) ) ) | Case No. 3:19-MD-02915-AJT-JFA |

## NON-PARTIES BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM'S AND OFFICE OF THE COMPTROLLER OF THE CURRENCY'S MEMORANDUM IN SUPPORT OF CONSENT MOTION TO INTERVENE AND IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

## INTRODUCTION

Non-parties the Board of Governors of the Federal Reserve System ("Board") and the

Office of the Comptroller of the Currency ("OCC") (collectively "Agencies"), by and through

the undersigned office of the United States Attorney for the Eastern District of Virginia,[1]

respectfully move, with the parties' consent, to intervene pursuant to Fed. R. Civ. P. 24.  The

Agencies seek to intervene for the limited purpose of opposing plaintiffs' Motion to Compel

Production of Documents Protected by the Bank Examination Privilege (DE 485), filed May 22,

2020 ("Motion" or "Motion to Compel"), insofar as it seeks access to the Board's confidential

supervisory information ("CSI") and non-public OCC information in violation of the Agencies'

regulations and the federal common law bank examination privilege.

The Motion seeks to compel defendants Capital One Bank (USA), N.A., Capital One,

N.A., and Capital One Financial Corp. (collectively, "Capital One"), to produce Board CSI and

---

[1] The Board and OCC have independent litigating authority.  *See, e.g.*, 12 U.S.C. §§ 93(d), 248(p).  The undersigned is filing this memorandum and the accompanying motion as local counsel on behalf of the Agencies in accordance with Local Rule 83.1(D)(4).

non-public OCC information—which is property of the Board and OCC under their respective

*Touh*y[2] regulations.  Plaintiffs have not sought the Board's or OCC's permission to access this

information (as these regulations require), and thus neither the Board nor OCC has had the

opportunity to assert or, if appropriate, waive the bank examination privilege.  Accordingly, the

Agencies respectfully request that this Court permit them to intervene in this action for the

limited purpose of opposing plaintiffs' motion to compel on the grounds that plaintiffs have

failed to comply with the Agencies' *Touhy* regulations and are seeking documents that Capital

One has identified on its privilege log as subject to the Agencies' bank examination privilege.

Should the Court find that plaintiffs are required to submit the requests required by the

regulations, the Agencies are prepared to work with the parties to respond expeditiously.

## PROCEDURAL HISTORY AND INTEREST OF THE BOARD AND OCC

The Board and OCC are agencies of the United States and non-parties to this action.  The

Board is authorized to regulate and examine or inspect bank holding companies and state-

chartered banks that are members of the Federal Reserve System.  12 U.S.C. §§ 1844, 248(a).

Defendant Capital One Financial Corp., Mclean, Virginia ("Capital One Financial") is a

domestic financial holding company supervised by the Board.  The Board largely carries out this

supervision through the Federal Reserve Bank of Richmond ("FRB Richmond"), to which

examination authority is delegated.  The OCC is authorized to examine national banks, 12 U.S.C.

§§ 481, 1820(d), including defendants Capital One, National Association, Mclean, Virginia, and

Capital One Bank (USA), National Association, Glen Allen, Virginia ("the Capital One Banks").

In conducting supervision, the Board and OCC interact continuously with supervised

financial institutions such as Capital One Financial and the Capital One Banks and gather

---

[2] *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).

2

competitively sensitive and highly confidential information in order to assess their safety and soundness, the quality of their management, compliance with laws and regulations, ability to withstand risk, and a host of other variables.  In the course of supervision, the Board and OCC make supervisory judgments on numerous aspects of a financial institution's operations that are highly sensitive and confidential and are protected by Board and OCC regulations as well as the common law bank examination privilege.  In order to effectively conduct supervision, Board (for Capital One Financial) and OCC (for the Capital One Banks) examiners conduct continuous on-site supervision and have near-plenary access to Capital One's books and records.  The quality of bank supervision depends heavily upon an institution's candor in responding to the questions and requests of bank examiners and its willingness to be forthcoming in supplying information requested by bank examiners.

The Board and OCC have *Touhy* regulations providing that documents relating to communications with supervised financial institutions are "property" of the respective Agencies. 12 C.F.R. § 261.20(g) (Board regulations); 12 C.F.R. §§ 4.32(b), 4.36(d), 7.4000(d) (OCC regulations).  The Board's regulations set forth procedures under which litigants may seek access to supervisory communications, known as "confidential supervisory information" or "CSI."  12 C.F.R. §§ 261.20 *et seq.*  These regulations provide that confidential supervisory information is "confidential and privileged" and "will not normally [be] disclose[d] . . . to the public."  12 C.F.R. § 261.22(a).  However, the regulations provide a procedure through which litigants such as the plaintiffs may request access to such information by filing a *Touhy* request with the Board's General Counsel.  *Id.* § 261.22(b).  Similarly, the OCC's *Touhy* regulations set forth the means by which private litigants may obtain "non-public OCC information."  12 C.F.R. §§ 4.31 *et seq.*  These regulations state that non-public OCC information is "confidential and privileged"

and "will not normally [be] disclose[d] . . . to third parties."  12 C.F.R. § 4.36(b).  These

regulations, however, also "[a]fford an orderly mechanism for the OCC to process [*Touhy*

requests] expeditiously," specifically by filing requests with the OCC's Director for Litigation.

