IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| IN RE: CAPITAL ONE CONSUMER ) | |
| DATA SECURITY BREACH LITIGATION ) | MDL No. 1:19md2915 (AJT/JFA) |
| ) | |

**This Document Relates to the Consumer Cases**

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD ON BASIS OF BANK EXAMINATION PRIVILEGE**

Plaintiffs submit this Reply in Support of their Motion to Compel Production of the Documents Withheld on Basis of Bank Examiner Privilege ("Motion" or "Mot.") (Doc. 485).

## INTRODUCTION

The question at hand is, as the Court put it on April 6, 2020, "whether the assertion of the bank examiner privilege is appropriate in this case." Pretrial Order No. 19, Doc. 373 at 3. At the time, the Court stated that the "question [was] left for another day, if and when Capital One withholds documents on the basis of that privilege." *Id*. Capital One has now done so, and the issue, which has been percolating since February, is ripe for decision. The answer is decidedly no – the assertion is not appropriate here.

As a threshold matter, the federal common law bank examination privilege does not apply in this diversity action because Virginia does not recognize the privilege. But even if the privilege were applicable, Plaintiffs have appropriately requested, pursuant to the Rule 34 of the Federal Rules of Civil Procedure, documents that are within Capital One's possession, custody and control, and at least two of the four banking agencies are present to assert the privilege, if applicable.[1]

---

[1] Two of the agencies however, the FDIC and CFPB, are conspicuously absent, despite the fact that Capital One has been on notice for months that Plaintiffs intended to challenge the privilege.

But the bank examination privilege is a limited, qualified one, and both Capital One and the Agencies inappropriately conflate privilege with confidentiality. As an initial matter, although the Agencies have been aware of this issue since at least April, they admit they have not reviewed the documents being withheld and make no showing that the documents are subject to the bank examination privilege. *See* Doc. 511 at 4-5, 20-21. They merely argue that the documents, as described to them by Capital One, appear to contain or be comprised of confidential information and are therefore privileged. *Id.* at 20-21. This is not enough. Because the Agencies do not carry their burden in establishing the privilege, the documents should be produced.

Even if the Agencies were given a second chance to establish the documents are privileged, they should only be given such a chance as to the documents that could actually be subject to the limited common law privilege. The bank examination privilege – which is a federal common law doctrine separate and apart from agency regulations – shields from discovery *only* "agency opinions and recommendations and banks' responses thereto." *In re Bankers Tr. Co.*, 61 F.3d 465, 471 (6th Cir. 1995). It does not apply to internal bank communications and documents generated by a bank.

Yet, Capital One admits that it is withholding over 17,000 documents (and likely will be withholding many more) on the basis of the purported privilege, and that 90% of the email communications withheld are *internal* Capital One communications that do not involve the regulators. Doc. 513 at 21 n.14. Although those documents may be confidential, they are not privileged, can be produced pursuant to an order by this Court, and will be protected by the Protective Order in this case. For their part, the two Agencies before this Court – the OCC and FRB – state in their opposition that these internal Capital One communications and documents are not in their possession nor have they reviewed them. Doc. 511 at 4-5. Because such internal bank

documents cannot be subject to the privilege, these documents should be produced. The Agencies should then be provided an opportunity to assess and assert, as necessary, the privilege over the limited number of documents remaining – specifically the 19 reports (Doc. 511 at 4) and 561 direct communications between the Agencies and the Capital One (Doc. 513 at 21 n.14) – that could be withheld pursuant to the privilege. *See In re Bankers Tr. Co.*, 61 F.3d at 471.

For all of these reasons and those below, Plaintiffs request the Court grant their Motion and compel Capital One to produce the documents it is withholding on the basis of the bank examination privilege.

