1

                    UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF VIRGINIA
                        ALEXANDRIA DIVISION

IN RE: CAPITAL ONE CUSTOMER    .    Civil Action No. 1:19md2915
DATA SECURITY BREACH           .
LITIGATION,                    .    Alexandria, Virginia
                               .    June 5, 2020
                               .    10:00 a.m.
                               .
. . . . . . . . . .            .


                    TRANSCRIPT OF MOTION HEARING
              BEFORE THE HONORABLE JOHN F. ANDERSON
                  UNITED STATES MAGISTRATE JUDGE
                         (via ZoomGov)


APPEARANCES:

FOR THE PLAINTIFFS:            NORMAN E. SIEGEL, ESQ.
                              JILLIAN R. DENT, ESQ.
                              LINDSAY T. PERKINS, ESQ.
                              Stueve Siegel Hanson LLP
                              460 Nichols Road, Suite 200
                              Kansas City, MO 64112

FOR CAPITAL ONE DEFENDANTS:    DAVID L. BALSER, ESQ.
                              RONNI D. SOLOMON, ESQ.
                              King & Spalding LLP
                              1180 Peachtree Street, N.E.
                              Atlanta, GA 30309-3521
                                and
                              MARY C. ZINSNER, ESQ.
                              Troutman Sanders LLP
                              401 9th Street, N.W., Suite 1000
                              Washington, D.C. 20004

FOR THE INTERVENORS,           REBECCA S. LEVENSON, AUSA
   BOARD OF GOVERNORS OF       United States Attorney's Office
   THE FEDERAL RESERVE         2100 Jamieson Avenue
   SYSTEM AND THE OFFICE       Alexandria, VA 22314
   OF THE COMPTROLLER OF
   THE CURRENCY:


                (APPEARANCES CONT'D. ON PAGE 2)

                      (Pages 1 - 28)

          COMPUTERIZED TRANSCRIPTION OF STENOGRAHIC NOTES

2

1    APPEARANCES:  (Cont'd.)

2    FOR INTERVENOR OFFICE OF           PETER C. KOCH, ESQ.
         THE COMPTROLLER OF THE          Office of the Comptroller of
3        CURRENCY:                       the Currency
                                         400 7th Street, S.W.
4                                        Washington, D.C. 20219

5    OFFICIAL COURT REPORTER:           ANNELIESE J. THOMSON, RDR, CRR
                                         U.S. District Court, Third Floor
6                                        401 Courthouse Square
                                         Alexandria, VA 22314
7                                        (703)299-8595

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

P R O C E E D I N G S

1

2      THE COURT:  We'll go ahead and have the clerk call

3  the case, please.

4      THE CLERK:  In re: Capital One Customer Data Security

5  Breach Litigation, Civil Action No. 19md2915.

6      THE COURT:  And who do I have for the plaintiffs?

7      MR. SIEGEL:  Good morning, Your Honor.  This is

8  Norman Siegel, co-lead counsel for the plaintiffs; and with me

9  this morning are Lindsay Perkins and Jillian Dent.

10      MS. PERKINS:  Good morning, Your Honor.

11      THE COURT:  Good morning.

12      Mr. Siegel, who's going to be arguing on behalf of

13  the plaintiffs?

14      MR. SIEGEL:  Ms. Perkins, who had to pound the

15  briefing, will, will take the lead on the argument this

16  morning.

17      THE COURT:  Okay.  Thank you, Ms. Perkins.

18      And who do I have for Capital One?

19      MR. BALSER:  Good morning, Your Honor.  David Balser

20  from King & Spalding on behalf of Capital One.

21      MS. ZINSNER:  Good morning, Your Honor.  Mary Zinsner

22  with Troutman, cocounsel for Capital One.

23      THE COURT:  Mr. Balser, are you going to be arguing

24  on behalf of Capital One?

25      MR. BALSER:  Yes, Your Honor.  And Ronni Solomon, my

1    partner, is also with me in case there are any issues about the

2    log itself.

3            THE COURT:  Okay.  Thank you.

4            Okay.  And here on behalf of the agency defendants?

5            MS. LEVENSON:  Good morning, Your Honor.  Rebecca

6    Levenson from the U.S. Attorney's Office in the Eastern

7    District of Virginia.  With me is Peter Koch, agency counsel

8    for the Office of the Comptroller of the Currency.

