# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

| | | |
|---|---|---|
| IN RE: CAPITAL ONE CONSUMER | ) | |
| DATA SECURITY BREACH LITIGATION | ) | MDL No. 1:19md2915 (AJT/JFA) |
| _____ | ) | |

This Document Relates to CONSUMER Cases

_____

## CAPITAL ONE DEFENDANTS' MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, TO CERTIFY A QUESTION OF LAW TO THE SUPREME COURT OF VIRGINIA

**KING & SPALDING LLP**

David L. Balser (*pro hac vice*)
S. Stewart Haskins II (*pro hac vice*)
John C. Toro (*pro hac vice*)
Kevin J. O'Brien (VSB No. 78886)
Robert D. Griest (*pro hac vice*)
Peter M. Starr (*pro hac vice*)
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309
Tel.: (404) 572-4600
Fax: (404) 572-5140
dbalser@kslaw.com
shaskins@kslaw.com
jtoro@kslaw.com
kobrien@kslaw.com
rgriest@kslaw.com
pstarr@kslaw.com

**TROUTMAN PEPPER HAMILTON SANDERS LLP**

Robert A. Angle (VSB No. 37691)
Tim St. George (VSB No. 77349)
Jon S. Hubbard (VSB No. 71089)
Harrison Scott Kelly (VSB No. 80546)
1001 Haxall Point
Richmond, VA 23219
Tel.: (804) 697-1200
Fax: (804) 697-1339
robert.angle@troutman.com
timothy.st.george@troutman.com
jon.hubbard@troutman.com
scott.kelly@troutman.com

Mary C. Zinsner (VSB No. 31397)
S. Mohsin Reza (VSB No. 75347)
401 9th Street, NW, Suite 1000
Washington, DC 20004
Tel.: (202) 274-1932
Fax: (202) 274-2994
mary.zinsner@troutman.com
mohsin.reza@troutman.com

*Counsel for Capital One*

## INTRODUCTION

Capital One respectfully asks this Court to reconsider its denial of Capital One's motion to dismiss Plaintiffs' Virginia negligence claim.  Specifically, the Court relied on Virginia's assumption-of-duty doctrine—embodied in § 323 of the Restatement (Second) of Torts—to hold that Capital One had assumed a duty to safeguard Plaintiffs' personally identifiable information ("PII").

On its face, however, § 323 does not apply unless a plaintiff alleges "liability … for physical harm."  In fact, the Supreme Court of Virginia has only applied the assumption-of-duty doctrine to cases in which physical harm is alleged; it has never extended the doctrine to a case (like this one) where only economic harm is alleged.  Courts nationwide have likewise recognized that § 323 of the Restatement applies only in cases involving physical harm.

There is no dispute that Plaintiffs do *not* allege physical harm here.  To the contrary, the Complaint alleges that Plaintiffs suffered a number of purely economic injuries in the wake of the Cyber Incident at the center of this litigation.  The Court, therefore, erred in applying the assumption-of-duty doctrine to this case.

Accordingly, Capital One respectfully requests that the Court reconsider and correct its decision on this narrow issue.  Alternatively, Capital One requests that the Court certify this determinative question of Virginia state law to the Supreme Court of Virginia for final resolution.

## BACKGROUND

The Court ruled on Capital One's Motion to Dismiss the Representative Consumer Class Action Complaint on September 18, 2020.[1]  With respect to choice of law, the Court applied the

---

[1] Capital One will use the following terms in this brief: the Amended Representative Consumer Class Action Complaint (Dkt. 836) will be referred to as the "Complaint" or "Compl."

terms of the Cardholder Agreement to hold that Virginia law governed Plaintiffs' contract claims. Order at 8-9.  The Court, however, could not "decide within the context of the pending Motions whether Virginia substantive law must apply to each of Plaintiffs' [tort] claims," and therefore considered those claims—"for purposes of the Motions"—under the laws of each Plaintiff's home state.  *Id.* at 8, 11.  The Order explicitly noted that Virginia's *lex loci delicti* rule could, with "the benefit of [a] fully-developed record," require the application of Virginia law to Plaintiffs' tort claims.  *Id.* at 11.

