IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| IN RE: CAPITAL ONE CONSUMER DATA SECURITY BREACH LITIGATION | ) ) ) | MDL No. 1:19md2915 (AJT/JFA) |

**This Document Relates to the Consumer Cases**

## REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE UNTIMELY PRODUCED DOCUMENT

Amazon's response concedes that the defense to which its untimely produced evidence relates, "Amazon's apportionment theory," is "hardly new"—having been in Amazon's contemplation since *May 2020*; and that the evidence is "vitally important" to its defense. (Doc. 1218 at 5, 6). Yet, at the same time, Amazon argues that its undisputedly untimely production should be excused because Plaintiffs did not preemptively, or with sufficient granularity, request the information. This is not the law. Amazon is required to timely disclose, "without awaiting a discovery request," all evidence that it "may use to support its . . . defenses . . . " Fed. R. Civ. P. 26(a)(1)(A)(ii). It is no viable excuse that Plaintiffs did not ask for this information earlier—even if that were accurate (and it is not). Moreover, the "vital" importance of the evidence undermines rather than supports Amazon's argument because "the more important the evidence, the more important it is for the proponent to disclose [the evidence] in a timely manner . . . . " *Benjamin v. Sparks*, 986 F.3d 332, 343 (4th Cir. 2021).

At bottom, Amazon's argument demonstrates it did not even begin attempting to compile this evidence until just before, if not after, the close of discovery in this case. That is insufficient. Amazon was required to proactively develop and disclose the evidence it intended to defend this case with and produce the information during the discovery period. It failed in that effort and it

should not be permitted to cure its own nonfeasance by ambushing Plaintiffs and undermining this Court's schedule.

### A. Amazon's Duty to Disclose is Not Contingent on Plaintiffs' Discovery Requests

The main thrust of Amazon's response is that its failure to timely produce information critical to its defense should be excused because Plaintiffs had not previously, expressly requested it. (Doc. 1218 at 1–3). As an initial matter, as made clear in Plaintiffs' motion, Plaintiffs made multiple discovery requests that encompassed this evidence, even if not expressly or directly aimed at it, including Document Requests 48, 49, 51 and 56. (Doc. 1214 at 2–3). Indeed, because the Second Document Requests defined "consumer data" as "data obtained from the credit[ ] card applications," (Doc. 1214-1 at 3),[1] and all such "consumer data" was contained in the card production account, Request 51 arguably did expressly request this very information.

Nonetheless, Amazon's argument is this regard is wholly irrelevant. Rule 26 directs that "a party must, *without awaiting a discovery request*, provide to the other parties . . . all documents, electronically stored information, and tangible things that the disclosing party has in its *possession, custody, or control* and *may use* to support its . . . defenses." Fed. R. Civ. P. 26(a)(1)(A)(ii) (emphasis added). Thus, whether or not Plaintiffs requested this information, Amazon was required to timely disclose it.

Amazon now tacitly concedes this evidence was—throughout the entirety of this case—in its possession, custody, or control because once it desired to seek it, Amazon was able to procure it. And, clearly, Amazon now also admits it intends to use this evidence in its defense of this case.

---

[1] Pinpoint citation to materials on the Court's docket refer to CM/ECF System's pagination in the upper, righthand corner.

Accordingly, Amazon's obligations under Rule 26(a) were undisputedly triggered at least as early as May 2020.

Several cases support the proposition that a specifically targeted discovery request—aimed particularly at the granular evidence the non-disclosing party failed to timely reveal—is not required to trigger Rules 26 and 37.

For example, in *Russell v. Absolute Collection Services, Inc.*, 763 F.3d 385 (4th Cir. 2014), the Fourth Circuit affirmed exclusion of a defendant witness and documents in support of the defendant's new iteration of a bona-fide-error defense theory of the case, that were not disclosed during the initial discovery period (despite having been revealed in an extended discovery period). *Id.* at 397–98. There, it was no excuse that plaintiff had not previously requested this specific evidence—nor could plaintiff have been expected to, as it was evidence supporting defendant's newly realized theory of defending the case that was at issue. The same is true here and the same result should follow.

