# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

IN RE: CAPITAL ONE CONSUMER    )
DATA SECURITY BREACH LITIGATION    )    MDL No. 1:19md2915 (AJT/JFA)
_____)

This Document Relates to CONSUMER Cases

_____

## CAPITAL ONE'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF A SECTION OF A SUPERVISORY LETTER FOR GOOD CAUSE

**KING & SPALDING LLP**

David L. Balser (*pro hac vice*)
S. Stewart Haskins II (*pro hac vice*)
Ronni D. Solomon (*pro hac vice*)
Susan M. Clare (*pro hac vice*)
John C. Toro (*pro hac vice*)
Kevin J. O'Brien (VSB No. 78886)
Robert D. Griest (*pro hac vice*)
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309
Tel.: (404) 572-4600
Fax: (404) 572-5140
dbalser@kslaw.com
shaskins@kslaw.com
sclare@kslaw.com
jtoro@kslaw.com
kobrien@kslaw.com
rgriest@kslaw.com

**TROUTMAN PEPPER HAMILTON SANDERS LLP**

Robert A. Angle (VSB No. 37691)
Tim St. George (VSB No. 77349)
Jon S. Hubbard (VSB No. 71089)
Harrison Scott Kelly (VSB No. 80546)
1001 Haxall Point
Richmond, VA 23219
Tel.: (804) 697-1200
Fax: (804) 697-1339
robert.angle@troutman.com
timothy.st.george@troutman.com
jon.hubbard@troutman.com
scott.kelly@troutman.com

Mary C. Zinsner (VSB No. 31397)
S. Mohsin Reza (VSB No. 75347)
401 9th Street, NW, Suite 1000
Washington, DC 20004
Tel.: (202) 274-1932
Fax: (202) 274-2994
mary.zinsner@troutman.com
mohsin.reza@troutman.com

*Counsel for Capital One*

## INTRODUCTION

Plaintiffs' Motion to Compel is, in essence, a belated Motion for Reconsideration. Plaintiffs ask this Court to revisit a prior privilege ruling that Plaintiffs never challenged, based on a "good cause" argument that Plaintiffs never previously raised—despite being *expressly invited* to do so.  Even if this Court were to entertain Plaintiffs' untimely good cause argument, however, good cause does not exist to override the Office of the Comptroller of the Currency's ("OCC") assertion of the bank examiner privilege ("BEP").  The privileged material is of scant relevance to Plaintiffs' claims, and Capital One has provided Plaintiffs with full discovery on the underlying facts.  The OCC is not a party to, and has no financial stake in, the outcome of this litigation and Plaintiffs' attempt to weaponize the OCC's conclusions set forth in a Supervisory Letter that was part of the ████████████████████████████████████████████ ██████████████████████████.  If this Court grants Plaintiffs' Motion, there is a real risk that candid interaction between banks and their regulators—upon which the supervisory process depends—will be chilled.  For these and other reasons discussed below, the Court should deny Plaintiffs' Motion to Compel.

## BACKGROUND

As this Court is aware, the BEP encompasses a wide range of material, including agency opinions and recommendations and a bank's responses thereto.  *See, e.g.*, *In re Bankers Tr. Co.*, 61 F.3d 465, 471 (6th Cir. 1995).  On June 5, 2020, this Court ruled that the privilege applied in this action and that the OCC and the Board of Governors of the Federal Reserve System ("FRB") could intervene to assert the privilege.  *See* Dkt. 540, at 1 (Order).  In so ruling, this Court rejected

1

several arguments Plaintiffs raised to try and avoid the privilege.[1]  Notably absent from Plaintiffs'

long list of arguments, however, was any argument that Plaintiffs had "good cause" to override

the privilege.

On October 30, 2020, Plaintiffs filed a Motion to Compel documents they contended were

"improperly withheld" on the basis of the BEP.  *See* Dkt. 982 (Motion to Compel) & 983 (Brief in

Support).  Plaintiffs challenged the redactions applied to approximately 400 documents, three of

which are the duplicate documents at issue (the "Documents").  Dkt. 983, at 2.  Plaintiffs expressly

declined to raise a good cause argument as to these Documents, even though Counsel for the

Agencies invited Plaintiffs to meet and confer regarding the issue of good cause.  *See* Dkt. No.

