UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| IN RE: CAPITAL ONE CUSTOMER DATA SECURITY BREACH LITIGATION | MDL No. 1:19-md-2915 (AJT/JFA) |
| This Document Related to ONLY the following case: | Case No. 1:19-cv-1472 (AJT) |
| MARCUS MINSKY, Individually and On Behalf of All Others Similarly Situated, Plaintiff, vs. CAPITAL ONE FINANCIAL CORPORATION, RICHARD FAIRBANK, ROBERT ALEXANDER, and MICHAEL JOHNSON, Defendants. | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO FILE SUPPLEMENTAL AUTHORITY**

**I.  LOCAL RULES PROHIBIT DEFENDANTS' FILING**

Local Rule 7(F)(1) recognizes that at some point briefing must come to an end. So it provides that after filing of reply briefs, "[n]o further briefs or written communications may be filed without first obtaining leave of Court." It has been more than a year since Defendants filed their reply. They have selected five cases out of the hundreds the federal courts decided in that time, one of which was decided on August 7, 20**20**. They seek to have the Court consider these decisions. They argue in a brief why, in their view, the cases support their arguments. Put simply, what Defendants call a memorandum of law in support of their motion for leave to file supplemental authorities is an ill-disguised sur-reply in support of their motion to dismiss. The

1

Court should deny their motion. *Cty. of Chesterfield, Virginia v. Lane*, No. 3:18CV354, 2018 WL 6729800, at *1 n.3 (E.D. Va. Dec. 21, 2018).

If the Court grants Defendants' motion, it should grant Plaintiffs leave to file a sur-sur-reply in opposition to Defendants' motion to dismiss setting out further argument why that motion should not be granted.

## II. THE CASES DEFENDANTS IMPROPERLY SUBMIT DO NOT SUPPORT DISMISSAL

In any case, Defendants misread the cases they cite. They do not advance Defendants' position.

First, *In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743 (4th Cir. 2021) does not make any new law, a fact concealed by Defendants' subtly altered quotations. *Triangle Capital* provides that "omissions and ambiguities count against inferring scienter", *id.* at 752, true, but for this it quotes *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 326 (2007), which both Parties cited in their memoranda of law in connection with Defendants' motion to dismiss. Defendants claim it holds that the absence of motive allegations "weighs heavily", but in fact it holds that the absence of a motive "often 'weigh[s] heavily'" against inferring a motive. *Triangle Capital*, 988 F.3d at 7. The true quote both acknowledges that motive fairly regularly does not weigh heavily and directly quotes *Tellabs*, showing that *Triangle Capital* broke no new ground. Defendants claim that *Triangle Capital* holds that the "breadth of [] disclosures" undermines scienter*, Triangle Capital*, 988 F. 3d at 755, but the *Triangle Capital* sentence Defendants quote merely rephrased a sentence in *Matrix Cap. Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 187 (4th Cir. 2009), which both parties cited in their briefs. In any case, in *Triangle Capital*, the company disclosed that it invested in "'junk' rated companies" which "often 'ha[d] limited financial resources to meet future capital needs" and about which there was "little publicly

2

available information", and that its own securities were "highly speculative." Capital One warned that it, hypothetically, like literally every other company connected to the internet, might be hacked. *Triangle Capital*'s warnings tells investors something about Triangle Capital; Capital One's statements tell investors something they already knew about how the internet works.

Defendants cite no other controlling authority. Instead, they cite four non-controlling out-of-district cases. All four concern a single set of statements which Defendants claim are puffery and are set out at pages 20-23 of Plaintiffs' opposition to Defendants' motion to dismiss (Pl. Br., Main Dkt. No. 345). Defendants' cases have no relation to the majority of statements Plaintiffs challenge.

Defendants cite one paragraph of a Ninth Circuit opinion which provides, without analysis, that certain statements about Google's commitment to privacy were not specific enough to be actionable. *In re Alphabet, Inc. Sec. Litig.*, No. 20-15638, 2021 WL 2448223, at *15 (9th Cir. June 16, 2021). While that court's lack of analysis makes its reasoning opaque, the plaintiffs there alleged that Google did not timely disclose a security breach. That is a separate issue. A company that believed privacy was critical might well fail to timely disclose a security breach – as Google apparently did, dedicating "over 100 of [its] best and brightest" to investigating the breach. *Id.* at *4. The *Alphabet* court might well have reached a different conclusion had Google stated that "disclosing security breaches is our top priority." Google's failure to announce the door's failure after the horse bolted does not speak to the efforts it took to reinforce the door before then. *Equifax* explains the standard where pre-breach actions are at issue, and it found statements similar to those Plaintiffs challenge actionable. Pl. Br. at 20-21.