*Id.* §§ 4.31(a)(1), 4.33(a), 4.34(a).  In this case, plaintiffs have failed to file the necessary *Touhy*

requests with the Board or OCC seeking access to the Board CSI and non-public OCC

information that they demand in the Motion.

In April 2020, Capital One informed the Board and OCC that the plaintiffs had served

broad document requests and interrogatories on Capital One and that many of plaintiffs' requests

implicated documents protected by the bank examination privilege and the Board's and OCC's

*Touhy* regulations.  According to Capital One, plaintiffs' requests capture a broad range of CSI

and non-public OCC information for an over five-year period from January 1, 2015 through the

present.  For example, Document Request No. 26 seeks "Documents that You provided to, or

received from, any governmental agency, regulatory agency, law enforcement agency, or advisory

council, whether in the United States, Europe, or elsewhere, concerning the Breach."

Capital One has informed the Board and OCC that it has to date identified approximately

19 OCC and/or FRB reports of examination and inspection reports from 2015 to present that may

include some discussion of cybersecurity issues in addition to non-responsive highly sensitive

supervisory information regarding Capital One's operations and/or customer information

unrelated to cybersecurity issues, as well as thousands of pages of supervisory correspondence

with the Agencies which touch on cybersecurity information in addition to a host of other highly

sensitive non-responsive information.  Capital One advised the Agencies that, in addition to

formal examination reports and supervisory correspondence, it has potentially tens of thousands

of additional pages of internal Capital One emails and documents referring or relating to

supervisory communications that it is in the process of identifying and reviewing in response to

plaintiffs' discovery requests.  As discussed, *infra*, at 10-11, although neither the Board nor the OCC have had the opportunity to review this information because plaintiffs have not filed *Touhy* requests as required by the Agencies' regulations, the information described by Capital One is CSI under the Board's regulations and non-public OCC information subject to the Agencies' *Touhy* regulations.

Capital One has advised the plaintiffs several times in the course of discovery that this information was privileged and confidential under the federal common law bank examination privilege, and that Capital One was prohibited by the Agencies' *Touhy* regulations from producing this information in response to plaintiffs' discovery demands absent prior written approval of the Agencies.  Yet, plaintiffs have neither sought nor obtained such approval as of the date of this filing.

By letter dated May 6, 2020, attached as Exhibit 1 to plaintiffs' Motion (DE 486-01), Capital One again advised the plaintiffs of the requirements that they seek access to the Board CSI and non-public OCC information by means of the Agencies' *Touhy* regulations.  The letter stated that Capital One had "repeatedly" informed plaintiffs that it was "not permitted to produce" the Board CSI and non-public OCC information.  *Id*. at 1.  The letter further explained that, in view of Capital One's arguments and requests to the Court that it be permitted categorically to log bank examination privileged documents, plaintiffs had argued that the bank examination privilege belonged to Capital One's regulators.  Capital One stated that it had reached out to the Board and OCC to describe generally the documents and the obligation of non-disclosure, and that the Board and OCC had confirmed that "non-public OCC information and/or Confidential Supervisory Information ('CSI') of the FRB" is at issue.  *Id.* (citing 12 C.F.R. § 4.32(b) (defining non-public OCC information") and 12 C.F.R. § 261.20(g), .22 and .23

(defining Board CSI)).  Capital One informed the plaintiffs that "[b]oth the OCC and [Board] impose requirements on parties who seek non-public OCC information or CSI in adversarial litigation involving supervised entities," and outlined those requirements, including the requirement that a written request for access be filed under the Agencies' regulations.  *Id*. at 2. Despite this communication, plaintiffs have not to date filed requests for access with the Agencies as required.

Rather, on May 22, 2020, plaintiffs filed the Motion, arguing that the federal bank examination privilege is inapplicable because Virginia law applies in this diversity case and does not recognize a bank examination privilege.  *See* Memorandum in Support of Plaintiffs' Motion (DE 486) ("Pl. Mem.") at 3-4.  Recognizing the possibility of error on that point, however, plaintiffs concede that, if the federal bank examination privilege does apply, it belongs to the Agencies and the Agencies "should be given a reasonable opportunity to intervene and assert it for themselves."  *Id*. at 5; *see also id*. at 12 n.5 ("Plaintiffs have no objection to the federal agencies being provided an opportunity to assert privilege . . . .").  Plaintiffs acknowledge that they have been informed of the requirements of the Agencies' *Touhy* regulations, which "make banking regulatory material broadly confidential and categorize such material as the property of the [A]gencies."  *Id*. at 8.  Plaintiffs nevertheless incorrectly argue that they need not comply with those regulations and exhaust administrative remedies because the regulations "conflict with, and therefore are superseded by, a bank's discovery obligations under the Federal Rules of Civil Procedure."  *Id.*

Contrary to plaintiffs' arguments, the Agencies' regulations are not in conflict with the Federal Rules and compliance with the regulations is not excused by Virginia law.  Rather, for the reasons discussed below, the Board's and the OCC's *Touhy* regulations are appropriately

applied to the examination reports, supervisory correspondence, and internal Capital One

documents discussing or reflecting supervisory communications that plaintiffs seek from Capital