## **ARGUMENT**

**A.    The federal common law bank examination privilege does not apply.**

Capital One does not dispute that the bank examination privilege is a federal common law privilege. Nor does Capital One dispute that state law, not federal common law, applies in this diversity action. Instead, Capital One asserts that it would violate federal supremacy and preemption principles to apply a Virginia statute applicable to the production of bank examination material, Va. Code Ann. § 6.2-101(A), (B)(4), to Capital One here because Capital One is a nationally-chartered bank not subject to the Virginia statute. Doc. 513 at 8. But Plaintiffs do not argue that this statute applies to Capital One. Instead, the statute proves that Virginia does not recognize a bank examination privilege.[2] Applying Virginia law, which does not recognize a bank

---

[2] Capital One accuses Plaintiffs of taking inconsistent positions on what law applies in this case. Doc. 513 at 7 n.3. That is incorrect. Plaintiffs contend Capital One's choice of law arguments in its motion to dismiss are premature and that its reliance on its Cardholder Agreement's choice of law provision was inappropriate there where it was based on facts extraneous to the Complaint. Doc. 427 at 7-8. Conversely, here the ultimate issue is whether federal or state law applies on the question of what evidentiary privileges apply, and Capital One does not dispute that Rule of Evidence 501 dictates that state privilege law applies. Nor does Capital One dispute that the bank examination privilege is derived from federal, not state, law. And, Capital One does not contend that there are material differences regarding the other potentially applicable state laws that would

examination privilege, over the federal common law, does not violate supremacy principles because federal *common law* holds no supremacy over state law. *See Collins v. Virginia*, 138 S. Ct. 1663, 1678 (2018) ("Federal law trumps state law only by virtue of the Supremacy Clause, which makes the 'Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties ... the supreme Law of the Land,' Art. VI, cl. 2. When the Supremacy Clause refers to '[t]he Laws of the United States made in Pursuance [of the Constitution],' it means federal statutes, *not federal common law*.") (Thomas, J., concurring) (emphasis added).

And while Capital One contends it would violate the Supremacy Clause to not apply the Agencies' *regulations*, that is a separate matter from the federal common law bank examination privilege.³ Neither Capital One, nor the Agencies, contends the Agencies' regulations are a codification of the federal bank examination privilege, and neither disputes that the Agencies' regulatory confidentiality designations are broader than what the bank examination privilege covers. Plaintiffs do not contend the Agencies' regulations are a nullity due to the lack of a bank examination privilege. To the contrary, those regulations exist, but, as explained in Plaintiffs' opening motion (Doc. 486 at Part B), *infra*, and in their response to the Agencies' opposition, they

---

require applying those laws here. *See* Doc. 463 at 3 (Capital One arguing that "even if foreign law might apply, the Court must presume that such law 'is the same as the law of Virginia' [where there is] no 'showing to the contrary.'") (quoting *Appalachian Reg'l Healthcare v. Cunningham*, 806 S.E.2d 380, 383 n.6 (Va. 2017)).

³ Capital One cites cases from New York and Delaware state courts recognizing the existence of the federal bank examination privilege, but neither case actually applies the privilege, nor does either case discuss whether the privilege is in conflict with state law. *See* Doc. 513 at 8 (citing *Manufacturers & Traders Tr. Co. v. Client Server Direct, Inc.*, 156 A.D.3d 1364, 1368 (N.Y. App. Div. 2017); *In re Nat'l City Corp. S'Holders Litig.*, 2009 WL 1653536, at *1 (Del. Ch. June 5, 2009)).

are unenforceable—not because of the lack of a state law bank examination privilege, but because they conflict with Federal Rule of Civil Procedure 34 under these circumstances.

Capital One's further contention that the federal privilege can apply so long as it is not "repugnant" to Virginia law (*id.* at 7) is wrong. Applying a privilege that does not exist under the applicable substantive law *is repugnant* to that law because evidentiary privileges are always disfavored and must be narrowly construed. *RLI Ins. Co. v. Conseco, Inc.*, 477 F. Supp. 2d 741, 748 (E.D. Va. 2007) ("Courts disfavor assertions of evidentiary privilege because they shield evidence from the truth-seeking process"); *id.* ("[A]ssertions of evidentiary privilege are narrowly and strictly construed, so that the privilege is 'strictly confined within the narrowest possible limits consistent with the logic of its principle.'") (quoting *In re Grand Jury Proceedings*, 727 F.2d 1352, 1355 (4th Cir. 1984); citing *Trammel v. United States*, 445 U.S. 40, 50–51 (1980)).