9            MR. KOCH:  Good morning, Your Honor.

10           THE COURT:  Good morning.  Is Mr. Koch going to argue

11   on behalf of the two agencies?

12           MS. LEVENSON:  I will, Your Honor.

13           THE COURT:  You will?  Okay.  All right.

14           Well, I want to focus the parties' discussions.  I've

15   read all the papers and I appreciate them, got them read,

16   including all of the replies that I got, and have read the

17   cases.  On the -- so the initial issue on whether this federal

18   law privilege on bank examination can be applied in this case,

19   you know, I've, I've read the three cases that the plaintiffs

20   have relied upon indicating -- arguing that state law would

21   control and that there is no Virginia state law privilege, and,

22   you know, I, I don't find them to be persuasive, honestly.

23           I think this is a case that's significantly different

24   than the three cases that were cited.  The *SBAV LP v. Porter*

25   *Bancorp* case, the Kentucky case, the court in that case took

1    the what I consider to be a fairly extraordinary step of

2    vacating the decision once the case had been resolved, which,

3    you know, is, is different than it just being, sitting as

4    having been appealed but not decided.  I mean, the judge took

5    the affirmative step to vacate that.

6           The *Michigan* case, you know, you read that case

7    closely, it's clear that the documents were created under the

8    Michigan act and the Michigan law was going to apply there.

9    That obviously was a state credit union or credit union.

10          And in *In re Powell*, the decision in that case, the

11   Vermont bankruptcy court also, you know, obviously dealt with

12   the state institution and even in its decision went through and

13   said that, you know, I'm going to say it doesn't apply, and

14   then it dealt with, well, even if it did apply, it wouldn't

15   necessarily come into play in this case.

16          So looking at those three cases, I don't think that

17   the law is as clear as maybe the plaintiffs would have made it

18   out to be, and Federal Rule of Evidence 501 isn't absolute.  It

19   indicates that there can be some analysis other than what

20   actually state law does apply.

21          In this case, we've got a national bank.  We've got

22   the Federal Reserve and the Comptroller -- Office of the

23   Comptroller coming in who are federal agencies overseeing a

24   national bank, and in this case, we've got, you know, I know

25   it's very complicated, conflict of laws issues in this case,

1    but in the representative complaint, there are -- it's not just

2    Virginia claims raised in the representative complaint, the

3    claims having to do with the laws and various other

4    jurisdictions from some of the representative plaintiffs:

5    Texas, Florida, California, and several other states.

6           So for all of that, I am going to find that it's

7    appropriate to allow the assertion of the bank examiner

8    privilege by the Federal Reserve and the Office of the

9    Comptroller, but, you know, we have to recognize that this is a

10   qualified privilege.  It doesn't include factual information.

11   The party asserting the privilege has the burden to show that

12   it is appropriate under the circumstances.

13          You know, now that the dust has cleared a little bit,

14   we have the Federal Reserve and the Office of the Comptroller

15   of the Currency who come in, have indicated that they want to

16   assert the bank examiner examination privilege in this case,

17   want to have the opportunity to do that, and I -- you know, it

18   is their privilege to assert, it's not Capital One's privilege,

19   and so I think that that procedural issue has now been resolved

20   and that those two agencies have come in and made a timely

21   request to assert that privilege, and I'm going to find that

22   it's appropriate to allow them to do that under the

23   circumstances.

24          So with all that said, it sort of, I hope, focuses,

25   you know, the discussion that we can have this morning, you

1   know, what do we do now, in that, you know, I think under both

2   the, the two circuit court cases that I think the parties both

3   have cited and relied on, the *Bankers Trust* case and the -- out

4   of the Sixth Circuit and the D.C. case having to do with the

5   subpoena served on the Comptroller of the Currency, you know,

6   all sort of lead me to believe that we have to give the

7   agencies the opportunity when they timely assert their request

8   to make a privilege objection to at least go through that

9   process, see where it shakes out, and then it's up to the Court

10  to decide if the parties can't agree as to whether the agencies

11  have appropriately asserted the privilege, whether the material

12  that they're asserting it for is covered by the privilege, and,

13  you know, obviously, understanding that it's not an absolute

14  privilege; it's a qualified privilege.