In addressing Plaintiffs' negligence claims under Virginia law, the Court noted that Virginia's economic loss doctrine prevents recovery "for losses suffered as a result of a breach of duties assumed only by agreement."  Order at 19 (citing *Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*, 374 S.E.2d 55, 58 (Va. 1988)).  Similarly, the Court ruled that "the source of duty rule permits a party to assert a tort claim, in spite of the presence of a contract, if the underlying duty arises independent of any contractual duties or covenants."  *Id.* at 20.

On the question whether Virginia law imposes a duty to protect PII, the Court opined that Capital One's cases, *Parker v. Carilion Clinic*, 819 S.E.2d 809 (Va. 2018) and *Deutsche Bank National Trust Company v. Buck*, No. 3:17-cv-833, 2019 WL 1440280 (E.D. Va. Mar. 29, 2019), did not control because the "alleged facts here are fundamentally different than in either" of those cases.  Order at 21.  Importantly, though, the Court did not hold that a free-standing duty to safeguard PII existed under Virginia law.  It instead reasoned that the Complaint plausibly "alleges that Capital One and Amazon voluntarily undertook a duty to protect its customers' PII manifested

---

Capital One's Motion to Dismiss brief (Dkt. 387) will be referred to as the "Motion" or "Mot." And the Court's Order on Capital One's Motion (Dkt. 879) will be referred to as the "Order."

via its affirmative acts and representations regarding its ability and responsibility to render adequate data protection services to its customers." *Id.* at 24.

On this issue, the Court noted that the Supreme Court of Virginia has found an "assumed duty may be undertaken gratuitously" in cases involving motor vehicle accidents and in the "medical care context." *Id.* at 21-22.   It further noted that the Supreme Court of Virginia's decisions teach that "liability under the voluntary duty doctrine is in lockstep with § 323 of the Restatement (Second) of Torts." *Id.* at 23.[2]

> Applying those principles to the facts alleged in this case, the Court reasoned that:
>
> This case does not fit within the narrow band of Virginia's decided assumption of duty cases.  But nothing in the cases that have applied the voluntary undertaking doctrine has expressly limited the doctrine only to the wrongful death, wrongful birth, or certain driving-related torts; and the Court concludes that if confronted with this case, the Supreme Court of Virginia would recognize an assumed duty, owed by Defendants to Plaintiffs.

Order at 23.  The Court added that "the nature of the context here is not altogether qualitatively different than those contexts Virginia courts have found an assumed duty of care to exist." *Id.* at 24.

Having held that this is the type of case in which the voluntary assumption doctrine *could* apply, the Court concluded that Plaintiffs had plausibly alleged that Capital One had voluntarily assumed a duty to safeguard their PII. The Order noted that to voluntarily assume a duty, a defendant must "personally engage in some affirmative act amounting to a rendering of services to another." *Id.* at 22 (citing *Bosworth v. Vornado Realty L.P.*, 83 Va. Cir. 549, No. CL-2010-

---

[2] While the Order cites to § 323 of the Restatement, it quotes from § 324A.  Although the two sections are related, § 323 concerns a defendant's liability directly to the party to whom the defendant agreed to render services, while § 324A concerns situations in which a defendant undertakes "to render services … for the protection of a *third person*." *Compare* Restatement (Second) of Torts § 323 (1965) *with id.* § 324A (emphasis added).

11031, 2010 WL 8925838, at *7 (Va. Cir. Ct. Dec. 20, 2010)). The Court then found that such affirmative acts were sufficiently alleged here, citing paragraphs 96-98 of the Complaint, which set out alleged contractual promises in Capital One's "Privacy Notice," "Privacy Statement," and website statements. *See* Order at 24 (citing Compl. ¶¶ 96-98); *see also id.* at 40-42 (holding that the Privacy Notice and similar statements regarding data security are plausibly alleged to be enforceable contractual obligations that form part of the agreement made between Capital One and Plaintiffs).