Likewise, in *Thomas v. FTS USA, LLC*, 3:13CV825, 2016 WL 3566657 (E.D. Va. June 24, 2016), the non-disclosing defendant argued that "their disclosures were satisfactory because: (1) they disclosed [the witness's] predecessor, whom [plaintiff] declined to depose; and (2) the existence of Phase II discovery constituted free rein to relitigate class certification." *Id.* at *10; *see also id*. at *5. Not so according to the court, which found that the first "point is simply irrelevant to Defendants' duty to timely disclose [the witness]." *Id.* at *5. Moreover,

> Defendants had ample opportunity between [the witness's] promotion in April and the filing of their summary judgment and decertification motions on May 16, 2016, to give [plaintiff] notice of [the witness's] existence and knowledge. Instead, Defendants chose to wait to amend their Rule 26 disclosures until after [the witness's] declaration had been filed and after discovery had ended. In so doing, Defendants demonstrated that, even after numerous warnings from the Court over the past year, they have not yet

3

> renounced the gamesmanship in which they have engaged throughout discovery.

*Id.* Accordingly, the court excluded the late-disclosed witness's declaration and evidence attached thereto from consideration in motion practice, precluded the witness from testifying at trial, and precluded the defendant from introducing the associated documents at trial.

So too here. Whether Plaintiffs previously requested this evidence "is simply irrelevant to Defendants' duty to timely disclose" it. Likewise, this Court warned Amazon, in May 2020, to fully engage in discovery and litigation of this case, stating:

> Amazon needs to be doing -- working just as hard and just understanding that this needs to be done. They're a defendant in this case, and they need to, you know, not put this on the back burner. This is – they're subject to all the same rules and deadlines as Capital One is in this case. So I just want to make that clear for Amazon.

Transcript of May 12, 2020, Status Conference, at 25:1–7 (Doc. 506). And yet Amazon continued to shirk its responsibilities.

### B. Amazon Concedes it Knew of this Issue in May 2020 and Yet Did Nothing to Timely Develop or Disclose the Pertinent Evidence

In an attempt to undermine the "surprise" element here, Amazon concedes it has long known of this issue. Specifically, Amazon admits that "this information is not 'new'"; that "as early as May 2020, Amazon" indicated it might defend the unjust enrichment claim in this way; and thus that "Amazon's apportionment theory is hardly new." (Doc. 1218 at 5).

Ponderously, Amazon goes onto explain that, despite having known of this defense theory since May 2020, it did not even begin attempting to actually procure the evidence at issue (which was, clearly, at all times within in its custody or control) until some 6 months later, in November 2020 after receiving Plaintiffs' Second Document Requests. *See* (Doc. 1218 at 7); (Doc. 1218-1 at ¶¶ 2, 4). As the Court is aware, after previous extensions, the fact discovery deadline in this matter was November 20, 2020. (Doc. 448). While Amazon's response is not specific as to when in

4

November it began looking for this evidence, quite conceivably it was not until just before, if not after, the discovery deadline.

That is insufficient under the Rules.

A similar argument was made and rejected in *Quesenberry v. Volvo Group N. Am., Inc.*, 267 F.R.D. 475 (W.D. Va. 2010). There, the non-disclosing party argued that certain witnesses were revealed in a timely manner because their counsel did not begin to interview the witnesses until after discovery was closed, and counsel notified the opposing party of the witnesses' identities two weeks after the interviews. *Id.* at 479. The court explained:

> an investigation into key witnesses is clearly part of fact discovery, which according to this court's earlier order, was to be completed by September 30, 2009. Although the parties agreed to extend the discovery deadline into October, that still did not justify beginning interviews of retirees in February, approximately four months later and nearly three months after the submission of summary judgment briefs.