983-4, Pls.' Exhibit 4 (October 22 email from R. Levenson to J. Dent) (stating that "unless the

Plaintiffs are foregoing any argument that there is good cause to overcome the bank examination

privilege . . . we are not at an impasse. . . .  [A]s I explained, the Agencies are waiting on Plaintiffs

to articulate any good cause argument that they might have so that the Agencies may consider that

argument.").  Plaintiffs rebuffed this invitation and did not raise a good cause argument in their

Motion.  *See* Dkt. 983.  On November 6, 2020, this Court granted Plaintiffs' Motion in part and

held that the Court would conduct "an *in camera* review of a subset of the documents discussed

during the hearing."  Dkt. 1021 (Order).

After extensive briefing by Plaintiffs, Capital One, and the Agencies, and a thorough *in-*

*camera* document-by-document review by the Court, this Court issued its Order on December 10,

---

[1] *Compare* Dkt. 486 (Brief in Support of Plaintiffs' Motion to Compel), at 2–3 (arguing that the BEP did not apply because of diversity jurisdiction, that Capital One could not assert the privilege, that the BEP must yield to discovery obligations under the Federal Rules of Civil Procedure, and that the BEP applies only to agency opinions and recommendations) *with* Dkt. 540, at 1 ("[T]he [C]ourt finds that the federal common law bank examination privilege may be asserted by the Agencies . . . .").

2020.  *See* Dkt. 1094 (Order).  This Court held that the Documents contained information protected by the BEP.  *See id.* at 7–8.  This Court specifically ordered redaction of the OCC's "Conclusions" from a Supervisory Letter related to an examination regarding ███████████████████ ██████.[2]  The OCC's "Conclusions" in the Supervisory Letter are ████████████████ ████████████████████████████████████████████████████████ precisely the type of information the BEP is designed to protect.  Plaintiffs never objected to, challenged, or appealed this Court's ruling.

On April 28, 2021, Plaintiffs filed and served Dr. Madnick's Response to Expert Rebuttal Reports of Art Ehuan and Donald Good (Dkt. 1260-28), the Memorandum of Law in Support of Plaintiffs' Motion for Class Certification (Dkt. 1260), the Declaration of Norman E. Siegel in Support of Plaintiffs' Motion for Class Certification (Dkt. 1260-1), and Exhibit 14 to that Declaration (Dkt. 1260-15) (collectively, the "Filings"), all of which contain extensive quotation of this privileged information contained in the Documents.  Capital One became aware of the inadvertent disclosure of this privileged information for the first time upon reviewing the Filings. Capital One then discovered that—despite the Court's explicit instructions as to the redactions—

---

[2] In an effort to excuse their conduct, Plaintiffs aver that this Court's order was "ambiguous" as to the material it ordered to be redacted.  *See* Dkt. 1320, at 3. n.2.  Plaintiffs assert that this Court's Order is "silent with respect to the 'Conclusions' section on pages 1.5 [to] 3.5."  *Id.*  Not so.  This Court explicitly ordered that "the information *preceding*"—not *beneath*—"the heading 'Conclusions' should be produced."  Dkt. 1094, at 7.  This Court also ordered that the headings for various Matters Requiring Attention that appears on pages 3 through 14 should be produced, that the headings under Violations of Laws and Regulations that appear on pages 14 through 17 should be produced, and that the "Exit Meeting" section on 18 should be produced.  *Id.* at 7–8.  The Court ordered everything else redacted.  *Id.*  In fact, the Court noted that the headings—and only the headings—should remain unredacted because they "do not implicate *any substantive findings, conclusions, or recommendations*."  *Id.* at 8 (emphasis added).  It strains credulity to insinuate, as Plaintiffs do, that this Court ordered the OCC's "findings, conclusions, or recommendations" redacted everywhere in the Document *except* beneath a heading entitled "Conclusions."

the redactions were not applied properly to the Documents due to human error.  The very next day, at the direction of the OCC, Capital One notified Plaintiffs' counsel in writing that it was invoking the clawback provisions of the Protective Order.  *See* Dkt. 1318-1 (April 29 Letter of Ronni D. Solomon).  Capital One also promptly produced replacements documents with the proper redactions.

Plaintiffs refused to comply with the clawback provisions of the Protective Order (and this Court's December 10, 2020 Order) and did not remove the Filings and re-file them without the privileged material.  Instead, Plaintiffs initially asserted that the OCC waived the BEP as a result of Capital One's production of the Documents—an argument that is expressly prohibited by the Protective Order[3]—and that the BEP should be overcome by good cause—an argument that Plaintiffs previously declined to raise.  *See* Dkt. 1318-2 (May 3 Letter of Norman E. Siegel). Plaintiffs, the OCC, and Capital One subsequently met and conferred on multiple occasions but were unable to reach a resolution given Plaintiffs' continued reliance on their belated good cause argument, although Plaintiffs did ultimately agree to abandon their prohibited waiver argument. Ex. A (May 14, 2021 Email of J. Dent)).