In *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, No. 19-MD-2879, 2021 WL 2407518, at *27 (D. Md. June 11, 2021), the defendants never made any statements about

3

the quality of their cybersecurity, but only that they considered it important. The court granted the motion to dismiss because "unlike the statements found to be actionable in *Equifax*, Marriott made no characterization at all with respect to the quality of its cybersecurity, only that Marriott considered it important." *Id.* Here, in the statements they call puffery, Defendants claimed:

- "We continuously evaluate the regulatory environment and proactively adjust our compliance risk program ***to fully address these expectations***."
- "[W]e will protect that information with controls ***based upon internationally recognized security standards, regulations, and industry-based best practices***."
- "[G]oing all-in on this transformation is the opportunity to be way faster to the market, offer way better products, have way better risk management along credit dimensions, fraud, cybersecurity, that's all a shared path, same thing."
- Because of the digital transformation, Capital One was "***also seeing better compliance outcomes.***"
- "Cyber [security] is an important part of the overall digital process and you I think as a financial institution trust, the trust of our customers is critical, and ***we want to make sure that we're a leader in cyber***, so it's one of the agenda items we have in the whole digital space."
- Cybersecurity is not only critical, Capital One was "putting a lot of very top talent and a lot of energy and investment into that." Pl. Br. at 21.

These statements all make definite representations about the past or present. They say Capital One works "to fully address expectations", "putting a lot of very top talent and [] energy and investment into" cybersecurity, tries to "make sure [Capital One] is a leader in cyber", follows "internationally recognized security standards, regulations, and industry-based best

practices." They say Capital One's Digital Transformation leads to "better compliance outcomes" and better cybersecurity. These definite representations are not puffery.

Moving on to *In re Facebook, Inc. Sec. Litig.*, 477 F. Supp. 3d 980 (N.D. Cal. 2020). Defendants claim it "bears directly" on their puffery arguments. Indeed. It found that a statement that Facebook was "built around privacy and control" was not only not puffery but also materially misleading. Id. 1016-17. The *Facebook* court would thus have found actionable Defendants' statement that cybersecurity was "critical" even as it sacrificed cybersecurity to facilitate data mining its customers.

Defendants' remaining arguments concern statements that were capable of misleading investors, but where the specific allegations in those complaints did not show the statements were either false or misleading. The Court must evaluate whether the specific factual allegations in this case state a claim. Nor should they be allowed to. Briefing in this case closed more than a year ago. Local Rule 7(F)(1) exists precisely to prevent the kind of re-opening of the briefs Defendants attempt here.

### III. CONCLUSION

Defendants have filed opening and reply memoranda of law in support of their motion to dismiss. This is what Local Rule 7(F)(1) allows. Unsatisfied with their opening and reply memoranda of law in support of their motions to dismiss, they Defendants filed an ill-disguised sur-reply in support of their motion to dismiss. The Court should not consider Defendants' motion. If it does, it should permit Plaintiffs to file a sur-sur-reply.

Dated: July 12, 2021                                Respectfully submitted,

                                                                **THE LAW FIRM OF CARLTON F. BENNETT, P.L.L.C.**

/s/ Carlton F. Bennett
Carlton F. Bennett (Va. Bar No. 18453))
120 South Lynnhaven Road, Suite 100
Virginia Beach, VA 23452
Phone: (757) 266-5149
Fax: (757) 486-8910
Email: cbennett@carltonbennettlaw.com

*Liaison Counsel for Plaintiffs*

**THE ROSEN LAW FIRM, P.A.**
Jonathan Horne (*pro hac vice* pending)
275 Madison Ave., 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: jhorne@rosenlegal.com

*Lead Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was served by the Court's CM/ECF System on counsel of record on July 12, 2021.

/s/ Carlton F. Bennett