One.  Indeed, these documents are "confidential and privileged," 12 C.F.R. §§ 261.22(a) (Board

regulation), 4.36(b) (OCC regulation), subject to the federal common law bank examination

privilege (which, as plaintiffs concede, belongs to the Agencies), and may not be produced in

litigation without first seeking approval of the Board's General Counsel and the OCC

respectively, 12 C.F.R. §§ 261.20(g) (Board regulation); 4.35(a) (OCC regulation).  Accordingly,

the Agencies move to intervene for the limited purpose of protecting the confidentiality of their

supervisory information, requiring compliance with their *Touhy* regulations, and, if necessary,

asserting the bank examination privilege.

## ARGUMENT

**I.      The Agencies Should Be Permitted to Intervene for the Limited Purpose of Opposing Plaintiffs' Motion Insofar as it Seeks Access to the Agencies' Confidential Supervisory and Non-Public Information**

Under the Federal Rules of Civil Procedure, a court must permit intervention by anyone

who "claims an interest relating to the property or transaction that is the subject of the action, and

is so situated that disposing of the action may as a practical matter impair or impede the

movant's ability to protect its interest, unless existing parties adequately represent that interest,"

so long as the motion is "timely."  Fed. R. Civ. P. 24(a).  As the Fourth Circuit has articulated the

test, upon timely motion, a party may intervene as of right: (1) where the applicant has "an

interest in the subject matter of the action;" (2) "protection of this interest would be impaired"

absent intervention; and (3) "the applicant's interest is not adequately represented by the existing

parties to the litigation."  *Teague v. Bakker*, 931 F.2d 259, 260-61 (4th Cir. 1991).  The Fourth

Circuit has held that "liberal intervention is desirable to dispose of as much of a controversy

'involving as many apparently concerned persons as is compatible with efficiency and due process.'" *Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)).  The party moving to intervene "bears the burden of demonstrating to the court a right to intervene."  *In re Richman*, 104 F.3d 654, 658 (4th Cir. 1997).

Here, the Agencies' Motion to Intervene, filed just one week after plaintiffs' Motion to Compel, is timely.  *See, e.g.*, *Scott v. Bond*, 734 Fed. App'x 188, 191 (4th Cir. 2018) ("[a] proposed intervenor should move to intervene as soon as it becomes clear that his interests" would not be adequately represented by existing parties).  The Agencies have an interest in the property or transaction that is the subject of this action because they have a substantial legal interest in ensuring that parties comply with the Agencies' *Touhy* regulations and the protection of privileged and confidential bank examination information belonging to the Agencies and subject to their rules.  *See, e.g.*, *100Reporters LLC v. U.S. Dep't of Justice*, 307 F.R.D. 269, 277 (D.D.C. 2014) ("[F]ederal courts regularly have recognized preserving confidentiality as a sufficient interest under Rule 24(a), both when a statutory privilege is at stake or, more relevantly, when there exists a general interest in protecting the confidentiality of information without relation to a specific statutory right.").  Indeed, plaintiffs concede that the Agencies "should be given a reasonable opportunity to intervene and assert" the bank examination privilege, Pl. Mem. at 5; *see also id*. at 12 n.5, and have consented through counsel to the Agencies' limited intervention.

Absent intervention, the Agencies' ability to protect their interest would be impaired as the Agencies would be unable to oppose the Motion to Compel, to review Board CSI and non-public OCC information in Capital One's possession potentially subject to disclosure, to assert their interest in requiring compliance with their *Touhy* regulations, and, if necessary, to assert

bank examination privilege.  As the courts have recognized, the banking Agencies should have an opportunity to assert the privilege and to defend that assertion prior to disclosure of CSI or non-public OCC information.  *In re Bankers Tr. Co.*, 61 F.3d 465, 472 (6th Cir. 1995).  Finally, no existing party has an interest in requiring compliance with the Agencies' *Touhy* regulations or could adequately assert privilege, because the privilege belongs to the Agencies alone.  The Agencies have therefore met their minimal burden in this case of showing that existing representation may be inadequate.  *See Virginia v. Westinghouse Electric Corp.*, 542 F.2d 214, 216 (4th Cir. 1976) (noting that potential intervenor's "burden of showing an inadequacy of representation is minimal") (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)).[3]

In the alternative, even if the Court determines that the Agencies are not entitled to intervene as of right, the Agencies meet the requirements for permissive intervention under Rule 24(b), under which a party may intervene "[o]n timely motion" when the potential intervenor "has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  In exercising its discretion under Rule 24(b), the district court "must

---

[3] The Supreme Court recently held that "an intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017).  The Agencies have Article III standing because disclosure of their confidential and non-public supervisory information absent prior approval would injure their interest in unfettered access to information from financial institutions needed to carry out their supervisory responsibilities and compliance with their *Touhy* regulations. *See, e.g.*, *McKinley v. Bd. of Governors of the Fed. Reserve Sys.*, 647 F.3d 331, 340 (D.C. Cir. 2011) ("[t]he Board and Reserve Banks 'rely on the willingness of supervised institutions to provide full information in order to assure a robust supervisory environment'" (quoting Board declaration)).  Such injury is redressable by an order of this Court preventing unauthorized disclosure. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (Article III standing requires an (1) injury-in-fact, (2) fairly traceable to the challenged action, (3) that is likely redressable by a favorable decision of the Court).