The same principles apply under Virginia law. *See Maryland Cas. Co. v. Clintwood Bank*, 154 S.E. 492, 496 (Va. 1930) (construing Virginia's banking act regarding the confidentiality of banking records, stating the statutory provisions "should be strictly construed, when invoked for the limitation of judicial inquiry, and are subject to the right of every litigant to call for and produce evidence affecting his substantial rights"); *Estate of Curtis v. Fairfax Hosp. Systems, Inc.*, 21 Va. Cir. 275, 1990 WL 10030533, at *2 (1990) ("[E]xceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth.'") (quoting *United States v. Nixon*, 418 U.S. 683, 709–710 (1974)).

Thus, Capital One's contention that Plaintiffs must cite a case *affirmatively refusing* to recognize a bank examination privilege (Doc. 513 at 7-8) turns the standard on its head. To the contrary, where Capital One does not cite a single case, state or federal, applying Virginia law and

5

recognizing a bank examination privilege (Plaintiffs have not located one either), applying one here would necessarily be repugnant to the applicable law.

Capital One's citation to *Pearson v. Miller*, 211 F.3d 57, 65-66 (3d Cir. 2000) for the proposition that "[f]ederal courts routinely consider and apply federal evidentiary privilege laws in diversity cases where state law is silent on an issue," (Doc. 513 at 9) is misplaced. In *Pearson*, the court recognized that "federal courts are to apply federal law of privilege to all elements of claims *except those 'as to which State law supplies the rule of decision.'*" *Id.* at 66 (emphasis added). It further recognized that "federal privileges apply to federal law claims, and state privileges apply to claims arising under state law." *Id.* In that case, the plaintiff asserted "both federal and state law claims in the same action." *Id.* The court stated that under these circumstances, and where there are conflicting rules regarding privilege between federal and the applicable state law, that conflict is resolved in favor of the federal privilege law. *Id.* However, the court said this rule applied *in favor of admissibility*: "when there are federal law claims in a case also presenting state law claims, *the federal rule favoring admissibility, rather than any state law privilege, is the controlling rule*." *Id.* (emphasis added). Thus, *Pearson* is inapposite. There are no claims in this case arising under federal law and so no federal law on privilege can apply. And in this case, it is state law that favors disclosure.

Capital One also argues that federal law applies in areas that are of a uniquely federal interest to ensure uniform standards, citing *Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988). Doc. 513 at 10. The court in *SBAV LP v. Porter Bancorp, Inc.*, 2015 WL 1471020 (W.D. Ky. Mar. 31, 2015), rejected this very argument when concluding the federal common law bank examination privilege did not apply in a case governed by Kentucky law. *Id.* at *8 (stating that no criticisms had been levied against other cases that had likewise concluded the federal bank examination

privilege did not apply in a case governed by state law, and thus concluded that "[t]his silence is revealing, suggesting that any perceived threats to uniformity have not resulted in the chaos that Bancorp anticipates"). In addition, *Boyle* does not address evidentiary privileges at all, instead discussing civil liabilities arising out of the performance of federal procurement contracts. 487 U.S. at 505. Even if *Boyle's* analysis applies in this context, it holds that displacement of state law in an area of unique federal interests only occurs where "significant conflict exists between an identifiable federal policy or interest and the operation of state law, or the application of state law would frustrate specific objectives of federal legislation." *Id.* at 507 (internal citations and quotations omitted). Here, where the Agencies' ultimate concern for the confidentiality of bank examination material is not impacted by whether a privilege applies because all confidential material will be shielded from public view by the Protective Order in this case, the requirements for displacing state law do not apply.[4]