15          So with all that said, I need to get some guidance

16  from both the plaintiffs, Capital One, and the agencies as to

17  what are our next steps under those circumstances.

18          So I'll hear from the plaintiffs first.

19          MS. PERKINS:  Thank you, Your Honor.  Lindsay Todd

20  Perkins.  It's nice to be with you this morning.

21          So I, I do appreciate the Court laying out its views

22  on some of the initial arguments that the plaintiffs made, and

23  now we can get right to the -- right to the chase of it.  So we

24  do -- we do all agree now that it's the agencies' privilege to

25  assert and it's their burden to establish that it applies to

1    each document and the specific contents therein.

2           The agencies have not met their burden to do so.

3    Instead, they have not reviewed any of the documents at issue,

4    taking Capital One's word for it that the documents contain

5    information deemed confidential by agency regulation.

6           That is a far cry from establishing privilege.  While

7    the agencies and Capital One often conflate confidentiality

8    under the regulations with privilege under the federal common

9    law, they do not dispute that the concepts are not one and the

10   same and that the privilege is narrower than the agencies'

11   confidentiality designations under the regulations.

12          The privilege only covers agency opinions and

13   recommendations and the bank's response thereto.  Accordingly,

14   it arguably applies to bank examination and inspection reports,

15   of which the agencies say there are 19 being withheld by

16   Capital One, and direct communications between an agency and a

17   bank regarding supervision, which Capital One says there are

18   561 of such documents, only 10 percent of the total e-mail

19   communications that Capital One is withholding.

20          Even for these, as many courts have found when

21   reviewing such documents in camera, even inspection reports,

22   the quintessential agency opinion and recommendation contains

23   plenty of purely factual information that is not privileged and

24   must be produced.

25          As for the vast majority of the documents that are

1    internal Capital One communications, there is no basis to

2    assume, as the agencies appear to ask this Court to do, that

3    these internal communications contain agency recommendations

4    and opinions or Capital One's responses thereto.

5              As set forth in plaintiffs' papers, Capital One is

6    withholding a much broader swath of documents than any court

7    has concluded privileged.  The cases analyzed bank examination

8    reports and direct communications with regulators for

9    privilege.

10             Courts that have addressed the issue, such as the

11   *Wultz* court in the Southern District of New York, have

12   explicitly rejected the contention that the privilege applies

13   to internal bank communications, which again is the vast

14   majority of the documents that are being withheld.  That's

15   because the agencies have not demonstrated the privilege

16   applies to any document being withheld.  All documents being

17   withheld on the basis of the bank examination privilege should

18   be ordered to be produced.

19             At a minimum, though, even if the Court believes

20   agencies should be given some short but reasonable additional

21   amount of time to review the documents to which privilege might

22   apply, the Court should still order the immediate production of

23   the internal Capital One communications, and as many courts

24   have recognized, where a protective order in the case will

25   protect the confidentiality of bank examination material, the

1   policy behind the privilege will be upheld.

2            Now, a separate issue that, that the agencies and

3   Capital One argue is dispositive even before suggesting that

4   the Court even get to the bank examination privilege is to

5   whether the agencies' regulations that set forth a process for

6   requesting documents from the agencies require plaintiffs to

7   request the documents in Capital One's possession directly from

8   the agencies instead.  The only circuit court to address this

9   issue is the Sixth Circuit in *In re Bankers Trust*.  In that

10  case, the court addressed the issue here.  When a party to

11  civil litigation requests documents from their party opponent

12  that are by regulations the property of the federal agencies,

13  do those regulations control over the federal rules?

14            The court said no.  If documents are within --

15            THE COURT:  In that case -- Ms. Perkins, in that

16  case, and it's unclear what they mean by a letter was sent, but

17  in that case, a letter was sent by the requesting party to the

18  agencies, and the agencies said no, and then they went through

19  and tried to get the documents through discovery; isn't that

20  right?

21            MS. PERKINS:  That's correct, Your Honor, but the

22  fact that the plaintiffs had sent a letter to the agencies was

23  really a reference made by the court in its statement of the

24  facts of the case that ultimately had no bearing on the court's

25  analysis of the legal issue.  In fact, the court seemed to

1    believe that the plaintiffs had not exhausted their

2    administrative remedies, that they had sent the letter and that

3    as soon as the request was denied, they moved away from the

4    agency process and went straight to requesting the documents

5    from their party opponent, the bank, and the court said that

6    was appropriate under the circumstances because Rule 34

7    applies.