## ARGUMENT

Respectfully, this Court erred by stretching Virginia's assumption of duty doctrine beyond its well-defined boundaries. Until now, the doctrine has only been applied in a narrow band of cases involving *physical* injury. No such injury is alleged here—Plaintiffs, to the contrary, allege only economic losses. Accordingly, Capital One respectfully requests that the Court reconsider its Order as to Plaintiffs' Virginia negligence claim or (alternatively) certify this issue to the Supreme Court of Virginia.

### I.   THE COURT SHOULD RECONSIDER AND AMEND ITS ORDER.

#### A. Legal Standard

"The Federal Rules of Civil Procedure do not set out any standard for reconsideration of interlocutory orders." *Akeva, L.L.C. v. Adidas Am., Inc.*, 385 F. Supp. 2d 559, 565 (M.D.N.C. 2005). It is clear, however, that Rule 54(b) "expressly provides a district court with discretion to revise interlocutory orders, such as an order denying a motion to dismiss, prior to final judgment." *Matter of Vulcan Constr. Materials, LLC*, 433 F. Supp. 3d 816, 820 (E.D. Va. 2019) (internal citation omitted). Put another way, a court's power to revisit and amend a prior, interlocutory ruling is unlimited because the "ultimate responsibility of the federal courts, at all levels, is to

4

reach the correct judgment under law." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003).

While reconsideration under Rule 54(b) is "not limited to 'extraordinary circumstances,' as is generally required under Rule 59(e)," courts may still look to Rule 59 for guidance. *Vulcan Materials*, 433 F. Supp. 3d at 820. Under Rule 59, a motion for reconsideration should be granted to (among other things) "correct[] a clear error of law or … prevent[] manifest injustice." *Id.* (citing *Power Paragon, Inc. v. Precision Tech. USA, Inc.*, No. 2:08-cv-222, 2008 U.S. Dist. LEXIS 109720, at *2 (E.D. Va. Dec. 18, 2008)).

Capital One respectfully submits that the Order committed a clear error of law.

**B.  The Assumption of Duty Doctrine Applies Only in Cases Involving Physical Harm.**

The Supreme Court of Virginia, the Fourth Circuit, and this Court have all embraced the Restatement (Second) of Torts' formulation of the assumption-of-duty doctrine. As the Order states, in Virginia "liability under the voluntary duty doctrine is in lockstep with § 323 of the Restatement." Order at 23. Likewise, the Supreme Court of Virginia has repeatedly cited § 323 as accurately "embod[ying]" the "common law principle of assumption of duty." *See, e.g.*, *Kellerman v. McDonough*, 684 S.E.2d 786, 791 (Va. 2009); *Didato v. Strehler*, 554 S.E.2d 42, 48 (Va. 2001).

Critically, the plain language of § 323 limits liability to cases involving "physical harm," Restatement (Second) of Torts § 323, which is defined as "the physical impairment of the human body, or of land or chattels." *Id.* § 7(3). The provision states in full that:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for *physical harm* resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> > (a) his failure to exercise such care increases the risk of such harm, or
> > (b) the harm is suffered because of the other's reliance upon the undertaking.

*Id.* § 323.