*Id.*

Accordingly, the court excluded the late-disclosed witnesses, finding that disclosure four months after the discovery deadline violated "Rule 26(a)(1) and (e)(1) to make and supplement initial disclosures in a timely manner," *id.* at 480, and was neither harmless nor substantially justified:

> [T]he plaintiffs had no satisfying justification for the undue delay in investigating the recollection of these class members, other than that they just did not get around to it earlier. This explanation, if accepted as substantial justification, could create a perverse incentive for parties to delay the interviews of key witnesses—by waiting to the last possible moment . . . to interview individuals who likely have relevant information, parties could claim ignorance for purposes of Rule 26(a)(1) disclosures and surprise opponents with key witnesses at trial.

*Id.* at 481–82.

The same is true here. Amazon offers no explanation for its delayed investigation of the evidence at issue other than it "just did not get around to it earlier," *id.*, and that is not enough. Were that excuse accepted, every defendant could simply wait until discovery closes to begin investigating how they might factually undermine a plaintiff's damages theory, and then claim the belated evidentiary disclosure is timely because they "just" obtained the relevant information. The law expects—and requires—more.

### C. Amazon Admits the Evidence's Importance, Undermining its Argument

In addition to having known of the issue since May, Amazon also admits the evidence at issue is "vitally important" to its defense of this case: "Because [the card production] account is one of many Capital One AWS accounts, the revenue reasonably tied to that account is, understandably, significantly less than the overall Capital One account revenue. Accordingly, this sub-account revenue is highly relevant to the Court's determination of an unjust enrichment remedy, if it concludes such a remedy is warranted." (Doc. 1218 at 7).[2]

Amazon is mistaken, however, that this importance counsels in its favor. The Fourth Circuit directs to the contrary:

> [T]he [district] court recognized that Dueck's deposition testimony would likely be important evidence supporting Benjamin's theory of the case because she was present at the meeting where Benjamin was allegedly terminated. But the court also viewed the importance of the testimony as weighing against Benjamin. . . . That analysis aligns with our precedent. We have held that the fourth factor, the importance of the evidence, "must be viewed from the perspective of both parties." "To that end, the more important the evidence, the more important it is for the proponent to disclose [the evidence] in

---

[2] Notably, Amazon likely realized its own Hobson's choice on this issue in connection with the briefing regarding Capital One's use of customer data, wherein Plaintiffs explained that damages such as those at issue here need only be reasonably approximated by Plaintiffs with the burden then shifting to the defendant to demonstrate the costs that should be deducted in calculating net profit. *See, e.g.*, (Doc. 1141 at 12–13).

        a timely manner because it is more likely to prejudice the opposing party."

*Benjamin v. Sparks*, 986 F.3d 332, 343 (4th Cir. 2021) (citations omitted) (quoting *Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 598 (4th Cir. 2003); *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 218 (4th Cir. 2017)).

    Accordingly, Amazon's admission as to the importance of this evidence only heightens its need to have timely disclosed it, not diminishes it, and counsels in favor of exclusion.

### D. The Trial Date Need Not Be Impacted to Exclude Evidence Under Rule 37, Nor Can the Surprise be Feasibly Cured Here

    Next, Amazon argues that because trial has not been set in this matter its belated evidentiary disclosure cannot impact the trial schedule and thus the evidence need not be excluded, and that any other delay can be cured through the expert discovery process or supplemental expert reports. (Doc. 1218 at 5–6).

    As an initial matter, many courts have excluded evidence under Rule 37 where the untimely disclosure impacted court deadlines other than solely the trial date. For example, in *Morris v. Metals USA*, 2:09-CV-1267-DCN, 2011 WL 94559, at *6 (D.S.C. Jan. 11, 2011), the court excluded an investigator witness and video tape disclosed for the first time one week *prior to* the close of discovery, not because of an impact on the trial date, but because

> plaintiff, her daughter, and one of plaintiff's treating physicians, Dr. Thomas Roush, had already been deposed, the parties were in the process of mediating the case, and the discovery deadline was less than a week away. Therefore, plaintiff could not present testimony addressing her ability to perform the activities captured on the surveillance videotape.