Thus, on May 14, Capital One filed its Motion to Enforce Protective Order and to Strike (Dkt. 1316, 1318), and Plaintiffs filed their Motion to Compel the Documents (Dkt. 1314, 1320). Plaintiffs move to compel on only one ground: good cause.  But Plaintiffs' Motion sets out no facts showing *why* good cause exists here.  Instead, Plaintiffs spin their wheels explaining why Plaintiffs believed "the [D]ocument[s] had been purposely provided by the OCC," why Plaintiffs believed

---

[3] The Protective Order states that "[t]he Parties *shall not argue*, in this forum or any other, that *any privilege or protection was waived* as a result of a disclosure in this action, *regardless of the procedures used to identify Privileged Material* prior to production."  Dkt. 368 ¶ XII.B (emphasis added).

4

the circumstances of the Documents' production was "confounding," and why Plaintiffs believed the OCC did not "exercise[] . . . oversight" over the protection of its privilege. *See* Dkt. 1320 at 1–6 & n.2. While purporting to be "good cause" arguments, these are really waiver arguments, which are prohibited by the Protective Order, irrelevant to the good cause factors, and which Plaintiffs *explicitly represented they would not raise*. Plaintiffs' continued assertion of such waiver arguments is thus improper. In further violation of the Protective Order, Plaintiffs also continue to make "use" of the clawed-back privileged material throughout their Motion to Compel in an effort to support their "good cause" arguments. *See* Dkt. 368 ¶ XIII.A.1 (Amended Stipulated Protective Order) (requiring Plaintiffs to "immediately cease the review *and use* of the disclosed document or information" (emphasis added)).

## ARGUMENT

### I.   PLAINTIFFS CANNOT MOVE FOR RECONSIDERATION OF THIS COURT'S ORDER.

Although Plaintiffs style their Motion as a Motion to Compel, Plaintiffs actually seek belated reconsideration of this Court's December 10, 2020 Order—on a ground that Plaintiffs declined to raise in the first instance. This Court should reject Plaintiffs' attempt to circumvent the process governing motions for reconsideration and the stringent standard that applies to such motions based on an inadvertent production subject to the claw-back provisions of the Protective Order.

Under Federal Rule of Civil Procedure 54(b), a party may seek reconsideration of interlocutory orders. *See Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017). Motions for Reconsiderations are "disfavored" and should be granted "sparingly." *Wooten v. Virginia.*, 168 F. Supp. 3d 890, 893 (W.D. Va. 2016). A court may revise an interlocutory order when (1) a subsequent trial produces substantially different evidence; (2) there is a change in applicable law;

or (3) there is clear error causing manifest injustice.  *Id.*; *see also Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003).

Plaintiffs cannot seek reconsideration here.  To begin, none of the three permissible criteria for seeking reconsideration is present.  There has been no intervening change in the controlling law, there is no "new evidence" that was not available earlier, and this Court made no "clear error" that is in need of correcting.  *Carlson*, 856 F.3d at 325.  Rather, this Court held that the material at issue is protected by the BEP, *see* Dkt. 1094, at 7–8, and Plaintiffs *never* challenged that holding (through appeal, reconsideration, or otherwise).

Moreover, throughout the initial litigation of this issue, Plaintiffs *never* made a good cause argument, and in fact rebuffed invitations to meet and confer on the topic.  Plaintiffs seek to relitigate this issue now only because they received material that was inadvertently produced, but that is not a proper basis for revisiting this Court's ruling—especially on a ground that Plaintiffs did not even raise in the first instance and where it violates the terms of the Protective Order.  *See, e.g.*, *Wootten*, 168 F. Supp. 3d at 893 ("'[A] party who fails to present his strongest case in the first instance generally has no right to raise new theories or arguments in a motion to reconsider.'" (quoting *United States v. Duke Energy Corp.*, 218 F.R.D. 468, 474 (M.D.N.C. 2003))); Dkt. 368 ¶ XIII.A.1.  Plaintiffs have no legitimate grounds to seek reconsideration of this Court's Order and their baseless attempt to do so, in violation of the Protective Order, should be rejected.