consider 'whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.'" *Stuart v. Huff*, 706 F.3d 345, 349 (4th Cir. 2012) (quoting Fed. R. Civ. P. 24(b)(3)). Here, the Court should exercise its discretion to permit intervention for the narrow purpose of allowing the Agencies to enforce compliance with their *Touhy* regulations, and to assert and defend, if necessary, the bank examination privilege in connection with the common questions of law and fact raised by the Motion to Compel. Permissive intervention will not unduly delay or prejudice adjudication of the parties' rights, as intervention is limited to the narrow issues of privilege of the Board's CSI and non-public OCC information and compliance with the Agencies' *Touhy* regulations, and the parties have consented to the Agencies' motion.

For these reasons, the Agencies respectfully request that they be permitted to intervene as of right, or, in the alternative, that the Court grant permissive intervention, for the limited purpose of opposing plaintiffs' Motion to Compel.

## II.    Plaintiffs May Not Access the Agencies' Non-Public and Confidential Supervisory Information Without First Requesting it from the Agencies Pursuant to Their *Touhy* Regulations

As described above, *supra* at 3-4, the Agencies have enacted *Touhy* regulations to protect sensitive agency information from automatic disclosure. It is well-established in the Fourth Circuit that federal agencies may use *Touhy* regulations to regulate access to federal government information for use in litigation, recognizing that one of the objectives of *Touhy* regulations is "to conserve governmental resources where the United States is not a party to a suit." *Boron Oil Co. v. Downie*, 873 F.2d 67, 70 (4th Cir. 1989). Indeed, compliance with *Touhy* regulations is required for both civil and *criminal* litigants seeking information belonging to a third-party government agency. In *United States v. Soriano-Jarquin*, 492 F.3d 495, 499 (4th Cir. 2007), for example, the Fourth Circuit upheld a district court's exclusion of a federal agent's testimony

10

from a criminal trial because the defendant declined to request access by means of the agency's *Touhy* regulations.  The court held that "[n]either the existence nor the application of the *Touhy* regulations deprived the defendant of any [Constitutional] right. . . .  [T]he defendant made no attempt whatsoever to comply with the [agency's *Touhy*] regulations . . . .  Given this, he can hardly be heard to complain that the regulations caused him injury."  *Id.* at 504.  There is no reason why plaintiffs' failure to comply with the Agencies' *Touhy* regulations should yield any different result here.

Despite this well-established authority, and despite being informed of the Agencies' *Touhy* regulations, plaintiffs have refused to request access pursuant to those regulations.  In light of this failure, this Court should not countenance plaintiffs' attempted end-run around the Agencies' regulations before seeking to compel production of the Agencies' privileged and confidential information from Capital One in this Court.

In support of their Motion, Plaintiffs incorrectly claim, citing *Bankers Trust*, that their obligation to comply with the Agencies' *Touhy* regulations is "superseded" by Capital One's "discovery obligations under the Federal Rules of Civil Procedure."  Pl. Mem. at 8.  However, unlike this case, the plaintiff in *Bankers Trust* <u>did</u> exhaust administrative remedies by making a "written request to the Federal Reserve Board pursuant to" its regulations—which the Board denied—before seeking relief from the court.  61 F.3d at 468.  Indeed, far from holding that the Agencies' rules may be disregarded, the court in *Bankers Trust* found that "federal regulations should be adhered to and given full force and effect of law whenever possible."  *Id.* at 469.  Thus, contrary to plaintiffs' contention, nothing in *Bankers Trust* authorizes the plaintiffs to avoid their obligation to comply with federal *Touhy* regulations before seeking relief from the Court.  *See also, e.g.*, *In re Medtronic, Inc.*, 184 F.3d 807, 811 (8th Cir. 1999) (rejecting, and

finding "no precedent" for the theory that "federal executive rulemaking is subordinated to evidentiary rules established by state lawmakers" under Rule 501).