Finally, Capital One's attempts to distinguish the cases Plaintiffs cited in their opening memorandum (*see* Doc. 486 at 4) that refused to apply the federal common law bank examination privilege in this very context fail. First, Capital One contends the Court should not follow *SBAV LP*, 2015 WL 1471020, at *5-8, simply because the court's order holding the federal bank examination privilege did not apply in the case where Kentucky law supplied the rule of decision, and thus ordering the defendant bank to produce documents withheld on the basis of the privilege

---

[4] Capital One contends that *not* applying the federal common law bank examination privilege will lead to forum shopping by plaintiffs. *See* Doc. 513 at 8. That is incorrect; the law that applies is not based on where a case is filed, but rather, the law that supplies the rule of decision. The Agencies make a similar claim, contending that if state privilege law applies here "[i]t would follow that a plaintiff need only file a case with state law claims to obtain information that would be privileged in a case that presents a federal question." Doc. 511 at 18. But Rule of Evidence 501 dictates this result in providing that federal law on privilege applies when a claim arises under federal law, but state privilege law applies when a claim arises under state law.

(*see id.* at *11),[5] was vacated following settlement of the case and where the FRB and FDIC had intervened and had sought reconsideration of the order which was never ruled on because of the settlement. *See* 2015 WL 8004502 (W.D. Ky. Dec. 1, 2015). But nothing about these circumstances casts doubt on the court's analysis in any respect. Capital One also contends *Michigan First Credit Union*, 2007 WL 789041, at *3 (E.D. Mich. Mar. 14, 2007) and *In re Powell*, 227 B.R. 61, 67 (Bankr. D. Vt. 1998) are inapposite because they involved state-chartered banks. But that distinction is irrelevant. The courts in both cases concluded the federal bank examination privilege did not apply because the case was before the court on the basis of diversity jurisdiction, and thus, that state's substantive law applied. Moreover, in *In re Powell*, the FDIC attempted to assert the privilege. *Id.* at 63. Thus, the purported federal interests that Capital One contends require application of the privilege were equally applicable in that case, but that did not warrant application of the federal privilege.

Accordingly, this Court should conclude that the federal common law bank examination privilege does not apply in this case, and because no such privilege exists under Virginia law, Plaintiffs' motion to compel documents Capital One is withholding on the basis of a non-existent privilege should be granted.

### B. Plaintiffs are not required to request the documents withheld by Capital One directly from the Agencies pursuant to their regulations.

Despite Capital One's withholding of thousands of documents on the basis of the bank examination privilege, including creating a categorical privilege log for this purpose, Capital One now contends Plaintiffs' argument that the bank examination privilege is not Capital One's to assert is a "red herring." Doc. 513 at 11. Capital One now contends it has never attempted to assert

---

[5] The *SBAV* court also rejected the defendant bank's argument that the plaintiffs were required to request the documents directly from the agencies pursuant to their regulations. 2015 WL 1471020, at *10-11.

the bank examination privilege, despite saying it could and was. *See* Doc. 362 at 13 ("Plaintiffs are wrong that Capital One is precluded from asserting the privilege on the regulators' behalf."). Capital One now asserts that the only reason it is and has refused to produce documents is because they are deemed confidential or non-public and the property of the Agencies pursuant to the Agencies' regulations. Doc. 513 at 11-12. Accordingly, Capital One's stated basis for withholding these documents now is not that they are privileged, but rather, that Plaintiffs must comply with the Agencies' regulations for requesting the documents from the Agencies themselves. *Id.* at 12-18.

For the reasons explained in Plaintiffs' reply to the Agencies' opposition on this point, however, which Plaintiffs incorporate herein by reference, there is no reasoned basis for requiring Plaintiffs to now request the documents from the Agencies pursuant to a procedure at odds with the Federal Rules of Civil Procedure when Plaintiffs have properly requested that Capital One produce them.[6] That is especially so now that the Agencies have intervened in the case and can assert their interests in maintaining the confidentiality and, to the extent applicable, privileged nature of the documents.