8              It applies to civil litigation, and Rule 34 already

9    kind of contemplates some of the issues that the agencies

10   suggest must be delved into through their regulations, and the

11   court said that those regulations clearly conflict with the

12   Federal Rules of Civil Procedure, and under such circumstances,

13   there is no reason that plaintiff should have to move around

14   their party opponent who is in possession of the documents and

15   request them from the agency.

16             And that's especially so because the agencies'

17   regulations protect confidential material, but they're not

18   entitled to withhold production of confidential material.

19   Confidential material is passed back and forth in litigation

20   all the time, subject to appropriate protection.  Now, what's

21   required for the agencies to actually put a stop to the

22   production of material is that it be deemed privileged.

23             And the court in *Bankers Trust* recognized this

24   interest, that the agencies are the ones that have the

25   privilege and they are entitled to assert it and they should be

1    allowed to intervene for that purpose, which they have done so

2    here, but that doesn't mean that the agencies' procedures

3    should control over the Federal Rules of Civil Procedure.  So

4    that's the circumstance we have here.

5           And moreover, plaintiffs cited the case from the

6    Southern District of Ohio, *Local 295 Pension Trust v. Fifth*

7    *Third Bank*, where the court stated that even if the agencies'

8    regulation should typically be enforced where the agencies have

9    intervened in the case and thus have received the very notice

10   and opportunity to protect their interests that the regulations

11   provide, there is no basis to require that a requesting party

12   to divert courts and request the documents from the agencies

13   under a procedure at odds with the federal rules, and that's

14   the circumstance we have here.

15          Under *Bankers Trust*, plaintiffs are not required to

16   request the documents from the agencies under their procedures.

17   Notably, there are four different agencies at issue.  They each

18   would require the plaintiffs to request documents directly with

19   each different agency, so we would have four different

20   processes going for documents that the agencies admit are not

21   in their possession, the vast majority of which would never

22   have been in their possession because they're internal Capital

23   One communications.

24          So even if the Court were concerned about the

25   agencies' interests that are protected by those regulations,

1  now that the agencies have intervened to protect those

2  interests, there is no reasoned basis to require plaintiffs to

3  request the documents under the agencies' procedures.

4          So to get to your -- to the Court's ultimate

5  question, where do we go from here, it is plaintiffs' position

6  that where plaintiffs sent this discovery to Capital One in

7  January, the agencies acknowledged that Capital One at some

8  point reached outside to them to say, look, we've got these

9  discovery requests that essentially implicate agency

10  confidential information, agencies said this happened in April,

11  so we're now two months from there, we think -- plaintiffs

12  think that the agencies have had enough time to assess whether

13  the privilege applies, and instead of coming to the Court and

14  saying privilege applies to these documents, this portion of

15  this document for this reason, they have simply taken Capital

16  One's word for it that the documents contain confidential

17  information, not necessarily privileged information, and that

18  at this point, they've -- not that they've waived the right,

19  but they have passed, they have -- they have not met their

20  burden to establish that the privilege applies to any

21  particular documents or to the specific contents thereof,

22  because as most of the courts recognize that are actually

23  dealing with privilege, even very -- documents that are

24  prototypical bank examination documents contain even mostly

25  factual material.

1          So at a minimum, if the Court thinks that agencies

2    should be given some amount of additional time, it should be a

3    limited amount of time, and they can attempt to assert

4    privilege over those limited 19 bank examination reports and

5    561 direct communications with the regulators, and that there

6    is really no basis to assume that the privilege applies to the

7    vast majority of the remaining documents at issue.  They're

8    internal Capital One documents.

9          THE COURT:  Help me understand that a little better.

10   I mean, if, if an internal Capital One communication discusses

11   the bank examiner, the results of a bank examination and/or a

12   need to provide some supplemental information as to that

13   request and -- why wouldn't that be subject to a privilege if

14   the bank examination report is subject to privilege?