Hewing to the Restatement, Virginia courts have consistently limited the assumption-of-duty doctrine to cases involving physical harm. The Supreme Court of Virginia, in particular, has applied the doctrine only in cases where the plaintiffs alleged physical harms. *See Kellerman*, 684 S.E.2d at 791 (wrongful death); *Fruiterman v. Granata,* 668 S.E.2d 127, 137 (Va. 2008) (wrongful birth; discussing doctrine's applicability but declining to impose duty based on insufficient evidence of an "affirmative act"); *Didato*, 554 S.E.2d at 48 (wrongful birth); *Ring v. Poelman*, 397 S.E.2d 824, 826-27 (Va. 1990) (negligent driving); *Cofield v. Nuckles*, 387 S.E.2d 493, 496-97 (Va. 1990) (negligent driving); *Nolde Bros., Inc. v. Wray*, 266 S.E.2d 882, 884 (Va. 1980) (negligent driving; declining to find that driver assumed duty to plaintiff). As one Virginia state court has observed, "[t]he Virginia Supreme Court has only relied on the section 323 rationale in wrongful death, wrongful birth, and one specific type of negligent driving cases." *Bosworth*, 2010 WL 8925838, at *7.

The Fourth Circuit's survey of Virginia law reached the same conclusion: "[A]ssumption of duty applies only in a narrow subset of Virginia cases: 'wrongful death, wrongful birth, and one specific type of negligent driving cases.'" *Davis v. Walmart Stores E., L.P.*, 687 F. App'x 307, 311 (4th Cir. 2017) (quoting *Bosworth*, 2010 WL 8925838, at *7); *see also Tuel v. Hertz Equip. Rental Corp.*, 508 F. App'x 212, 219-20 (4th Cir. 2013) (discussing the assumption of duty doctrine in the context of third-party liability and observing that Virginia courts will only find an assumed duty where the third party "suffered some *physical injury, rather than mere economic loss*, as a result of the actor's negligent performance") (emphasis added).

In light of this unbroken line of case law, this Court recently echoed this chorus, holding that "Virginia courts have only permitted the application of assumption of duty in [the] narrow

subset of cases" described in *Davis* and *Bosworth*. *Small v. Tate*, No. 2:18-cv-315, 2019 WL 446594, at *9 (E.D. Va. Jan. 29, 2019) (Davis, C.J.) (citing *Davis*, 687 F. App'x at 311).[3]

Not only does Virginia case law support limiting § 323's application to physical-harm cases, time-honored principles of tort law do, too. As the Supreme Court of Virginia has recognized, "[t]he controlling policy consideration underlying tort law is the safety of persons and property—the protection of persons and property from losses resulting from injury." *Sensenbrenner*, 374 S.E.2d at 58; *see also Maersk Line Ltd. v. Care*, 271 F. Supp. 2d 818, 824 (E.D. Va. 2003) (recognizing that because "the purpose of tort law is to provide an avenue for recompense for a physical injury, recovery for pure economic loss is rarely available"); *Crawford v. Deutsche Bank AG*, 244 F. Supp. 2d 615, 617 (E.D. Va. 2003) (surveying Virginia case law and holding that "[t]hese rulings all reflect the principle that tort law is designed to protect the safety of persons and property"). In short, confining the assumption-of-duty doctrine to cases involving physical injury makes good sense, and it avoids the inherent tension that would otherwise emerge between that doctrine and Virginia's economic-loss and source-of-duty rules—both of which recognize that economic losses are ordinarily the province of contract, not tort, law.

---

[3] The one Virginia case that (arguably) deviates from the physical harm paradigm is *Blakeman v. Emergency USA*, No. CL-2010-6648, 2011 WL 8947567 (Va. Cir. Ct. Aug. 17, 2011), an unpublished, trial-court decision. Considering a demurrer, the court there held that plaintiff, an employee of a car dealership, sufficiently alleged a third-party company involved in collecting urine samples for employee drug testing had assumed a duty to him, because improper drug testing could cause "harm" to plaintiff's "person or things"—namely, the "employee's job status." *Id.* at *5. But the plaintiff there had also alleged that the company's negligence caused a *physical* injury (in the form of erectile dysfunction). *See id.* at *7. It is thus not clear whether *Blakeman* intended to depart from the Restatement's physical-harm requirement or simply applied Virginia's generous demurrer standard. Nor did the Court give any reasons for departing from the physical-harm requirement *if* it in fact did so. And, in any event, the court's duty holding was ultimately immaterial, as the court found that plaintiff's negligence claim was barred by the economic loss doctrine, among other reasons. *See id.*