*Id.* at *5. Likewise, in *Remediation Products, Inc. v. Adventus Americas Inc.*, CIV. 307CV153RJCDCK, 2009 WL 4612290, at *2 (W.D.N.C. Dec. 1, 2009), the court excluded the evidence under Rule 37 not because trial would have to be moved, but because the "prejudice

could not be cured without further extending case deadlines for fact and expert discovery, expert reports, and supplemental briefing for dispositive motions. Defendants offer no plausible explanation for their delay. This Court has already given numerous extensions and is not inclined to condone or reward this repeated and unexcused non-compliance with the rules." *Id.* at *2; *see also Ebersole v. Kline-Perry*, 1:12CV26 JCC/TRJ, 2012 WL 2673150, at *4 (E.D. Va. July 5, 2012) (excluding multiple witnesses disclosed one day *prior to* the discovery deadline, and without mentioning any impact on the trial date).

So too this Court should not condone Amazon's untimely disclosure, prompted by nothing other than its own litigation strategy not to seek out this evidence until after discovery had closed, or just prior thereto.

And the cases Amazon relies on for this proposition, that it is only impact on the trial date that matters, are inapposite in any event. *Banks v. Cook*, CIV. 3:08CV514, 2009 WL 196532 (E.D. Va. Jan. 26, 2009), did not turn on the lack of impact on the trial schedule, but rather the utter lack of surprise:

> Plaintiff's failure to disclose did not unduly prejudice the Defendants. **Defendants have been aware of Plaintiff's intention to call Dr. Squillante as a witness since at least October 15, 2008, and have been in receipt of his medical records and progress notes since that juncture**. And although no expert witness report was produced, **Defendants were aware that Plaintiff intended to call Dr. Squillante as both a "treating physician and expert witness" since December 19, 2008, almost a month before the designated discovery period ended**. The information was therefore received far enough in advance to allow Defendants to inquire or demand that Plaintiff "cure" the nondisclosure, either through a request for an extension of time to obtain a deposition of Dr. Squillante, or a motion for sanctions and/or to compel the nondisclosed information. Additionally, given the advanced notice of Dr. Squillante's potential testimony, the Court concludes that use of the evidence would not unduly disrupt the trial, especially where a jury may draw the causal connection between the accident and the need for future surgery regardless of cautionary instruction.

> **Considering all of the relevant factors, particularly Defendants' notice of Dr. Squillante being intended as an expert witness a month before the discovery period ended**, the Court finds that Defendants were not unduly prejudiced by Plaintiff's nondisclosure, and therefore, their motion to exclude portions of Dr. Squillante's testimony must be denied.

*Id.* at *3 (emphasis added). The same is true for *Carotek, Inc. v. Textron Fastening Sys., Inc.*, CIVA305CV395MKRDCK, 2008 WL 1777829 (W.D.N.C. Apr. 16, 2008), which turned not on some rote analysis of the trial date, as Amazon suggests, but a fact-bound determination of lack of surprise or harm, among other factors. *See id.* at *3 ("Defendant makes a persuasive argument that Plaintiff was aware of the suit and that much of the information and documents applicable to this case were at its disposal. To the extent Plaintiff was unaware or surprised, it could have availed itself of discovery mechanisms to cure that surprise in a more timely fashion.").

That is simply not the case here. Amazon first provided the evidence at issue three months after the discovery deadline passed, and only three business days before Plaintiffs' experts reports were due (and thus far too late for those experts to reasonably consider and incorporate the information). Plaintiffs never previously had the information contained in AWS_CAP00068678, nor any indication it even existed.