## II.   PLAINTIFFS FAIL TO DEMONSTRATE GOOD CAUSE NEEDED TO OVERRIDE THE OCC'S PRIVILEGE.

Even if this Court entertains Plaintiffs' Motion, Plaintiffs' belated good cause argument cannot override the OCC's assertion of the BEP in this instance.  The BEP is intended to encourage banks and their regulators to communicate candidly in order to facilitate effective supervision.  *See, e.g.*, *Bankers Tr.* 61 F.3d at 471 ("The primary purpose of the [bank examiner] privilege is to

preserve candor in communications between bankers and examiners, which those parties consider essential to the effective supervision of banking institutions."); *Linde v. Arab Bank, PLC*, No. 04-cv-2799, 2009 WL 3055282, at *1 (E.D.N.Y. Sept. 21, 2009) (noting the privilege "protects communications between banks and their examiners in order to *preserve absolute candor* essential to the effective supervision of banks" (emphasis added)). The privilege is broad by design. It encompasses, among other things, agency opinions and recommendations and banks' responses to them. *See, e.g.*, *Bankers Tr.*, 61 F.3d at 471; *In re Subpoena*, 967 F.2d 630, 634 (D.C. Cir. 1992); *Linde*, 2009 WL 3055282, at *1.

Because the privilege is broad and protects the candor between banks and their regulators that is central to the supervisory process, the privilege is not lightly overcome. A party seeking to override the privilege must show "good cause," which requires a court to consider, "*at minimum*,"

A) the relevance of the evidence sought to be protected;

B) the availability of other evidence;

C) the 'seriousness' of the litigation and the issues involved;

D) the role of the government in the litigation; and

E) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*Bankers Tr.*, 61 F.3d at 472 (emphasis added). The party seeking to override the privilege bears the burden of demonstrating good cause. *See, e.g.*, *Wultz v. Bank of China, Ltd.*, 61 F. Supp. 3d 272, 288–89 (S.D.N.Y. 2013). Plaintiffs have failed to carry their burden. The balance of the factors weighs in favor of preserving the OCC's privilege and against Plaintiffs' improper attempt to weaponize the OCC's findings and conclusions ████████████████████████ ████████████████████████ in this civil litigation between private parties.

## A.   The Documents Have Little, If Any, Relevance to Plaintiffs' Claims.

Plaintiffs' good cause argument fails at the outset because Plaintiffs cannot demonstrate that the Documents are relevant to their claims.  "The lack of apparent relevance" of privileged material "militates heavily against, if not precludes" its disclosure.  *Shirk v. Fifth Third Bankcorp*, No. 1:05–cv–049, 2008 WL 2661955, at *2 (S.D. Ohio July 2, 2008).  Plaintiffs appear to articulate two grounds for relevance.  *First*, Plaintiffs contend that the privileged material "strongly supports Plaintiffs' claims . . . [that] Plaintiffs' personally-identifiable information ('PII') is at risk . . . ."  Dkt. 1320, at 6–7. ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ Not so.

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████ ██████████

███████████████████████████████

      In sum, because the Documents—████████████████████████████████████████

██████████████████████████████████████████, they are of no

relevance to the question of whether Plaintiffs' PII remains "at risk." *See, e.g.*, *Shirk*, 2008 WL

2661955, at *2 ("First, the relevance of the evidence sought by the plaintiffs in derogation of the

privilege is not apparent.  The regulatory documents that plaintiffs are seeking were all initiated

and prepared *after* Fifth Third had already disclosed its accounting problems, which give rise to

this lawsuit." (emphasis in original)); *Raffa v. Wachovia Corp.*, No. 8:02–CV–1443–T–27EAJ,

2003 WL 21517778, at *4 (M.D. Fla. May 15, 2003) ("The Supervisory Letter referred to and

attached to the Complaint analyzes activities that occurred after the closing of the merger and does

not reveal what Defendant knew shortly before or at the time of the merger.").

      *Second*, Plaintiffs aver that the Documents bear on "[w]hether Capital One violated [the]

Gramm-Leach-Bliley [Act] ('GLBA')."  Dkt. 1320, at 6–7.  Plaintiffs seek to use the ██████

██████████████████████████████████████████████████████████

██████████. *Id.* at 7.  In other words, Plaintiffs seek to weaponize the ████████████

███████████████████ against Capital One.  But it is the facts that are relevant here; not

the OCC's conclusions.  *See, e.g.*, *Desert Valley Painting & Drywall, Inc. v. United States*, No.

2:10–cv–00490–KJD–GWF, 2012 WL 4792913, at *4 n.1 (D. Nev. Oct. 9, 2012) ("These matters

are irrelevant because the IRS's analysis and conclusions are not, themselves, at issue in this case.