Indeed, relying on the Agencies' regulations, and similar *Touhy* regulations of other federal banking agencies, federal courts routinely deny motions to compel discovery of bank examination information in the possession of regulated financial institutions where litigants have failed to exhaust administrative remedies.  *See Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-CV-7126 (JMF), 2016 U.S. Dist. LEXIS 158455, at **27-28 (S.D.N.Y. Nov. 16, 2016) (stating that "[p]laintiff would have to seek relief 'through the established administrative process' before coming back to this court") (internal quotation omitted); *Colonial BancGroup v. PricewaterhouseCoopers LLP*, 110 F. Supp. 3d 37, 43 (D.D.C. 2015) (parties to a lawsuit "cannot independently decide that [they] need not comply with [a banking agency's *Touhy*] regulations"); *In re JPMorgan Chase Mortg. Modification Litig.*, No. 11-md-02290-RGS, 2012 U.S. Dist. LEXIS 167966, at *6 (D. Mass. Nov. 27, 2012) ("[p]laintiffs may not move to compel the production of privileged examination information until they have first contacted the agency that holds the privilege and followed the agency's procedures for obtaining information"); *In re CitiMortgage HAMP Litig.*, No. MDL 11-2274-DSG (PLAx), 2012 U.S. Dist. LEXIS 169324, at **28-29 (C.D. Cal. June 7, 2012) ("[p]laintiffs here have not yet sought the responsive documents from the OCC, and therefore their request that the Court balance the interests involved in production is premature"); *In re Countrywide Fin. Corp. Sec. Litig.*, No. 07-CV-5295-MRP MANx, 2009 U.S. Dist. LEXIS 120590, at *4 (C.D. Cal. Dec. 28, 2009) ("[p]laintiffs must first exhaust all administrative procedures and submit requests to use the documents in this litigation to the FRB and OCC . . . ."); *Bay Bank v. f/v Order of Magnitude*, No. CO5-5740-RBL, 2007 U.S. Dist. LEXIS 16241, at *8 (W.D. Wash. March 7, 2007) ("Because Defendants have

12

not attempted to use the procedure outlined in the regulations [of the FDIC] . . . their Motion to Compel is Denied."); *Raffa v. Wachovia Corp.*, 242 F. Supp. 2d 1223, 1225 (M.D. Fla. 2002) (directing plaintiffs to use OCC administrative procedures for access to confidential supervisory documents); *Am. Sav. Bank v. PaineWebber Inc.*, 210 F.R.D. 721, 722 (D. Haw. 2001) (litigants seeking to compel production of unpublished OTS documents would first be required to use the procedures set forth in the OTS's regulations); *Nat'l Union Fire Ins. Co.* v. *Midland Bancor*, 159 F.R.D. 562, 572 (D. Kan. 1994) ("[c]ourts simply deny motions to compel information exempted from disclosure by [Board and FDIC] regulations when the moving party has not completed the procedures outlined in the regulations for obtaining such information").

As the court explained in *In re JP Morgan Chase*, a plaintiff's motion to compel CSI from a defendant bank is "premature" before the plaintiff complies with the agency's *Touhy* regulations.  2012 U.S. Dist. LEXIS 167966, at *6.  So too here.  Because they have not exhausted their administrative remedies under the Agencies' *Touhy* regulations, Plaintiffs' Motion to Compel should be denied.[4]

Pursuant to the Board's *Touhy* regulations, a requester must describe "the relationship of the confidential supervisory information to the issues or matters" in litigation and "the requesting person's need for the information," among other factors, to show "a substantial need for confidential supervisory information that outweighs the need to maintain confidentiality," and

---

[4] The Fourth Circuit has expressly rejected Plaintiffs' suggestion, *see* Pl. Mem. at 9 (citing 5 U.S.C. § 301), that agencies lack authority to enact regulations governing the dissemination of agency documents or information.  To the contrary, the Fourth Circuit has found that an agency's *Touhy* regulations enacted pursuant to 5 U.S.C. § 301 "clearly f[e]ll within the terms of the first sentence of the Housekeeping Statute," and that "[a]ny doubt as to the validity of the regulation's requirement of prior approval is foreclosed by the Supreme Court's decision in [*Touhy*]." *See Smith v. Cromer*, 159 F.3d 875, 878 (4th Cir. 1998); *Boron Oil v. Downie*, 873 F.2d 67, 69 (4th Cir. 1989) ("The Supreme Court has specifically recognized the authority of agency heads to" enact *Touhy* regulations).

that "[d]isclosure is consistent with the supervisory and regulatory responsibilities and policies of the Board."  12 C.F.R. § 261.22(c)(i).  Similarly, OCC regulations require that requesters "[s]how that the information is relevant for the purpose for which it is sought," "[s]how that other evidence reasonably suited to the requester's needs is not available from any other source," "[s]how that the need for the information outweighs the public interest considerations in maintaining" the information's confidentiality, and "[e]xplain how the issues in the case and the status of the case warrant that the OCC allow disclosure."  12 C.F.R. § 4.33(a)(3).  Here, plaintiffs have provided no information to the Agencies showing whether the Board's CSI or non-public OCC information is necessary or relevant to this action and whether or not evidence is available to plaintiffs from other sources, such as Capital One's non-privileged internal business records, records of outside experts and consultants, or the testimony of fact or expert witnesses.

The fact that plaintiffs' Motion seeks the Agencies' information through Capital One, a supervised financial institution in lawful possession of Board CSI[5] and non-public OCC information,[6] rather than the Agencies, does not alter the outcome.  The Board's regulations provide that, even in the hands of a regulated financial institution, bank examination reports and other CSI "remain the property of the Board," and the regulated entity or third party may not disclose it "without the prior written permission of the Board's General Counsel."  12 C.F.R. § 261.20(g); *see also id.* § 261.23(b).  Similarly, the OCC's regulations provide that non-public OCC information "[i]s the property of the Comptroller" and that "[n]o supervised entity, government agency, person, or other party to whom the information is made available . . . may

---

[5] 12 C.F.R. §§ 261.20(b), (e).
[6] 12 C.F.R. §§ 4.37(b)(2), 7.4000(d).