In fact, now that the Agencies are participating in the case, it is unclear what separate interest Capital One has in even advancing this argument. While Capital One contends it faces criminal liability if it discloses the material without authorization from the Agencies, no such liability may attach if the Court orders the production. *See* 12 C.F.R. § 4.37(b)(1)(ii) ("Any person who discloses or uses non-public OCC information except as expressly permitted by the Comptroller of the Currency *or as ordered by a Federal court*" may be subject to criminal

---

[6] Where the Agencies' and Capital One's arguments overlap on this issue, for efficiency and clarity Plaintiffs address Capital One's arguments in their reply to the Agencies' opposition.

9

penalties). Moreover, the Agencies, now before the Court, have not taken the position that they would pursue criminal proceedings against Capital One if it produces documents deemed confidential or for which privilege has been asserted upon order of this Court. *See generally* Doc. 511. And the regulations expressly state that a bank "may disclose information" if ordered by a "federal court in a judicial proceeding in which the OCC has had the opportunity to appear and oppose discovery." 12 C.F.R. § 4.37(b)(1)(i)(B). Thus, for these reasons and those stated in Plaintiffs' reply to the Agencies' opposition, this Court should conclude Plaintiffs are not required to request documents from the Agencies pursuant to their regulations where Plaintiffs have already properly requested them from Capital One.

    **C.**    **To the extent the federal common law bank examination privilege does apply, the Agencies have failed to carry their burden and, in any event, it only applies to agency opinions and reports and communications *between* the bank and agencies.**

The bank examination privilege is a limited, qualified privilege that applies only to "agency opinions and recommendations and banks' responses thereto." *In re Bankers Tr.*, 61 F.3d at 471. The burden in establishing the privilege lies with the Agencies. Here, the Agencies admit that they have not reviewed a single document, despite learning of the issue in April. Doc. 511 at 4-5. The Agencies merely state that, based on Capital One's representations, the documents contain or are comprised of confidential information and are therefore privileged. *Id.* at 20-21. This vague assertion wholly fails to establish the documents are privilege.

Moreover, based on Capital One's initial categorical privilege log, it is now clear that Capital One is improperly withholding documents pursuant to the privilege, and is conflating the narrow common law privilege with the confidentiality obligations imposed under the regulations. Even if the Court were inclined to allow the Agencies a second bite at the apple in establishing privilege over the limited documents possibly subject to it, the internal Capital One documents

should be produced and then the Agencies should be given the chance to decide whether to assert privilege over the remaining, limited "opinions and recommendations and banks' responses thereto," which could possibly be subject to the privilege.

### i. Plaintiffs satisfied their meet and confer obligations and the issues presented in Plaintiffs' Motion are ripe for decision.

As an initial matter, Capital One's insistence that Plaintiffs' Motion is procedurally improper and premature should be rejected. *See* Doc. 513 at 1 n.1, 18-19. As the OCC and FRB – the only two agencies from whom Plaintiffs or this Court have heard – put it in their Motion to Intervene: "Capital One ha[s] '*repeatedly*' informed plaintiffs that it was 'not permitted to produce' the Board CSI and non-public OCC information." Doc. 511 at 5 (quoting Doc. 486-1, Capital One's May 6, 2020 letter to Plaintiffs) (emphasis added). Plaintiffs have discussed the bank examination privilege with Capital One on multiple occasions over the course of several months – including discussions related to briefing on this very issue previously before the Court – and Capital One has consistently insisted that it cannot and will not produce documents it claims are subject to the bank examination privilege.

As evinced by Capital One's May 6th letter to Plaintiffs and its Opposition, the parties are clearly at an impasse as to the issues of whether the bank examination privilege applies, the procedure through which Plaintiffs may obtain documents purportedly subject to the privilege, and whether it applies to documents such as internal communications rather than reports or agency opinions and communications with the agencies. Capital One suggests that an additional meet and confer regarding the categorical log served on May 20th could have "possibly narrowed the issues" but does not explain what issues could be narrowed. Nor has Capital One ever made any proposals to Plaintiffs during their discussions on this issue that could narrow the instant issues. To the contrary, Capital One has insisted time and again that the privilege applies and it cannot produce

the documents. Therefore, Plaintiffs have clearly satisfied their meet and confer obligations for the issues presented in their Motion.