15         MS. PERKINS:  That's correct, Your Honor.

16   Theoretically, a communication could just transcribe

17   essentially the recommendations and opinions that were in a

18   report and the bank's statements in response, and if that were

19   the case, there wouldn't be an obvious basis to say

20   categorically that a communication even internal could not

21   satisfy the privilege, but again, there's been no attempt to

22   even make that showing, and even the agencies recognized in

23   their reply that there are a lot of internal communications at

24   issue, they haven't seen them, and they acknowledge that those

25   wouldn't even be considered confidential information under the

1    regulation.

2         And so we're at this point all taking Capital One's

3    word for it, and that's simply not how privilege law works.

4    The party that has the privilege is required to justify the

5    withholding of relevant and discoverable information on the

6    basis of the privilege.

7         And it is important to note that under the

8    regulations, all this confidential information is deemed the

9    property of the agencies, and they at any point could have

10   asked Capital One in the last two months or even before, before

11   when these discovery requests were sent out, let's take a look

12   at these documents to see if it actually implicates our

13   interests, and instead, we're here now a month before all

14   document production is supposed to have been complete, and the

15   agencies are just now saying in general there is likely

16   confidential and possibly privileged information in these

17   withheld documents, and that's simply insufficient to satisfy

18   the burden to show privilege applies.

19        And again, most of all the cases that actually dig in

20   on privilege say, you know what?  Even if privilege applies, so

21   long as there's a protective order entered in the case that

22   will ensure that the privileged material does not make it out

23   into public view, the policy behind the bank examination

24   privilege is fully upheld, and that's even more so if it's just

25   agency confidential information as opposed to material that

1    fits within the smaller, narrower category that applies to the

2    bank examination privilege.

3            So for that reason, Your Honor, we think there is no

4    basis to allow the agencies even more time to assert the

5    privilege, but if it does, it should really only be under the

6    subset of documents that clearly could implicate the privilege,

7    as opposed to the much broader swath of documents that Capital

8    One is withholding on the basis of privilege.

9            THE COURT:  Okay.

10            MS. PERKINS:  Unless Your Honor has any further

11   questions --

12            THE COURT:  No, I'm going to hear from Mr. Balser

13   now.  Mr. Balser?

14            MR. BALSER:  Your Honor, let's start with two

15   overarching principles here.  The first is that federal law

16   prohibits Capital One from producing information that the

17   regulators deem confidential.  We've had no choice under these

18   regulations but to withhold documents that fall within the

19   confidentiality rubric under the applicable regulations and to

20   log those, which we've done.  We would be subject to criminal

21   sanctions if we produced these documents without agency

22   authorization.

23            I think the key point here, Your Honor, and I think

24   it addresses most of what plaintiffs argued here, is that the

25   plaintiffs have jumped the gun.  They're aware of the *Touhy*

1    process.  They chose to ignore it.  They filed a motion two

2    days after we provided them with our categorical log, and they

3    seek to establish precedent that litigants can bypass the *Touhy*

4    process at will.

5           That is a very, very dangerous precedent that they

6    are asking this Court to create and one that would have

7    implications far beyond this case, especially for the Eastern

8    District of Virginia that deals with extremely sensitive state

9    secret issues, CIA issues, and the like.

10          So the argument that, that the agencies haven't met

11   their burden to designate these documents as privileged is

12   absurd.  There is a process by which the plaintiffs are

13   required to seek agency input and guidance imposition on

14   privilege, and they, they just completely chose to bypass that

15   process.

16          We told them in a letter -- they -- first of all,

17   they've known about this issue since Day One.  The regulations

18   are clear as to what the process is for invoking the agencies'

19   review of challenged documents, and we told them in a letter

20   specifically who they should contact at our primary regulators

21   at the OCC and FRB to comply with the *Touhy* process.  They just

22   didn't do it.

23          And there's not a single case that they can point to

24   that stands for the proposition that the *Touhy* process can be

25   ignored.  They rely on *Bankers Trust*, but as Your Honor

1 correctly noted, in that case, the *Touhy* process was followed.

2         THE COURT:  We don't know -- we don't know that the

3 *Touhy* process was followed.  All we know is that a letter was

4 sent.  We don't know any more than that.

5         And, you know, it's clear from -- you know, this is a

6 case not where the plaintiffs have subpoenaed the agency, not

7 where they're asking for the agency to present someone to come

8 in and testify.  They have sent a document request to Capital

9 One.  It involves a number, a large number of documents that

10 the agency doesn't even know, doesn't even have any idea, so

11 that if it was, you know, I want to get certain documents, they

12 don't even know what the documents are.  They don't have them

13 in their possession.