In addition, federal courts nationwide—applying various states' laws—have consistently recognized that section 323 applies only to physical-harm cases. The First Circuit, for instance, has observed that "courts in a large number of jurisdictions have read the references to 'physical harm' in § 323 and § 324A of the Restatement *as affirmatively precluding recovery for economic losses* in such cases." *Schaefer v. Indymac Mortg. Servs.*, 731 F.2d 98, 104 (1st Cir. 2013) (collecting cases) (emphasis added).[4] The D.C. District similarly held that § 323 "clearly provides that a defendant is subject to liability *only when* his failure to exercise reasonable care either increased the risk of physical harm to the plaintiff or caused the plaintiff to suffer actual physical harm." *Rocha v. Brown & Gould, LLP*, 101 F. Supp. 3d 52, 87 (D.D.C. 2015) (emphasis added). *See also Carlotti v. Emps. of Gen. Elec. Fed. Credit Union No. 1161*, 717 A.2d 564, 567 (Pa. Super. Ct. 1998) ("We have been unable to find *any binding decision* that would impose a duty under § 323 where the harm alleged is *merely financial*.") (emphasis added).[5]

---

[4] While not directly applicable here, Restatement § 324A—which deals with assumed duties in the context of third-party liability—is also expressly limited to "physical harm." *See* Restatement (Second) of Torts § 324A. The Supreme Court of Virginia recognized this limitation in *Burns v. Gagnon*, a case involving a school principal's failure to prevent a fight in which one student was seriously injured. *See* 727 S.E.2d 634, 643-44 (Va. 2012) ("In accordance with the principle of assumption of a duty, an actor who fails to exercise reasonable care in performing his undertaking may be subject to liability for *physical harm* caused not only to the one to whom he has agreed to render services, but also to a third person.") (emphasis added). *See also Boland v. Rivanna Partners L.L.C.*, 69 Va. Cir. 308, 2005 WL 3105359 at *3 (Va. Cir. Ct. 2005) (applying § 324A to hold that snow removal contractor owed duty to plaintiff who slipped and fell in parking lot from which contractor was hired to remove snow and ice). Courts nationwide have reached the same conclusion. *See Schaefer*, 731 F.2d at 104 (collecting cases).

[5] *Accord Shaner v. United States*, 976 F.2d 990, 994 (6th Cir. 1992) (citing § 323, denying recovery under Ohio law, and holding that the "Good Samaritan Doctrine is limited to physical harm"); *Or. Laborers–Empl'rs Health & Welfare Trust Fund v. Philip Morris, Inc*., 17 F. Supp. 2d 1170, 1182 (D. Or. 1998) (dismissing claim that defendant breached voluntary duty because "physical harm" is "a necessary element under [§] 323"); *Hatleberg v. Norwest Bank Wisc*., 700 N.W. 2d 15, 24 (Wisc. 2005) ("Despite the voluminous number of cases applying [§ 323] of the Restatement, we have found no cases ... holding that purely economic harm satisfies the 'physical harm' requirement."); *see also Rocha*, 101 F. Supp. 3d at 88 n.30 (recognizing that "the substantial

## C. The Order Misapplied the Assumption-of-Duty Doctrine.

Plaintiffs in this case do not allege any physical harm. To the contrary, the Complaint alleges only economic injuries, including, *e.g.*, "losing the inherent value of their PII," "costs associated with the detection and prevention of identity theft," "purchasing services they would not have otherwise paid for," and "losing the value of Capital One's … promises of adequate data security." *See* Compl. ¶ 140; *see also* Mot. at 14 (listing Plaintiffs' alleged harms as including (1) an increased risk of future identity theft, (2) time and money spent mitigating the consequences of the Cyber Incident, (3) losing the inherent value of their stolen PII, (4) benefit-of-the-bargain damages, and (5) actual identity theft). Nor have Plaintiffs ever argued that they suffered any physical injury that would support applying the assumption-of-duty doctrine. For example, the sole Virginia representative Plaintiff, John Spacek, does not claim any physical harm. *See* Compl. ¶ 24 (alleging unauthorized charges, time and effort, and other non-physical injuries).