Indeed, perhaps Amazon's untimely disclosure could be excusable if it had been accompanied by ongoing communication about the evidence's existence. However, Amazon never, at any point, gave Plaintiffs any indication this information existed or was potentially available, or that it was attempting to obtain it but was delayed by technical hurdles. Rather, Amazon lay in wait until it successfully extracted the information, and then—in cynical disregard for the Rules—sandbagged Plaintiffs with it.

Amazon's claim that any surprise can be cured by a later expert deposition is also mistaken. Several courts in this District have precluded untimely evidence, even where a subsequent

deposition occurred.[3] Moreover, expert discovery alone on this issue will not be sufficient. Had this evidence been timely disclosed, Plaintiffs could have taken factual discovery on how it was derived, whether those methods are reliable and trustworthy, and, importantly, Plaintiffs' damages expert—who has been involved in this case throughout fact discovery and long before his report was served on Monday—could have digested the information and guided Plaintiffs' counsel to additional or alternative evidentiary paths or theories. That possibility is now lost, at least absent a full re-opening of fact discovery and the concomitant delays and expense associated therewith. And even that would be wholly unfair to Plaintiffs who have already disclosed all their expert reports.

## CONCLUSION

The "burden of establishing" harmlessness or substantial justification, via the *Southern States* factors, "lies with the nondisclosing party." *Wilkins v. Montgomery*, 751 F.3d 214, 222 (4th Cir. 2014). Amazon has failed to carry that burden. Its explanation fails to justify the delay, and it has not demonstrated the failure was harmless. Accordingly, AWS_CAP00068678 should be

---

[3] *See, e.g.*, *Disney Enterprises, Inc. v. Kappos*, 923 F. Supp. 2d 788, 796 (E.D. Va. 2013) (excluding evidence disclosed within the discovery period, but after the expert disclosure deadlines, and stating that "[a]lthough the USPTO did have an opportunity to cross-examine Mr. Geller about his 'supplemental' opinion, it was clearly surprised by this new evidence. Disney's explanations for its failure to timely disclose the new opinions are not satisfactory. Accordingly, the Court declines to find that Disney's untimely disclosure of Mr. Geller's 'supplemental' opinion relying on the source code to discuss the expiration attribute was substantially justified or harmless and will grant the USPTO's motion to preclude him from testifying about that opinion at trial."); *Perkins v. United States*, 626 F. Supp. 2d 587, 591–92 (E.D. Va. 2009) ("Although Perkins argues that Dr. Cloud's deposition cured any surprise or prejudice, Dr. Cloud equivocated on facts that should have been presented in an expert written report . . . . We find that Perkins' violation of Rule 26(a)(2)(B) hindered Defendant's ability to prepare for the deposition and, without valid justification, undermined the integrity of the discovery process. Accordingly, the Court ORDERS that Dr. Cloud's testimony, in its entirety, shall be excluded for all purposes.").

excluded and Amazon precluded from relying upon it to supply evidence on a motion, at a hearing, or at trial. Fed. R. Civ. P. 37(c).

Dated: March 4, 2021                                Respectfully Submitted,

/s/ Steven T. Webster
Steven T. Webster (VSB No. 31975)
**WEBSTER BOOK LLP**
300 N. Washington Street, Suite 404
Alexandria, Virginia 22314
Tel: (888) 987-9991
swebster@websterbook.com

*Plaintiffs' Local Counsel*

Norman E. Siegel
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, MO 64112
Tel: (816) 714-7100
siegel@stuevesiegel.com

Karen Hanson Riebel
**LOCKRIDGE GRINDAL NAUEN, P.L.L.P**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Tel: (612) 339-6900
khriebel@locklaw.com

John A. Yanchunis
**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel: (813) 223-5505
jyanchunis@ForThePeople.com

*Plaintiffs' Co-Lead Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

/s/ *Steven T. Webster*
Steven T. Webster (VSB No. 31975)
WEBSTER BOOK LLP