---

[4] While Plaintiffs rely upon the OCC's Consent Order throughout their Motion, it is neither relevant to their claims nor admissible evidence.  Capital One references the Consent Order only to address the issue of application of the BEP and as necessary to respond to Plaintiffs' Motion, without waiving its right to object to any attempt to use the Consent Order at trial or other proceedings.

The facts underlying the IRS's analysis and conclusions are at issue, however, and are therefore relevant."); *see also id.* at *11 (ordering Government to produce factual matter "without revealing the IRS's administrative analysis, impressions and conclusions").  Moreover, the BEP exists to prevent the exact tactic that Plaintiffs are now attempting—as set forth more fully below, Plaintiffs' attempt at weaponizing the OCC's findings and conclusions in civil litigation would have the utmost chilling effect on the supervisory process.  *See* pp. 17–19 *infra*.  The Documents contain no *factual evidence* that bear on Plaintiffs' claims and are thus irrelevant.  Indeed, this Court has already expressed skepticism as to Plaintiffs' position that agency findings are relevant to this case.  *See, e.g.*, Dkt. 720 (July 20 Hearing Transcript), at 15:9–13 ("[H]ow is what any agency says to Capital One going to have a significant bearing in this case?  You've, you've got what Capital One was doing, how they were doing it, the information that, you know, they had."); *see also id.* at 16:8–12 ("[A] regulator having a concern is not a standard setting . . . this is one agency's opinion as to what you ought to look at or what you ought to do.").

Even if the Documents were relevant to Plaintiffs' claims, the privileged material they contain is inadmissible for the purposes Plaintiffs seek to use it.[5] ███████████████ ██████████████████████████████████████████████████████████.  Under Federal Rule of Evidence 408, compromise and settlement evidence is barred from being used to "prove the validity . . . of a disputed claim."  Courts have applied this principle to agency allegations that ultimately result in a consent order or a settlement.  *See, e.g.*, *In re Platinum & Palladium Commodities Litig.*, 828 F. Supp. 2d 588, 593 (S.D.N.Y. 2011); *Wilson v. Parisi*, No.

---

[5] Besides being inadmissible under Federal Rules of Evidence 403 and 408, the privileged material is also hearsay without an exception under Federal Rule of Evidence 802.

3:CV–04–1737, 2009 WL 151666, at *1–2 (M.D. Pa. Jan. 21, 2009); *Ledford v. Rapid–Am. Corp.*,

No. 86 Civ. 9116, 1988 WL 3428, at *1–2 (S.D.N.Y. Jan. 8, 1988).

The Documents are also inadmissible under Federal Rule of Evidence 403, which provides

that otherwise relevant evidence may be excluded on grounds of "unfair prejudice, confusing the

issues, [and] misleading the jury," among other things. ███████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████. Many of the findings in the OCC's Supervisory Letter are also not related to this Cyber

Incident and are therefore likely to further mislead the jury and confuse the issues. *See, e.g.*, *Wells*

*Fargo Bank, N.A. v. LaSalle Bank Nat'l Ass'n*, No. 2:08–CV–1448 JCM (RJJ), 2011 WL 6300948,

at *3 (D. Nev. Dec. 14, 2011) (excluding OCC audit under Rule 403 because the audit did not

relate to the program at issue); *Carpenters Health & Welfare Fund v. Coca-Cola Co.,* No. 1:00–

CV–2838–WBH, 2008 WL 9358563, at *5 (N.D. Ga. Apr. 23, 2008) (excluding Securities

Exchange Commission Order under Rule 403 because, among other reasons, its conclusions of

law would confuse a jury and its factual findings were unclear). Likewise, because the Documents

come from a federal agency, they are likely to carry inordinate weight with a jury, which renders

them unduly prejudicial. *Sigman v. CSX Corp.*, No. CV 3:15-13328, 2018 WL 1096427, at *2

(S.D. W. Va. Feb. 28, 2018) (refusing to admit EPA consent order that opined on central issue of

civil suit because a "consent order with a governmental agency carries inordinate weight in the

eyes of the jury"); *see also id.* (finding consent order had little probative value as plaintiffs could

use other evidence to prove their case).[6]

---

[6] The Consent Order between Capital One and the OCC is also not admissible under Federal Rules
of Evidence 403 and 408. *See, e.g.*, *Sigman*, 2018 WL 1096427, at *2.