14

disclose [such] information without the prior written permission of the OCC."  12 C.F.R. §§ 4.32(b), 4.36(d).  These regulations further state that OCC reports of examination are "the property of the OCC" and are "loaned to the bank and any holding company thereof solely for its confidential use."  12 C.F.R. § 7.4000(d).

The D.C. Circuit and other courts have upheld these regulations, finding that, even in the hands of a regulated third party bank, reports and records gathered or created by federal bank regulatory agencies in the course of performing regulatory duties "are deemed the records of the agenc[y]," and thus are available "only with the permission of the agenc[y]" pursuant to its regulations.  *Schreiber* v. *Soc'y for Sav. Bancorp*, 11 F.3d 217, 222 (D.C. Cir. 1993) (citing Board's *Touhy* regulations); *see also Hasie v. Office of the Comptroller of the Currency*, 633 F.3d 361, 366 (6th Cir. 2011) (acknowledging that "possession" of non-public OCC information by third parties "does not constitute a waiver by the OCC of its right to control, or impose limitations on, the subsequent use and dissemination of the information" (quoting 12 C.F.R. § 4.37(d)); *SEPTA v. Orrstown Fin. Servs.*, 367 F. Supp. 3d 267, 284 n.9 (M.D. Pa. 2019) ("the fact that the instant motion seeks to compel [a regulated financial institution] and third parties, rather than the [Board], to produce CSI makes no practical difference" (citing Board regulations)).

In sum, plaintiffs have failed to follow the well-established *Touhy* regulations to obtain the information they seek.  In light of this failure to exhaust their administrative remedies, this Court should deny plaintiff's motion.

### III.      The Documents Plaintiffs Seek Are Subject to the Bank Examination Privilege

Even if plaintiffs were not required to exhaust their administrative remedies, this Court should also deny plaintiffs' Motion to the extent they seek documents covered by the federal

common law bank examination privilege.  The courts have long recognized a qualified privilege

for communications between a bank and its regulators.  *In re Subpoena Served Upon the*

*Comptroller of the Currency*, 967 F.2d 630, 633 (D.C. Cir. 1992); *see also Bankers Tr.*, 61 F.3d

at 471.  "[T]he bank examination privilege is firmly rooted in practical necessity" and recognizes

that "[t]he success of [bank] supervision . . . depends vitally upon the quality of communication

between the regulated banking firm and the bank regulatory agency . . . [, which] simply could

not be met as well if communications between the bank and its regulators were not privileged."

*In re Subpoena*, 967 F.2d at 633; *see also Linde v. Arab Bank, PLC*, No. CV-04-2799

(NG)(VVP), 2009 U.S. Dist. LEXIS 86021, at *7 (E.D.N.Y. Sept. 21, 2009) ("[T]he bank

examination privilege is a qualified privilege that protects communications between banks and

their examiners in order to preserve absolute candor essential to the effective supervision of

banks."); *Shirk v. Fifth Third Bancorp*, No. 1:05-cv-049, 2008 U.S. Dist. LEXIS 111425, at *7

(S.D. Ohio July 2, 2008) (the bank examination privilege is "firmly grounded in practical

necessity").

Such supervisory communications between federally regulated financial institutions and

their federal banking regulators are presumptively privileged and confidential because of the

"distinctively continuous and informal process of bank regulation, which especially requires

candor from regulated entities."[7]  *FHFA v. JPMorgan Chase & Co.,* 978 F. Supp. 2d 267, 273

---

[7] Indeed, in recognition of the importance of providing federal bank regulators unfettered access
to the books and records of supervised financial institutions, and protecting the free flow of
communications between banks and their regulators, Congress enacted statutory protections
enabling such institutions to share even attorney-client, work product, and other privileged
information with federal bank regulatory agencies for supervisory purposes without waiver of
applicable privileges.  *See* 12 U.S.C. § 1828(x)(1) ("[t]he submission by any person of any
information to . . . any Federal banking agency . . . for any purpose in the course of any
supervisory or regulatory process . . . shall not be construed as waiving, destroying, or otherwise
affecting any privilege . . . .").  In further recognition of the necessity of safeguarding candor in

(S.D.N.Y. 2013).  Indeed, plaintiffs concede this point, noting that the "privilege is 'designed to promote the effective functioning of an agency by allowing the agency and the regulated bank the opportunity to be forthright in all communications.'"  Pl. Mem. at 5 (quoting *Bankers Tr.*, 61 F.3d at 471).  As plaintiffs further concede, *id.*, the privilege belongs to the government agencies that conduct bank examinations and "accords agency opinions and recommendations and banks' responses thereto protection from disclosure," but does not protect purely factual information.  *Bankers Tr.*, 61 F.3d at 471; *see also In re Subpoena*, 967 F.2d at 634.

The examination reports, supervisory correspondence, and internal Capital One documents referring to or reflecting supervisory communications and findings that plaintiffs apparently seek here contain "agency opinions and recommendations and banks' responses thereto [which are] protect[ed] from disclosure" by the bank examination privilege.  *Bankers Tr.*, 61 F.3d at 471 (citing *Schreiber*, 11 F.3d at 222).  As plaintiffs concede, Pl. Mem. at 5, 12 n.5, the privilege belongs to the Agencies, and "the [Agencies] must be allowed the opportunity to assert the privilege and the opportunity to defend [their] assertion."  *Bankers Tr.*, 61 F.3d at 472.