> ii. **The bank examination privilege only applies to agency opinions and recommendations and communications between the agency and the bank.**

The bank examination privilege is a qualified, federal common law privilege that protects from disclosure only "agency opinions and recommendations and banks' responses thereto." *In re Bankers Tr. Co.*, 61 F.3d at 471. The "primary purpose of the privilege is to preserve candor in communications between bankers and examiners, which those parties consider essential to the effective supervision of banking institutions." *Id.* As explained by the Court of Appeals for the D.C. Circuit, the privilege "has been referred to variously as an aspect of the privilege for 'official information,' or 'intragovernmental opinions,' or even of the deliberative process privilege.'" *In re Subpoena Served Upon Comptroller of Currency, & Sec'y of Bd. of Governors of Fed. Reserve Sys.*, 967 F.2d 630, 633 (D.C. Cir. 1992) (internal citations omitted). But "the bank examination privilege, like the deliberative process privilege, shields from discovery *only agency opinions or recommendations*; it does not protect purely factual material." *Id.* (emphasis added) (ordering the production of the factual portions of OCC and FRB interview notes and memoranda).

Although some of the cases cited by Capital One involved the withholding of communications *between* the bank and the agencies; none addressed a situation such as this, where 90% of thousands of communications being withheld were purely internal bank communications. *See In re Subpoena*, 967 F.2d at 633 (addressing communications "*between* the agencies and [the bank]") (emphasis added); *In re Bankers Tr. Co.*, 61 F.3d at 471 (stating the "primary purpose of the privilege is to preserve candor in communications *between* bankers and examiners") (emphasis added); *Principe v. Crossland Sav., FSB*, 149 F.R.D. 444, 448 (E.D.N.Y. 1993) (ordering

production of the "factual portions of notes and memoranda of communications and correspondence *between*, on the one hand, the FDIC, and on the other hand, [the bank], its directors, officers and employees") (emphasis added); *FHFA v. HSBC N. Am. Holdings Inc.*, 2014 WL 1909446, at *4 (S.D.N.Y. May 13, 2014) ("documents sent *by [the bank] to [the agency]* which provide narrative answers to questions may be withheld, for example, when those narrative answers describe [the bank's] policies or purposes or explain [the bank's] practices. . . . [D]ocuments sent *by [the bank] to [the agency]* that reflect recommendations of items to be discussed at a joint meeting may be withheld.") (emphasis added); *Linde v. Arab Bank, PLC*, 2009 WL 3055282, at *1 (E.D.N.Y. Sept. 21, 2009) (explaining the bank examination privilege "covers the opinions and recommendations of bank examiners and the *banks' responses to the examiners' inquiries*") (emphasis added).

Despite the plethora of cases stating that only agency opinions and reports and communications between the agencies and banks are subject to the privilege, Capital One cites to only one non-controlling case that indicates limited internal bank correspondence may be privileged, rather than merely confidential. And even that case, which pre-dates *In re Bankers Tr.*, 61 F.3d 465, admits "that precedent concerning the discoverability of documents prepared by the subject institution in connection with a regular bank examination is sparse." *In re Atl. Fin. Fed. Sec. Litig.*, 1992 WL 50074, at *3 (E.D. Pa. Mar. 3, 1992).

Rather, the facts here are much more similar to those in *Wultz v. Bank of China Ltd.*, 61 F. Supp. 3d 272, 285, 287 (S.D.N.Y. 2013), wherein the court found that internal bank communications regarding self-analyses, risk reports, and proposed actions, which the OCC required the bank to conduct and then submit over the course of seven years, "do not fall under the bank examination privilege." It did so because the OCC had offered "no basis for concluding that

[the internal bank communications and documents] were, in fact, as a legal matter, covered by the bank examination privilege" and had merely made arguments about the documents in the "abstract." *Id.* at 287. So too here.