14         So the idea that this, you know, one can't subpoena

15 documents from a party in a case and deal with that issue in

16 the context of litigation, which is where we are right now, I

17 don't think is absurd, Mr. Balser.

18         MR. BALSER:  Once they know, Your Honor, that, that

19 certain documents that are within their Rule 34 request are

20 subject to bank examiner privilege, there is a process under

21 the federal regulations that they are required to follow, and

22 they didn't follow it.

23         THE COURT:  Okay.  Where do we go from here,

24 Mr. Balser?

25         MR. BALSER:  So, look, I think where we go from here

1   is that -- and we've had -- I've had some brief discussions

2   with, with counsel for the agencies on this.  I think we should

3   engage in an expedited process to permit the agencies to

4   conduct a review in a -- probably using some kind of sampling

5   in a way that would expedite the process to enable --

6          THE COURT:  If they're going to assert a privilege

7   over a document, a sampling doesn't work.  I mean, that's clear

8   in the decisions that you have cited.  It has to be done on a

9   document-by-document basis; isn't that correct?

10          MR. BALSER:  So -- it is, Your Honor, but -- you

11   know, and I'll let the agencies speak for themselves as to the

12   process that they propose to invoke.  Your Honor is correct, it

13   is the agencies' privilege.  I think there's no disagreement

14   about that, but I do think we, we are trying to find a solution

15   that provides the agencies with the ability to exercise their

16   right to assert privilege on these documents consistent with

17   the schedule that we have in this case.

18          And, you know, I would note, Your Honor, that, you

19   know, our regulators did come in, and they have stated in

20   their, in their briefs their position that internal documents,

21   including documents that discuss the -- that refer or reflect

22   supervisory communications, are protected, and if you look at

23   page 21 of, of the regulators' brief, they say that examination

24   reports, supervisory correspondence, and internal Capital One

25   documents referring to or reflecting supervisory communications

1    and findings contain agency opinions and recommendations and

2    banks' responses thereto, which are protected from disclosure

3    by the bank examination privilege.

4            So our regulators have, have come in and said that

5    our internal communications around the log are appropriately

6    withheld under privilege, and it is, it is --

7            THE COURT:  Well, Mr. Balser, they have not said

8    that.  They have said documents that contain that type of

9    information they would think are privileged.  We don't know --

10   they don't know what are in the thousands of the e-mails that

11   you have withheld from production.

12           And I'm concerned about the process that was

13   followed.  I mean, there's a lot of discussion of, you know,

14   we've made an analysis under the bank examination privilege.

15   You don't tell me what it was that that analysis was.  You just

16   say:  We've made an analysis.

17           It appears from reading it closely that it may be

18   just if there is an e-mail from a Capital One person to a

19   regulator or a regulator is discussed in an e-mail, that

20   apparently, you know, that's being withheld, and, you know,

21   I'll tell you when push comes to shove, that's not going to be

22   an appropriate analysis, and that's going to be up to the

23   agencies to make that final determination.

24           But, you know, if, if the -- the first cut is is it

25   an e-mail to an agency, it contains some type of confidential

1   or privileged information, that's not a proper analysis.

2        MR. BALSER:  Well, Your Honor, Ms. Solomon is on the

3   phone.  She, she -- on the line.  She is the person who

4   supervised the logging -- review and logging of all these

5   documents, and she can speak more specifically as to the

6   process that was used.

7        I, I do think, as Your Honor points out, at the end

8   of the day, this is, this is a sticky situation for Capital

9   One.  We face criminal sanctions if we produce documents that

10  the agency believes are protected.  So we've been careful,

11  obviously, in ensuring that we don't do that.

12       And as Your Honor notes, it is the agencies'

13  privilege ultimately and there should be a process, that had

14  plaintiffs follow the *Touhy* process, as they're required to do,

15  we probably wouldn't be here right now.  We certainly would

16  have been already engaged in whatever process we, we develop to

17  have these documents reviewed by the agencies so they can

18  assert their privilege or not with respect to these documents.

19       So, you know, perhaps counsel for OCC and FRB should

20  weigh in and let the Court know what the agencies' position is

21  as to how the review of these documents ought to occur so that

22  we can tee up the privilege issues which aren't before the

23  Court today.  There is no -- there hasn't been a claim of

24  privilege asserted yet, and it isn't the agencies' fault that

25  hasn't occurred because the *Touhy* process wasn't invoked.