Nevertheless, in holding that Plaintiffs plausibly alleged that Capital One assumed a duty to protect their PII under § 323, the Court relied only on cases involving physical injury. *See* Order at 21-23. In *Kellermann*, 684 S.E.2d at 793-44, and *Terry v. Irish Fleet, Inc.*, 818 S.E.2d 788, 793 (Va. 2018), for example, plaintiffs' estates brought wrongful death actions after the decedents perished, in a car crash and a homicide, respectively. Similarly, *Ring*, 397 S.E.2d at 826-27, *Cofield*, 387 S.E.2d at 497, and *Nolde Bros.*, 266 S.E.2d at 884, all involved injuries sustained in automobile accidents (as the Court recognized). And *Didato*, 554 S.E.2d at 48-49, and

---

majority of courts … do[] not permit recovery when only economic harm is alleged" and collecting cases). Vanishingly few courts have held to the contrary, and those that have did so without any explanation for departing from the plain language of the Restatement. *See, e.g., Lloyd v. State Farm Mut. Auto. Ins. Co.*, 860 P.2d 1300, 1303 (Ariz. Ct. App. 1992) (quoting § 323 and holding, without explanation, that a "volunteer may be liable for economic harm as well as physical harm"); *Blackmon v. Nelson, Hesse, Cyril, Weber & Sparrow*, 419 So.2d 405, 406 (Fla. Dist. Ct. App. 1982) (citing § 323 but applying the voluntary duty to an economic loss claim without explanation for this departure).

*Fruiterman*, 668 S.E.2d at 136, involved allegations that a physician's negligence caused the birth of children with physically harmful genetic diseases (sickle-cell anemia and Down Syndrome, respectively). Yet the Court's decision does not explain how such physical-harm cases support application of the assumption-of-risk doctrine to the Plaintiffs' claims, which allege only economic injuries as a result of the Cyber Incident. Likewise, the Court's decision does not address any basis for concluding that the Supreme Court of Virginia would expand the assumption-of-duty doctrine beyond "physical harm" cases.

Accordingly, Capital One respectfully requests that the Court reconsider its ruling in this narrow respect and dismiss Plaintiffs' Virginia negligence claim.[6] Leaving that ruling undisturbed, in contrast, would make Virginia an extreme outlier regarding the interpretation and application of § 323.

## II.    IN THE ALTERNATIVE, THE COURT SHOULD CERTIFY THIS QUESTION TO THE SUPREME COURT OF VIRGINIA.

If this Court elects not to reconsider its holding on the assumption-of-duty doctrine, Capital One respectfully submits that it should certify the following question to the Supreme Court of Virginia: Is a defendant who fails to exercise reasonable care in performing an assumed duty liable for economic losses or, as specified in § 323 of the Restatement (Second) of Torts, only for physical harm?

### A.  Legal Standard

Under Rule 5:40 of the Rules of the Supreme Court of Virginia, a federal district court may certify a question of Virginia law if that question "is determinative in any proceeding pending

---

[6] The Court premised its decision declining to dismiss Plaintiffs' negligence claim on § 323, not on any recognition of a freestanding duty to safeguard consumers' PII under Virginia law. But to the extent pertinent here, Capital One refers to the arguments in its motion to dismiss briefing on that latter issue. *See* Mot. at 26-29.

before the certifying court and it appears there is no controlling precedent on point in the decisions of [the Supreme Court of Virginia] or the Court of Appeals of Virginia." Va. R. Sup. Ct. 5:40(a), (e). Deciding whether to "certify a question remains entirely within the district court's discretion." *Burke v. THOR Motor Coach, Inc.*, 113 F. Supp. 3d 863, 866 (E.D. Va. 2015). In exercising this discretion, the district court considers not only the "'imposition on the time and resources of the Supreme Court of Virginia,'" but also the effect on the time and resources of the parties, the protraction of the proceedings, and judicial efficiency. *Id.* at 866 (quoting *W. Am. Ins. Co. v. Bank of Isle of Wight*, 673 F. Supp. 760, 764 (E.D. Va. 1987)).