**B. Plaintiffs Have Access to Other Evidence to Try and Prove Their Claims.**

Plaintiffs' argument also fails on the second factor, the "availability of other evidence." *Bankers Tr.*, 61 F.3d at 472. This factor weighs against disclosure where—as here—a party has access to the "raw data" or "raw factual materials" underlying an agency's opinions or conclusions. *See, e.g.*, *Raffa*, 2003 WL 21517778, at *4; *In re Bank One Sec. Litig., First Chi. S'holder Claims*, 209 F.R.D. 418, 427 (N.D. Ill. 2002).

Here, Plaintiffs cannot show that they are without any purported "evidence" the Documents contain. *Raffa* is instructive on this point. In that case, the plaintiff sought to use an OCC Supervisory Letter to bolster his claims that a bank wrongfully withheld adverse information about its financial status that would have impacted its stock price. 2003 WL 21517778, at *1. In assessing whether other evidence was available to the plaintiff, the court noted that "over 25,000 pages of documents and depositions of key bank personnel" were available to him. *Id.* at *5. As a result, the plaintiff "ha[d] access to the same type of information utilized by bank examiners" and thus had "an *alternative source for the information sought in the OCC Supervisory Letter*." *Id.* (emphasis added); *see also Bank One*, 209 F.R.D. at 427 ("Plaintiffs have been provided with the raw factual materials underlying these opinions and can use their own expertise to render opinions on these facts. Therefore, Plaintiffs have been afforded adequate forms of alternative information and fail to meet the second prong of this test."); *Fed. Hous. Fin. Agency v. HSBC Am. Holdings, Inc.*, No. 11 Civ. 6189(DLC), 2014 WL 1909446, at *4 (S.D.N.Y. May 13, 2014) (holding this factor weighed in favor of preserving privilege because "FHFA has produced over 1.5 million documents and GSE employees have been deposed for days").

As this Court is well aware, Plaintiffs have received thorough and voluminous discovery from Capital One, including more than 358,000 Capital One documents comprising millions of

pages and 31 depositions (consisting of over 147 hours of testimony) of individual and Rule 30(b)(6) Capital One witnesses.  There is no dispute that Plaintiffs have obtained the underlying factual material relevant to their claims.  Plaintiffs, therefore, have "an alternative source for the information sought in the OCC Supervisory Letter" because they can "use their own [experts] to render opinions on these facts."  *Raffa*, 2003 WL 21517778, at *5; *Bank One*, 209 F.R.D. at 427. To be sure, Plaintiffs have proffered the testimony of their designated expert, Dr. Madnick, who opines on ███████████████████████████████.

Indeed, Plaintiffs do not argue that they lack access to any factual material.  Instead, Plaintiffs argue that the Supervisory Letter reveals ████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
███████████████████████████████████████████████

Moreover, Plaintiffs' characterizations of Alexander's testimony are simply not true.  ████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████



.  In sum, Plaintiffs have access to the same information the OCC did when it reached the conclusions set forth in its Supervisory Letter.  Accordingly, the second factor weighs strongly in favor of preserving the OCC's privilege.

---

[7] Plaintiffs deposed Alexander in his personal capacity, not as a Rule 30(b)(6) witness.

[8] *See, e.g.,*

### C.  Plaintiffs Fail to Show This Case Satisfies the "Seriousness" Prong.

Although neither Capital One nor the OCC debate that this case presents serious allegations, that alone does not satisfy the "seriousness" inquiry contemplated by the third prong of the test.  *Bankers Tr.*, 61 F.3d at 472.  Courts have recognized that "purely private litigation" carries less weight for purposes of this factor.  *See Begelman & Orlow, P.C. v. Dean*, No. 13–699(CKK), 2013 WL 5511531, at *3 (D.D.C. Oct. 7, 2013); *see also In re Providian Fin. Corp. Sec. Litig.*, 222 F.R.D. 22, 29 (D.D.C. 2004) (finding "seriousness" factor was not satisfied in securities suit where plaintiffs alleged defendants made fraudulent statements to the public); *Shirk*, 2008 WL 2661955, at *3 (holding suit between private litigants "d[id] not rise to the level of seriousness" required to override the privilege).

Here, Plaintiffs make no showing that their private lawsuit rises to the level of "seriousness" required to override the OCC's privilege.  Plaintiffs' "seriousness" argument is largely a rehash of their arguments regarding the first two factors.  *See* Dkt. 1320, at 8.  Although Plaintiffs contend that their private suit "implicat[es] the rights of approximately 98 million Americans," *id.*, what Plaintiffs neglect to mention is that there is *no evidence* that the data Paige Thompson stole ever left her computer or that anyone has been harmed as a result of her theft of the data.  Plaintiffs have no evidence that this case implicates the rights of *anyone*, let alone 98 million Americans.  Thus, the third factor also weighs in favor of preserving the OCC's privilege.