Contrary to plaintiffs' assertion, the Agencies are entitled to assert the federal bank examination privilege even if the Court, sitting in diversity under CAFA, applies Virginia (or other state) law to plaintiffs' claims.  *See* Pl. Mem. at 3-4.  Plaintiffs argue that Federal Rule of

---

communications between banks and their regulators, Congress enacted FOIA exemption 8, which protects information "contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of" federal financial institution supervisory agencies.  5 U.S.C. § 552(b)(8).  Courts have repeatedly reaffirmed the broad, all-encompassing scope of exemption 8, holding that it "provide[s] absolute protection regardless of the circumstances underlying the regulatory agency's receipt or preparation of examination, operating or condition reports."  *Gregory v. FDIC*, 631 F.2d 896, 898 (D.C. Cir. 1980); *see also Pub. Inv. Arbitration Bar Ass'n v. SEC*, 771 F.3d 1, 5 (D.C. Cir. 2014) ("Congress enacted exemption 8 to address the 'concern[] that release of bank examination and operating reports could endanger the fiscal well-being of [] subject banks.'") (quoting *Consumers Union v. Heimann*, 589 F.2d 531, 537 (D.C. Cir. 1978)).

Evidence 501 voids the bank examiner privilege in this diversity action.  But by plaintiffs' logic, state law would trump the federal government's unique privileges in any diversity case where a party seeks information protected by such a privilege.  It would follow that a plaintiff need only file a case with state law claims to obtain information that would be privileged in a case that presents a federal question. [8]  This Court should not allow such an illogical result, especially in a case such as this one, where plaintiffs contend that provisions of state law focused on state bank examination information should displace federal regulations providing that the federal supervisory information sought is privileged and confidential property of the Agencies.  *See Medtronic*, 184 F.3d at 811 (conflicting state evidentiary laws "are nullified to the extent that they conflict with" federal statutes and regulations).

Indeed, the Supreme Court has declined to apply state law where the federal government's interests are at stake if, as here, doing so would subject the government's rights and obligations to inconsistent state laws.  *See, e.g.*, *Clearfield Tr. Co. v. United States*, 318 U.S. 363, 367 (1943) (rejecting application of state law in case arising in federal court where it "would subject the rights and duties of the United States to exceptional uncertainty . . . [and] would lead to great diversity in results by making identical transactions subject to the vagaries of the laws of the several states"); *see also Howard v. Lyons*, 360 U.S. 593, 597 (1959) (rejecting lower federal court's holding that letter from Navy officer to Congress was governed by state law of defamation because "the validity of [the officer's] claim of absolute privilege must be judged by federal standards, to be formulated by the courts in the absence of legislative action by

---

[8] For example, courts have repeatedly applied the state secrets privilege, a federal common law privilege, where the United States intervenes to assert it, even in diversity cases that are otherwise governed by state law.  *See, e.g.*, *Trulock v. Lee*, 66 F. App'x 472 (4th Cir. 2003) (affirming lower court's application of state secrets privilege in a defamation case governed by state law).

Congress," given that the existence of a uniform privilege for federal employees was a matter of "peculiarly federal concern"); *Menses v. USPS*, 942 F. Supp. 1320, 1321 (D. Nev. 1996) "[w]here the interests of the United States are directly affected and the issue or right being adjudicated derives from a federal source, federal courts have long recognized that federal laws rather than state laws govern unless Congress otherwise provides." (citing Fed. Practice and Procedure: Jurisdiction §§ 4514, 4515)).  Applying Virginia or other state privilege laws to federal bank examination reports and records of federal banking agencies would plainly undermine the Agencies' substantial interest in ensuring that their rights and privileges regarding their supervisory information (which is Agency property as described *supra* at 3) are governed by a uniform body of federal law.[9]

---

[9] Moreover, the Committee Notes to Rule 501 make clear that "[t]he rationale underlying the proviso is that federal law should not supersede that of the States in substantive areas such as privilege *absent a compelling reason*," including "where an element of a claim or defense" is "grounded upon a federal question."  Such a compelling reason exits here given the federal government's substantial interest in uniform protections for its communications with federally-regulated banks.  This interest is integral to the federal statutory regime requiring agency supervision and examination of institutions like Capital One, which includes, *inter alia*, the National Bank Act, the Federal Reserve Act, the Bank Holding Company Act, and the Federal Deposit Insurance Act.  *See, e.g.*, 12 U.S.C. §§ 248(a), 481, 1820(d), 1844.  And recognition of the privilege is particularly appropriate here given plaintiffs' repeated invocation of and reliance on federal law in this CAFA action with respect to the claims at issue, including a request that the Court provide relief pursuant to federal law.  *See, e.g.*, Corrected Representative Consumer Class Action Complaint, DE 354, at ¶¶ 166 ("Defendants' duties to use reasonable data security measures also arose under Section 5 of the Federal Trade Commission Act ('FTC Act'), 15 U.S.C. § 45"); 110 ("Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data (i.e., PII) constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45"); 114-20, 167 (alleging violation of the Gramm-Leach-Bliley Act ("GLBA"), 15 U.S.C. §§ 6801.1 *et seq*., and "numerous rules and regulations promulgated on the GLBA statutes"); 197 (seeking relief "[u]nder the Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq." in exercise of the Court's "broad authority to restrain acts, such as here, that are tortious and violate the terms of *the federal* and state statutes described in this Complaint" (emphasis added)).