Here, Capital One admits that, for example, 90% of the emails it is withholding consist of purely internal correspondence. Capital One states that only "561 of [the] 5,539 emails (or 10% of all email on the Categorical Log) evidence direct communications with one or more of the 4 regulators based on the regulator's email address appearing in the top level of the metadata or the lower levels of the threads." Doc. 513 at 21 n.14. As for the other emails and the documents and chats, the most Capital One can say about those documents is that "the actual name of at least one of the four regulators in the text of the document." *Id.* at 21 n.15. But the fact that a regulator is mentioned does not make the document subject to the bank examination privilege.

Moreover, the FRB and OCC have not reviewed the thousands of internal Capital One communications and documents, which are not in their possession. The documents have only been described to the FRB and OCC by Capital One. Doc. 511 at 4-5. Therefore, the FRB and OCC couch their representations regarding these documents, advising that information they deem confidential under the regulations "does not include documents prepared by a supervised financial institution for its own business purpose and that are in its possession." *Id.* at 20 n.10 (quoting 12 C.F.R. § 261.2(c)(2)). The agencies further explain that "non-privileged information in Capital One's possession prepared for its own internal business purposes, rather than supervisory reasons, and that does not reveal CSI or non-public OCC information, may be produced to the plaintiffs even if a copy was also provided to bank regulators, provided that production does not reveal supervisory communications." *Id.* And both the Agencies and Capital One conflate the issue of

confidentiality under the regulations with the more limited federal common law bank examination privilege, which protects only a more limited subset of documents.

Highlighting the stark contrast between Capital One's assertion of privilege over thousands of internal communications and the circumstances most courts face when considering the bank examination privilege is the fact that many courts are skeptical that even the bank examination reports and opinions *themselves* can be entirely privileged. "[E]very court that has examined the nature of bank examination *reports* thus far has found them to be at least partly factual." *Wultz*, 61 F. Supp. 3d at 287–88 (quoting *In re: Providian Fin. Corp. Sec. Litig.*, 222 F.R.D. 22, 26 (D.D.C. 2004)) (emphasis added). In fact, as evidenced by one of the cases cited by Capital One, the court explained that district courts that had "actually examined bank examiners' reports *in camera*" had "found them to be all or partially factual." *Principe*, 149 F.R.D. at 448. The court there rejected the FDIC's argument that the bank examiner's process "of selecting facts to be included in the reports is, in itself, an integral part of the deliberative process" and pointed to decisions which held that "statements characterized by the banking agency as opinions or professional judgment [are] nothing more than 'expert interpretations of facts' and therefore not within the scope of the privilege[.]" *Id.* (citing *Seafirst Corp. v. Jenkins,* 644 F. Supp. 1160, 1163 (W.D. Wash. 1986)). For those reasons, the court held that the FDIC bank examination reports at issue must "be factual either in whole or in part" and stated that it would have required submission for *in camera* review, if it had not found good cause existed to order the report produced in full. *Id.* If the bank examination reports themselves are not entirely privileged and are partly factual, it belies belief that thousands of internal communications are entirely privileged.

As described more fully in Plaintiffs' response to the Agencies' opposition, the Agencies have failed to establish any documents are privileged. But, in any event, because the privilege

protects only the opinions, reports, and correspondence between the banks and examiners, Capital One's assertion of privilege over internal communications and documents should be overruled as to those documents, and they should be produced pursuant to the Protective Order entered in this case.[7] Therefore, should the Court be inclined to allow the Agencies a second chance to establish privilege, the Agencies can then assess the 19 agency reports (Doc. 511 at 4) and the 561 direct communications between the Agencies and Capital One (Doc. 113 at 21 n.14) for privilege and assert it, if necessary.

### iii. Plaintiffs' specifically reserved the right in their Motion to later challenge specific documents for good cause.