22

1          THE COURT:  All right.  Ms. Levenson, let me hear

2     from you.

3          MS. LEVENSON:  Thank you, Your Honor.  I think as a,

4     as a practical matter, the agencies need to find a way to at

5     the very least make a first cut through documents to give some

6     guidance as to what Capital One may produce without the

7     agencies invoking privilege over and what the agencies will

8     actually invoke privilege over.

9          And in a third category, and hopefully this will

10     expedite the process, the agencies can also in performing this

11     review consider whether or not there's any, any documents over

12     which it might waive the privilege, and that is the practical

13     effect of the *Touhy* regulations in this instance, that the

14     plaintiffs would put forward the information that the agencies

15     would need to analyze whether or not any privilege could be

16     waived, and then the agencies would be able to provide a

17     meaningful decision to the Court.  Otherwise, the agencies are

18     left to guess what the, you know, at what the plaintiffs need

19     from these documents and why they can't get the information

20     anywhere else.

21          We did discuss with Mr. Balser the possibility of at

22     least a first cut of an exemplar process in view of the speed

23     of this -- the nearing close of document discovery in this

24     case.  I think it might be useful for the agencies to at least

25     look at a representative sample of documents in order to tell

1  Capital One we're not going to assert privilege over these

2  documents.  That may help move the process along more quickly

3  and -- but -- and while allowing the agencies to assert

4  privilege over documents that are legitimately within the bank

5  examination privilege.

6       We would take issue with plaintiffs' argument and

7  plaintiffs themselves have admitted that internal

8  communications be released without any further review given the

9  possibility that, as you say, potential cut and pasting of

10  those recommendations could, could exist within the documents.

11       The agencies would like to work on -- would like to

12  do this review as expeditiously as possible, and that is why we

13  have suggested an exemplar process here.

14       THE COURT:  Well, you know, this, this, this -- the

15  *Touhy* regulations, you know, are supposed to keep the agencies

16  from having to, you know, conserve government resources, but

17  apparently the agencies have taken a position that they want to

18  come in and try and have the opportunity to determine whether

19  the privilege applies in this case, and again, it's the

20  privilege that we're looking at as to whether it applies on

21  these documents that Capital One has withheld from production,

22  and so, you know, I'm going to give the agencies what they have

23  asked for, and that is, an opportunity to come in and decide

24  whether to assert a privilege and to support the assertion of

25  that privilege, and it will be for me to decide if the issue

1   can't be resolved among the parties as to whether that is an

2   appropriate application of the privilege or whether it should

3   be overcome for some reason even if it is an appropriate

4   application of privilege.

5          The privilege is a qualified one.  It only relates to

6   certain types of information, and if you look at both the

7   *Bankers Trust* and the *Subpoena* case out of D.C., you know, they

8   both refer to it doesn't contain factual information.  It does,

9   you know, have to do with certain deliberative processes.

10         We have a very strong protective order in this case,

11   which is a consideration that I think the agencies have to take

12   into consideration in making their determination, but, you

13   know, this can't be done on a representative basis.  It has to

14   be done if Capital One has withheld documents and the agencies

15   want to assert a privilege and tell them not to produce those

16   documents, they have to support that, and they have to support

17   that on a document-by-document basis, and that's what they've

18   asked for, to come in and, you know, either assert a privilege

19   or not assert a privilege.  So that can't be done broad-based.

20         I'm going to give them two weeks to do it.  Capital

21   One needs to provide them with the documents, if they haven't

22   already, that they have withheld.  So you've got, you know, the

23   e-mails and the attachments and things like that that relate to

24   the privileges that have been withheld from both the Federal

25   Reserve and the Office of the Comptroller of the Currency

1   within two weeks, two weeks from today.  They need to provide a

2   privilege log that indicates which documents they are asserting

3   a claim of the bank examination privilege and the basis for

4   that on those documents.  You know, if they don't assert a

5   privilege, then the documents, you know, are subject to being

6   produced.

7          I'm not finding categorically that the internal

8   e-mails could not be subject to the bank examination privilege.