### B. The Question Presented Here Should be Certified to the Supreme Court of Virginia.

Certification is appropriate here because the proposed question is determinative of the central claim in this case—Plaintiffs' negligence claim under Virginia law[7]—and because there is no on-point decision from the Supreme Court of Virginia extending § 323 to economic-loss cases. Nor will certifying this question unduly burden this Court, the Supreme Court of Virginia, or the parties.

*The proposed question is determinative.* A question is certifiable when it is "determinative in any proceeding pending before the certifying court." Va. R. Sup. Ct. 5:40(a). Because the rule requires that a question be "determinative *in* any proceeding" rather than "determinative *of* any proceeding," the rule encompasses questions that are determinative of individual claims in addition to those that are determinative of entire lawsuits. *Id.* (emphasis added); *see also Lee-Warren v. Sch. Bd. of Cumberland Cty.*, 403 S.E.2d 691, 692 (Va. 1991) ("[T]he question certified is

---

[7] It bears noting that Plaintiffs' negligence claim is Count I of the Complaint and was a central focus of the parties' motion to dismiss briefing. Additionally, Capital One is headquartered in Virginia and the servers impacted in the Cyber Incident were situated in Virginia. Virginia is, thus, the state where many of the key events alleged in the Complaint took place.

determinative of the dispute because a decision whether Lee-Warren had continuing contract status will resolve both the due process and the breach of contract claims.").  In fact, the Supreme Court of Virginia routinely answers certified questions that are not even dispositive over individual claims, but merely over discrete legal issues.  *See, e.g.*, *Shaw v. Titan Corp.*, 498 S.E.2d 696, 697-701 (Va. 1998) (answering questions certified by the Fourth Circuit regarding the adequacy of jury instructions and whether plaintiff was entitled to punitive damages); *Bulala v. Boyd*, 389 S.E.2d 670, 672-79 (Va. 1990) (answering six non-dispositive questions certified by the Fourth Circuit, including questions related to damages caps); *Wyatt v. McDermott*, 725 S.E.2d 555, 558 (Va. 2012) (answering two certified questions: (1) whether Virginia "recognizes tortious interference with parental rights as a cause of action," and (2) "[i]f so, what are the elements of the cause of action, and what is the burden of proof of such a claim").

The proposed question here—whether the assumption-of-duty doctrine recognized in § 323 applies in cases involving only economic losses—is outcome-determinative of Plaintiffs' negligence claims.  Indeed, Virginia law may well apply to *every* negligence claim in this action.  *See* Order at 8-11 (recognizing that further proceedings "may prove" Virginia substantive law applies to all of Plaintiffs' tort claims but holding that "without the benefit of [a] fully-developed record, the Court cannot definitively decide which substantive law applies").  The question is determinative of Plaintiffs' Virginia negligence claims because in finding a negligence duty under Virginia law, the Court relied solely on the assumption-of-duty doctrine embodied in § 323.  In short, if the doctrine does not apply, Plaintiffs' negligence claim must fail.  The proposed question is therefore "determinative" of Plaintiffs' negligence claims.