### D.  The OCC Is Not a Party and Has No Interest in this Case.

The fourth factor—the role of the government—weighs decidedly against Plaintiffs because the OCC is not a party to this suit and has no interest in its outcome.  Even the lone case Plaintiffs cite recognizes that this factor weighs in favor of overriding the privilege only when the

government is a party or otherwise has "a *direct interest* in the outcome of the litigation." *Principe v. Crossland Sav., FSB*, 149 F.R.D. 444, 449 (E.D.N.Y. 1993).

The OCC is not a party to this lawsuit. Nor does the OCC have a "direct interest" in the outcome of this litigation, as Plaintiffs appear to contend. *See* Dkt. 1320, at 9. Plaintiffs assert that this factor weighs in their favor because the OCC is an "intervenor" and the Documents are "indicative of the OCC's own failures in oversight." *Id.* But Plaintiffs' position would render the fourth factor a nullity. If Plaintiffs were correct, then the fourth factor would always weigh in favor of disclosure in any lawsuit where the agency intervened to protect its privilege and in virtually any lawsuit brought against a bank so long as an agency's oversight was somehow implicated. Plaintiffs cite no authority in support of their sweeping misinterpretation of the fourth factor. Moreover, the lone case Plaintiffs *do* cite does not support their position. In *Principe*, the court found that the fourth factor weighed in favor of overriding the privilege because the Federal Deposit Insurance Corporation was the "receiver of the failed CrossLand and conservator of the new CrossLand Federal." 149 F.R.D. at 449. Thus, the Court concluded, "the FDIC will [financially] benefit if defendant prevails in this action." *Id.*; *see also Raffa*, 2003 WL 21517778, at *4 ("The OCC is not a party to the litigation, and does not have a *financial stake* in it." (emphasis added)). The OCC has no such financial stake here, and this factor thus weighs in favor of preserving the OCC's privilege.

Plaintiffs also argue that this factor weighs in their favor because the OCC "did not take reasonable, minimal steps (or any steps) to protect its privilege." Dkt. 1320, at 9. Whatever steps the OCC did or did not take to "protect its privilege" are irrelevant under this factor. Moreover, Plaintiffs' underhanded attempt to argue waiver—despite the Protective Order's prohibition and

after expressly representing to Capital One and the OCC that they *would not* raise such arguments—is highly improper.  *See* p. 5 *supra*.  This argument warrants no consideration.

### E.  The Risk of Future Government Timidity Is High.

The final factor, the risk of "future timidity" by government employees, weighs heavily against Plaintiffs' argument.  *Bankers Tr.*, 61 F.3d at 472.  The law is clear that the "*forced disclosure of confidential supervisory information* exchanged between the bank and its regulators does indeed raise 'the possibility of timidity by government employees who will be forced to recognize that their secrets are violable.'"  *Shirk*, 2008 WL 2661955, at *3 (emphasis added); *see also Providian*, 222 F.R.D. at 29 ("[T]he Court concludes that disclosure of the deliberative material could lead to 'timidity by government employees who will be forced to recognize that their secrets are violable.'"); *Bank One*, 209 F.R.D. at 428 ("The memos and examinations created by the OCC contain the thoughts and recommendations of the government.  Should the government be forced to produce these documents, future government employees may be reluctant to capture the full breadth of their opinions and thoughts in written format for fear of future disclosure.  A break in confidentiality could have a 'chilling effect' on the ability of bank regulators to perform their duties in the future."); *FDIC v. Birscoe*, No. 1:11–cv–2303–SCJ, 2014 WL 12775663, at *4 (N.D. Ga. Feb. 4, 2014) ("[T]here is a real possibility that the exposure of information revealing the deliberative processes and analyses of personnel involved in the examination of banks will chill the free flow of information between GDBF personnel.").