Plaintiffs next argue that even if the bank examination privilege applied, the documents they seek are not protected by the privilege. Capital One has informed the Agencies that the information plaintiffs are demanding consists of bank examination and inspection reports prepared by Agency examiners, supervisory correspondence between Capital One and its regulators, and internal Capital One documents referring to or reflecting supervisory communications, which is CSI under the Board's regulations, 12 C.F.R. §§ 261.2(c)(1)(i)-(iii), and non-public information under the OCC's regulations, 12 C.F.R. §§ 4.32(b)(1)(i)-(iv), (2).[10]

Contrary to plaintiffs' suggestion that this material may be largely "factual" and outside of the bank examination privilege, Pl. Mem. at 7, 12-14, the materials described by Capital One fall within the ambit of communications between banks and regulators, and internal bank documents revealing such communications, that courts have found to be within the scope of the privilege. *FHFA v. HSBC N. Am. Holdings Inc. et al.*, No. 11 Civ. 6189, 2014 U.S. Dist. LEXIS 65662, at *9 (S.D.N.Y. May 13, 2014) (documents sent by a regulated entity to a bank regulator "that reflect recommendations of items to be discussed at a joint meeting," "provid[ing] narrative answers to [the regulator's] questions," and providing "qualitative reviews of [the regulated entities'] operations or directions as to the conduct of future operations" were properly withheld under the bank examination privilege); *Linde*, 2009 U.S. Dist. LEXIS 86021, at *9 ("plaintiffs are not entitled to know . . . the content of any of the requests – written or oral – made by the

---

[10] However, the Board's regulations provide that CSI "does not include documents prepared by a supervised financial institution for its own business purpose and that are in its possession." 12 C.F.R. § 261.2(c)(2). Similarly, OCC regulations provide that it may deny a request for non-public OCC information if "other evidence reasonably suited to the requester's need is available from another source," *e.g.*, a bank's own books and records. 12 C.F.R. § 4.35(a)(2)(iii). Thus, non-privileged information in Capital One's possession prepared for its own internal business purposes, rather than supervisory reasons, and that does not reveal CSI or non-public OCC information, may be produced to the plaintiffs even if a copy was also provided to bank regulators, provided that production does not reveal supervisory communications.

OCC in the course of their review . . . ."); *Shirk*, 2008 U.S. Dist. LEXIS 111425, at *5-6, 11 ("examination reports and communications leading up to the Written Agreement, and plans, reports, and recommendations that Fifth Third was required to prepared pursuant to the Written Agreement" are not purely factual and are protected by bank examination privilege); *In re Bank One Sec. Litig.*, 209 F.R.D. 418, 427 (N.D. Ill. 2002) (bank examination reports and memorandum created by the OCC "predominantly contain opinions and or recommendations as opposed to facts … [and] factual and deliberative components are demonstrably intertwined" in the documents); *In re: Atl. Fin. Fed. Sec. Litig.*, Civ. No. 89-645, 1992 U.S. Dist. LEXIS 2619, at *15 (E.D. Pa. Mar. 3, 1992) ("[T]o prohibit disclosure only of those materials generated by the [regulator] as a result of the examination while allowing discovery of responsive documents prepared by the financial institution would circumvent the objective of the regulation – to protect the confidentiality of the examination process.").

Such examination reports, supervisory correspondence, and internal Capital One documents referring to or reflecting supervisory communications and findings contain "agency opinions and recommendations and banks' responses thereto [which are] protect[ed] from disclosure" by the bank examination privilege. *Bankers Tr.*, 61 F.3d at 471 (citing *Schreiber*, 11 F.3d at 222). As plaintiffs concede, Pl. Mem. at 5, 12 n.5, the privilege belongs to the Agencies, and "the [Agencies] must be allowed the opportunity to assert the privilege and the opportunity to defend [their] assertion." *Bankers Tr.*, 61 F.3d at 472.

## CONCLUSION

For the foregoing reasons, the Agencies should be permitted to intervene to protect their interest in CSI and non-public OCC information and plaintiffs' Motion should be denied.

Dated:  May 29, 2020

Respectfully submitted,


G. ZACHARY TERWILLIGER
United States Attorney


_____/s/_____
By: REBECCA S. LEVENSON
Assistant United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel: (703) 299-3760
Fax: (703) 299-3983
E-mail: Rebecca.s.levenson@usdoj.gov

*Counsel for the Board of Governors of the Federal Reserve
System and the Office of the Comptroller of the Currency*


Of Counsel:

Joshua P. Chadwick
Yvonne F. Mizusawa
*Board of Governors of the Federal Reserve System*

Peter C. Koch
Michael K. Morelli
*Office of the Comptroller of the Currency*