Capital One's argument that Plaintiffs have not made a good cause showing to overcome the privilege as to specific documents is premature. The issue of good cause is not at issue in Plaintiffs' Motion. In their memorandum, Plaintiffs specifically reserved the right to challenge specific documents on the basis of good cause at a later date, explaining that "[b]ecause of Capital One's overbroad assertion of the privilege, Plaintiffs do not at this time have a sufficient understanding of what material Capital One is withholding to make this assertion." Doc. 486 at 14 n.7. For example, according to the OCC and FRB, buried within the 17,160 documents encompassed on Capital One's categorical log are "approximately 19 OCC and/or FRB reports of examination and inspection reports from 2015 to present that may include some discussion of cybersecurity issues[.]" Doc. 511 at 4. But Plaintiffs did not know of the existence of these reports prior to the filing of their Motion; the categorical log gives no indication that there are actual reports being withheld, much less the number of reports or topic matter of the reports. What issues

---

[7] However, should the Court be disinclined to overrule the claim of privilege entirely, Plaintiffs respectfully request that the Court review a limited randomized, representative sampling of the internal correspondence *in camera* to ensure that the privilege is not being abused.

16

these reports discuss and whether the reports are of critical import to the case is not currently known to Plaintiffs, but will certainly be explored in discovery.

Indeed, given Plaintiffs' reservation of rights in their Motion, Capital One's argument that Plaintiffs should be precluded from arguing good cause "at a later date" should be rejected. Doc. 513 at 4. If the bank examination privilege does apply here, the case law clearly allows Plaintiffs to argue a showing of good cause so as to override the privilege for specific documents because the privilege is qualified in nature. *In re Bankers Trust*, 61 F.3d at 471; *In re Subpoena*, 967 F.2d at 634.

### iv. Capital One concedes the privilege belongs to the agencies, but the FDIC and CFPB have not asserted the privilege.

Only two of the four agencies listed in Capital One's categorical privilege log have moved to intervene and to oppose Plaintiffs' Motion to Compel. The other two agencies – the FDIC and CFPB – have been entirely silent. As the OCC and FRB state in moving to intervene: "the privilege belongs to the Agencies alone[.]" Doc. 511 at 9. And Capital One no longer contests this point. Capital One has been on notice that the privilege belongs to the agencies and that it would face this very Motion since March, when the parties briefed Plaintiffs' Motion for Entry of an Electronically-Stored Information ("ESI") Protocol. *See* Docs. 352, 362, 372. And on April 6, 2020, this Court recognized in its order on the ESI Protocol that Plaintiffs planned to challenge the bank examination privilege on the grounds that the "privilege belongs to the regulator and the regulators must assert the privilege." Doc. 373 at 4. It remains unclear to Plaintiffs whether Capital One ever sought the position of the FDIC and CFPB or if it did and the two agencies have no interest in asserting the privilege over the materials being withheld. But in any event, given the discovery timeline in this case, Plaintiffs respectfully request that should this Court find the bank examination privilege applicable here, it order that notice be provided to the two agencies.

## **CONCLUSION**

For all the reasons set forth above and in their opening memorandum, Plaintiffs request that the Court grant their Motion to Compel and order Capital One to produce the documents it is withholding on the basis of the bank examination privilege.

Dated: June 3, 2020                                     Respectfully Submitted,

*/s/ Steven T. Webster*
Steven T. Webster (VSB No. 31975)
**WEBSTER BOOK LLP**
300 N. Washington Street, Suite 404
Alexandria, Virginia 22314
Tel: (888) 987-9991
swebster@websterbook.com

*Plaintiffs' Local Counsel*

Norman E. Siegel
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, MO 64112
Tel: (816) 714-7100
siegel@stuevesiegel.com

Karen Hanson Riebel
**LOCKRIDGE GRINDAL NAUEN, P.L.L.P**
100 Washington Avenue South, Suite 200
Minneapolis, MN 55401
Tel: (612) 339-6900
khriebel@locklaw.com

John A. Yanchunis
**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel: (813) 223-5505
jyanchunis@ForThePeople.com

*Plaintiffs' Co-Lead Counsel*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 3, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

*/s/ Steven T. Webster*
Steven T. Webster (VSB No. 31975)
WEBSTER BOOK LLP