9   I can see circumstances where they very well may be, and I want

10  to give the agencies -- and again, this is the agencies, not

11  Capital One, and so it's the agencies who have to make that

12  determination.  This is not something that, you know, is done

13  in conjunction with Capital One.  They're the ones who have to

14  assert this privilege, and they're the ones who have to come to

15  the Court and support it once it gets asserted.

16         So, you know, I -- that's a short time period; I

17  understand.  This is an issue that has been brewing for a very

18  long time.  It's an issue that, you know, I, I think the

19  agencies talk about their free-flowing information, all this

20  kind of information that they have consistently, so it's

21  important for them to -- they know about this.  This is not a

22  surprise to them.

23         The idea that, you know, I think the case, and I

24  can't remember -- the union case that we discussed, you know,

25  we have gotten to the point where there's no need to have a

1  letter sent to the agencies.  The agencies have intervened in

2  this case.  They have the document requests.  They've actually

3  cited the document -- one of the document requests in their

4  papers that they've filed with the Court.

5          So the time has come for them to make the decision,

6  and so the request has been made.  You've got two weeks in

7  order to provide a log to Capital One and to the plaintiffs

8  indicating which documents you're going to contend that you're

9  going to assert a privilege, after a communication and

10  discussions with the plaintiffs, if you're unable to agree on

11  whether that log adequately asserts a privilege or you want to

12  fight over that issue so you can deal with it in a separate

13  motion.

14          I think that's really the best way that we can go

15  through in doing this.  You know, this ruling does not cover --

16  and I, you know, I know from the chart that I think was in

17  Ms. Solomon's declaration that there aren't any documents that

18  are being withheld that were solely based on FDIC or the

19  Consumer Financial Protection Bureau, but to the extent that

20  there are documents that are only related to those agencies,

21  you know, they have to be produced.  They had time to come in,

22  assert their claims, make their case for doing certain things.

23  They didn't do it in a timely manner.

24          So, you know, obviously, if a, if a document went to

25  both, you know, the Federal Reserve and to the FDIC, that

27

1    document may be subject to a privilege even though it went to

2    the FDIC, but if they're materials that went only to those

3    other two agencies, they need to be produced.  Okay?

4              MR. KOCH:  Your Honor, if I may -- Peter Koch from

5    the OCC.  Your Honor, I just want to point out a couple of

6    points here.  Your Honor, there is a significant amount of

7    materials, I think we've been told perhaps up to 70,000

8    documents.  That is -- it's very difficult to, I think, for the

9    OCC and the Federal Reserve to marshall the resources to go

10   through 70,000 documents in a two-week period.

11             One of the purposes of our motion to intervene was to

12   ask the Court to instruct the plaintiffs to follow the *Touhy*

13   process, which is a process to conserve agency resources.  Your

14   Honor, at this point, we have not received any information from

15   the plaintiffs as to why they believe nonpublic OCC information

16   or Board CSI should be disclosed for purposes of, of this

17   action.  Those are requirements that are in our *Touhy*

18   regulations.

19             THE COURT:  Mr. Koch, you -- Mr. Koch, I don't allow

20   two parties -- I mean, two lawyers to argue a position.  I

21   asked who was going to be presenting the argument on behalf of

22   the agencies.  Ms. Levenson said she was going to be presenting

23   the argument.  This is not a tag team.

24             So, you know, I've made my ruling.  You've asked for

25   this.  You wanted to come in.  You wanted to intervene.  You

28

1    said you would do it expeditiously in your papers, and I'm

2    going to require you to do it expeditiously, your papers.  You

3    know, we're talking about a set of documents that have been

4    withheld as of this date, you know.  That's what you need to

5    do, and you need to do that within two weeks.  Okay?

6            Anything else from the parties?

7            MS. PERKINS:  No, Your Honor.

8            MR. SIEGEL:  Nothing from plaintiffs, Your Honor.

9            THE COURT:  Okay.  Thank you, counsel.

10           MR. SIEGEL:  Thank you.

11           MS. PERKINS:  Thank you, Your Honor.

12                        (Which were all the proceedings

13                         had at this time.)

14

15                   CERTIFICATE OF THE REPORTER

16       I certify that the foregoing is a correct transcript of

17   the record of proceedings in the above-entitled matter.

18

19

20       _____
                         /s/
21                 Anneliese J. Thomson

22

23

24

25