***There are no authoritative decisions from the Supreme Court or Court of Appeals of Virginia.***  Under Rule 5:40(a), a question may be certified to the Supreme Court of Virginia when

there "is no controlling precedent on point" in the decisions of either that Court or the Court of Appeals of Virginia.  As already explained, every assumption-of-duty case decided by the Supreme Court of Virginia (and/or cited in the Order) involved an alleged physical injury.  *See supra* at pps. 5-6, 9-10.  Capital One submits that these decisions resolve the issue—the Supreme Court of Virginia has clearly endorsed § 323 and recited its physical-harm limitation.  But this Court held otherwise in predicting that "if confronted with this case, the Supreme Court of Virginia would recognize an assumed duty, owed by Defendants to Plaintiffs."  Order at 23.  While Capital One primarily seeks reconsideration of this narrow aspect of the Court's Order, at a minimum this issue is sufficiently unresolved that certification is warranted.

**Certification will not unduly burden the Supreme Court or negatively affect this MDL proceeding.**  Whether a defendant can assume a duty of care in cases that do not involve physical harm is an important question of Virginia law.  In fact, it is a fundamental question about the scope of Virginia tort liability that ought to be resolved by Virginia's highest court in the first instance.

The question, moreover, would "have significance beyond the interests of the parties in a particular lawsuit," which weighs in favor of certification.  *Regatos v. N. Fork Bank*, 396 F.3d 493, 498 (2d Cir. 2005).  In addition, the proposed question is a narrow issue of law that is cleanly presented on the facts alleged in this case.  Answering the question would not unduly burden the Supreme Court of Virginia (which has discretion to decline to answer questions certified to it in any event).

Certifying the proposed question also would not prejudice the parties or impede proceedings in this MDL.  The assumption-of-duty doctrine has already been briefed by the parties, and there are no impending deadlines that would be affected by certification.  Fact discovery has been ongoing and will continue.  Briefing on class certification is not set to take place until March

2021, and summary judgment briefing will not occur until June 2021.  *See* Dkt. 448, Pretrial Order No. 24.  Thus, any briefing on the question proposed to be certified here will not interfere with the litigation schedule.

Accordingly, the Court should certify this question of law to the Supreme Court of Virginia and permit that court to decide whether the assumption-of-duty doctrine extends beyond cases involving physical harm.

## CONCLUSION

For these reasons, Capital One respectfully requests that the Court reconsider its ruling.  In the alternative, it should certify the question described above to the Supreme Court of Virginia.

Dated: October 2, 2020

Respectfully submitted,

/s/ _____

David L. Balser (*pro hac vice*)
S. Stewart Haskins II (*pro hac vice*)
John C. Toro (*pro hac vice*)
Kevin J. O'Brien (VSB No. 78886)
Robert D. Griest (*pro hac vice*)
Peter M. Starr (*pro hac vice*)
**KING & SPALDING LLP**
1180 Peachtree Street, N.E.
Atlanta, GA 30309
Tel.: (404) 572-4600
Fax: (404) 572-5140
dbalser@kslaw.com
shaskins@kslaw.com
jtoro@kslaw.com
kobrien@kslaw.com
rgriest@kslaw.com
pstarr@kslaw.com

Robert A. Angle (VSB No. 37691)
Tim St. George (VSB No. 77349)
Jon S. Hubbard (VSB No. 71089)
Harrison Scott Kelly (VSB No. 80546)

**TROUTMAN PEPPER HAMILTON SANDERS LLP**
1001 Haxall Point
Richmond, VA 23219
Tel.: (804) 697-1200
Fax:  (804) 697-1339
robert.angle@troutman.com
timothy.st.george@troutman.com
jon.hubbard@troutman.com
scott.kelly@troutman.com

Mary C. Zinsner (VSB No. 31397)
S. Mohsin Reza (VSB No. 75347)
**TROUTMAN PEPPER HAMILTON SANDERS LLP**
401 9th Street, NW, Suite 1000
Washington, DC 20004
Tel.: (202) 274-1932
Fax: (202) 274-2994
mary.zinsner@troutman.com
moshin.reza@troutman.com

*Counsel for Capital One Defendants*

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on October 2, 2020, I caused the foregoing document to be filed with the Clerk of Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

*/s/*_____

David L. Balser