Here, disclosure of the privileged material in question comes with a high risk of "future timidity" on the part of the government.  The case of *Shirk v. Fifth Third Bank* is instructive.  In that case, the plaintiffs in a class action sought the "examination reports and communications" that culminated in a Written Agreement between the FRB, the Ohio Department of Commerce,

Division of Financial Institutions, and Fifth Third Bank.  2008 WL 2661955, at *2.  The bank and the agencies objected, contending that the documents were protected by the bank examiner privilege.  *Id.* at *2–3.  The court held that the "future timidity" factor weighed against disclosure, noting "the potential chilling effect on candid interaction."  *Id.* at *3.  Because "the bank [had] consented to regulatory action . . . [t]he potential that banking institutions would avoid consensual undertakings . . . militates against production of these privileged documents."  *Id.*; *see also Providian*, 222 F.R.D.at 29 (noting "disclosure may have a chilling effect on future OCC efforts"). The same considerations apply here.  ██████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████ This material is the core of the bank examiner privilege—something not even Plaintiffs dispute.  ████████████████████

███████████████████████████████████████████████████ *See* Consent Order, *In the Matter of: Capital One, N.A.*, AA-EC-20-49 & Consent Order, *In the Matter of: Capital One, N.A.*, AA-EC-20-51.  Accordingly, disclosure of this material would undermine the supervisory process and have "a chilling effect on future OCC efforts."  *Providian*, 222 F.R.D.at 29.

Plaintiffs, realizing they cannot possibly satisfy this factor, engage in distraction.  Plaintiffs argue that "[t]he *vast* majority of correspondence, examinations, emails and documents related to the OCC's examinations of Capital One have been withheld in this case or heavily redacted of all substance."  Dkt. 1320, at 10 (emphasis in original).  This is a red herring.  The fact that the BEP has been applied to *other* documents has no bearing on whether the disclosure of *these* Documents will result in future OCC timidity.  Moreover, if Plaintiffs' argument were correct—and it is not— then this factor would weigh in favor of disclosure in virtually every case where a large number of

documents have been properly withheld on privilege grounds.  That cannot be, and is not, the proper standard.

Plaintiffs also appeal to this case's "strong Protective Order," Dkt. 1320, at 10, but the "strong Protective Order" in this case exists precisely to prevent precisely what Plaintiffs are attempting to do now.  As Capital One's Motion to Enforce Protective Order and to Strike demonstrates, the Protective Order in this case has robust clawback provisions to prevent this exact scenario from arising, and Plaintiffs have ignored those provisions to seek an improper tactical advantage.  *See* Dkt. 1316, at 6–9.  Plaintiffs should not be allowed to brandish inadvertently produced privileged material in direct violation of the Protective Order and then claim that the Protective Order excuses their conduct.  In sum, there is an extreme risk that the supervisory process will be chilled if Plaintiffs are allowed to weaponize ███████████████████████ █████████████████████ in this private civil lawsuit.  This factor thus weighs heavily in favor of preserving the OCC's privilege.

## CONCLUSION

For the reasons stated above, the Court should deny Plaintiffs' Motion to Compel.

Dated: May 19, 2021             Respectfully submitted,

/s/_____
David L. Balser (*pro hac vice*)
S. Stewart Haskins II (*pro hac vice*)
Ronni D. Solomon (pro hac vice)
Susan M. Clare (*pro hac vice*)
John C. Toro (*pro hac vice*)
Kevin J. O'Brien (VSB No. 78886)
Robert D. Griest (*pro hac vice*)
**KING & SPALDING LLP**
1180 Peachtree Street, N.E.
Atlanta, GA 30309
Tel.: (404) 572-4600
Fax: (404) 572-5140
dbalser@kslaw.com

shaskins@kslaw.com
sclare@kslaw.com
jtoro@kslaw.com
kobrien@kslaw.com
rgriest@kslaw.com

Robert A. Angle (VSB No. 37691)
Tim St. George (VSB No. 77349)
Jon S. Hubbard (VSB No. 71089)
Harrison Scott Kelly (VSB No. 80546)
**TROUTMAN PEPPER HAMILTON SANDERS LLP**
1001 Haxall Point
Richmond, VA 23219
Tel.: (804) 697-1200
Fax:  (804) 697-1339
robert.angle@troutman.com
timothy.st.george@troutman.com
jon.hubbard@troutman.com
scott.kelly@troutman.com

Mary C. Zinsner (VSB No. 31397)
S. Mohsin Reza (VSB No. 75347)
**TROUTMAN PEPPER HAMILTON SANDERS LLP**
401 9th Street, NW, Suite 1000
Washington, DC 20004
Tel.: (202) 274-1932
Fax: (202) 274-2994
mary.zinsner@troutman.com
mohsin.reza@troutman.com

*Counsel for Capital One Defendants*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 19, 2021, I caused the foregoing document to be filed with the

Clerk of Court using the CM/ECF system, which will send notice of electronic filing to all counsel

of record.


<u>/s/                                        </u>
David L. Balser
*Counsel for Capital One*