# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

IN RE: CAPITAL ONE CONSUMER )
DATA SECURITY BREACH LITIGATION )        MDL No. 1:19md2915 (AJT/JFA)
_____ )

This Document Relates to CONSUMER Cases

_____

## CAPITAL ONE'S SUPPLEMENTAL BRIEF REGARDING PLAINTIFFS' STANDING TO ASSERT BREACH OF CONTRACT AND UNJUST ENRICHMENT CLAIMS

Capital One files this supplemental brief in accordance with the Court's direction at the July 12-13, 2021 motions hearing. Capital One has already explained why Plaintiffs lack standing to pursue their negligence, state statutory, and injunctive relief claims, Dkts. 1386 & 1512, and it has also explained the impact of *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), on Plaintiffs' claims, Dkt. 1699. For the reasons explained below, Plaintiffs also lack standing to assert their breach of contract, breach of implied contract, and unjust enrichment claims.

### A. Plaintiffs lack Article III standing for their breach of contract claims because they have not suffered an injury-in-fact.

Plaintiffs' breach of contract claim is based on Capital One's Privacy Notice, which they contend (and Capital One disputes) is a standalone contract between Capital One and cardholders or applicants. Plaintiffs argue that, through the model language in its Privacy Notice, Capital One agreed to "use security measures that comply with federal law" and "promised to follow its own board-approved written information security program that it adopted to comply with the Gramm-Leach-Bliley Act (GLBA) to protect Plaintiffs' PII from theft and unauthorized disclosure." Dkt. 1648 at 1, 3. Plaintiffs claim that Capital One breached this contractual obligation, and further contend that it is not necessary for them to prove any injury-in-fact resulting from that alleged breach because nominal damages provide a remedy for it.

Plaintiffs do not have standing merely because they allege Capital One breached a contract.[1] *Ramirez* could not be clearer: "No concrete harm, no standing," and "an injury in law is not an injury in fact." 141 S. Ct. at 2200, 2205, 2214. All Plaintiffs allege here is an injury in law—that is, a breach of a contractual obligation—devoid of any concrete or particularized harm to the Plaintiffs individually. Plaintiffs therefore lack standing to pursue their breach of contract claim.

The Supreme Court's recent decisions, beginning with *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), confirm that plaintiffs must show an injury-in-fact traceable to the defendant's conduct and redressable by a federal court, regardless of whether the asserted cause of action arises under a statute or the common law. *See id.* at 1549. Although *Spokeo* involved a claim for an alleged violation of a federal statute (the Fair Credit Reporting Act), the Court never suggested that its standing analysis was cabined to statutory causes of action created by Congress. To the contrary, the Court held that "Article III standing requires a concrete injury *even in* the context of a statutory violation," *id*. (emphasis added), confirming that a plaintiff must also show a concrete injury when, as here, she asserts a non-statutory, common law cause of action.

The Supreme Court's subsequent decision in *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615 (2020), further confirms that Plaintiffs must show an injury-in-fact to have standing for a breach of contract claim. In *Thole*, the Court held that the plaintiffs, as beneficiaries of a defined-benefit plan, lacked standing to assert their ERISA breach-of-fiduciary-duty claims because their monthly payments under the plan would continue at the same rate regardless of the alleged breach. *Id*. at 1622. Because the plaintiffs were uninjured, the Court held that "[t]he plaintiffs … have no concrete stake in th[e] lawsuit," and lacked Article III standing. *Id*. at 1619. The Court noted that

---

[1] The standing analysis that follows is the same for Plaintiffs' alternative implied contract claim. *See, e.g.*, *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1340 (11th Cir. 2021) (affirming dismissal of implied contract claim for lack of Article III injury-in-fact).

"a defined-benefit plan is more *in the nature of a contract*," *id*. at 1620 (emphasis added), and thus held that a beneficiary did not have standing to sue for a breach of a fiduciary duty *unless* the beneficiary could point to an actual, concrete harm. Through the Court's own analogy, this holding would apply equally to a breach of contract claim like Plaintiffs' here.

Most recently, the Supreme Court decided *Ramirez*, emphatically holding: "No concrete harm, no standing." 141 S. Ct. at 2200, 2214. To the extent there was any uncertainty before,[2] *Ramirez* makes clear that Plaintiffs lack standing to assert their contract claims. Building on *Spokeo*, *Ramirez* instructs courts considering a plaintiff's standing to "assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts," and to "ask[] whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *Id.* at 2204. In other words, *Ramirez* requires Plaintiffs here to prove a *harm or injury* closely akin to one recognized at common law; merely asserting a common law *cause of action* is not enough.[3] The Supreme Court's holding that "an injury in law is not an injury in fact," *Ramirez*, 141 S. Ct. at 2205, further confirms that

---

[2] That Capital One did not previously attack Plaintiffs' standing to assert their contract and unjust enrichment claims is of no moment because "[s]tanding … is a jurisdictional issue which cannot be waived or conceded." *Animal Legal Def. Fund, Inc. v. Espy*, 29 F.3d 720, 723 n.2 (D.C. Cir. 1994). Moreover, Capital One expressly reserved the right to challenge these claims on standing grounds, Dkt. 1386 at 1 n.1, and the Supreme Court's on-point decision in *Ramirez* was issued *after* Capital One filed its standing motion, Dkts. 1385 & 1386.

[3] This is well understood among district courts in the Fourth Circuit and elsewhere, which routinely dismiss common law claims, including those for breach of express or implied contract, in data breach cases. *See, e.g.*, *Tsao*, 986 F.3d at 1336 (affirming dismissal of claims for negligence, breach of implied contract, and unjust enrichment); *Khan v. Children's Nat'l Health Sys.*, 188 F. Supp. 3d 524, 527 (D. Md. 2016) (dismissing claims for negligence, breach of implied contract, and unjust enrichment); *Chambliss v. Carefirst, Inc.*, 189 F. Supp. 3d 564, 567 (D. Md. 2016) (same); *see also, e.g.*, *Reilly v. Ceridian Corp.*, No. CIV.A. 10-5142 (JLL), 2011 WL 735512, at *2 (D.N.J. Feb. 22, 2011), *aff'd*, 664 F.3d 38 (3d Cir. 2011) (dismissing claims for negligence and breach of express contract); *Hammond v. The Bank of New York Mellon Corp.*, No. 08 CIV. 6060 (RMB) (RLE), 2010 WL 2643307, at *2 (S.D.N.Y. June 25, 2010) (dismissing claims for negligence and breach of implied contract).

Plaintiffs' bare reliance on Capital One's alleged breach of a contractual obligation—an injury in law at best—is insufficient to afford Article III standing.[4] Because Plaintiffs have failed to meet their burden of demonstrating an injury-in-fact resulting from Capital One's alleged breach of contract, Plaintiffs' contract claim must be dismissed for lack of standing.

Fourth Circuit law confirms this conclusion. As the court recently held in *Foodbuy, LLC v. Gregory Packaging, Inc.*, 987 F.3d 102 (4th Cir. 2021), "simply being a party to [a breached] contract does *not* alone establish Article III standing." *Id.* at 116 (quoting *S. Walk Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 182 (4th Cir. 2013) (same)). That case concerned the alleged breach of contracts that Foodbuy, a bulk purchasing organization, had entered with a manufacturer of juice cups on behalf of educational and medical institutions. *Id.* at 107. The district court dismissed Foodbuy's overcharge claim, holding that the injury, if any, belonged to the educational and medical institutions rather than Foodbuy. *Id.* at 111. The Fourth Circuit affirmed, holding that even though Foodbuy was a party to the contract, it was not entitled to sue for its breach; rather, "a plaintiff must still demonstrate *personal harm* both traceable to the challenged provisions and redressable by a federal court," to establish standing to assert breach of contract. *Id.* at 116 (emphasis added).

*Foodbuy* also suggests that Plaintiffs' request for nominal damages cannot save their breach of contract claim under Article III. In *Foodbuy*, the Fourth Circuit expressed doubt about the plaintiff's "novel contention that nominal damages alone, without any other cognizable form

---

[4] The Supreme Court's holding in *Ramirez* is inconsistent with any lower court precedent holding that a mere breach of contract can afford standing, and therefore abrogated any such case. *See, e.g.*, *United States v. Kaley*, 579 F.3d 1246, 1255 (11th Cir. 2009) (the holdings of a prior opinion may be disregarded where an "intervening Supreme Court case actually abrogate[s] or directly conflict[s] with … the holding").

of relief, can create standing," although it ultimately did not reach the issue because the plaintiffs had not pled that theory in their complaint. *Id.* (internal quotation and citation omitted).[5]

Plaintiffs will likely point to *Uzuegbunam v. Preczewski*, 141 S. Ct. 792 (2021), in an attempt to save their claims for nominal damages, but that case does not help them. *Uzuegbunam* held only that, in the context of a "completed violation" of the plaintiff's First Amendment rights, "a request for nominal damages satisfies the *redressability* element of standing." 141 S. Ct. at 802 (emphasis added). Because Uzuegbunam had sued "over a completed injury," which "establishe[d] the first two elements of standing (injury and traceability)," the Court held only that nominal damages could satisfy the third element of the Article III analysis: redressability. *Id*. at 797. Indeed, the parties had stipulated that the injury-in-fact and traceability elements of Article III standing were satisfied. *Id*. ("There is no dispute that Uzuegbunam has established the first two elements [of Article III standing]."); *see also id*. at 802 ("For purposes of this appeal, it is undisputed that Uzuegbunam experienced a completed violation of his constitutional rights when respondents enforced their speech policies against him."). This case presents the opposite scenario: redressability is not at issue, but Plaintiffs cannot carry their burden of proving an injury-in-fact or traceability.

In short, to demonstrate their standing to sue for breach of contract, Plaintiffs must establish that they have suffered an actual injury-in-fact traceable to the alleged contractual breach. None of Plaintiffs' debunked injury theories can afford them standing for reasons Capital One has explained. *See* Dkt. 1386 at 7-14 (explaining that Plaintiffs lack standing based on their claims of

---

[5] Notably, a plaintiff must prove an *actual injury* to recover nominal damages under Virginia law. *See Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004) ("injury or damage to the plaintiff" is essential element of contract claim); *Bailey v. Potter*, 2006 WL 1582410, at *4 (E.D. Va. June 5, 2006) (potential for nominal damages does not "eviscerate the 'consequential injury or damage' element of a claim for breach of contract").

actual fraud, risk of future fraud, mitigation expenses, and Thompson's mere access to their data). Nor have Plaintiffs put forth evidence from which a reasonable jury could conclude that they have been injured by Capital One's supposed breach of contract. *See* Dkt. 1461 at 30-36 (explaining Plaintiffs' lack of contract-based injury). Plaintiffs are left to rely on their bare allegation that Capital One breached a contract—a purely legal injury that cannot afford standing, even if nominal damages were available here (and they are not). Because Plaintiffs have failed to meet their burden to prove with evidence any actual injury, they lack standing to pursue their breach of contract claim.

**B.   Plaintiffs lack Article III standing for their unjust enrichment claim because they cannot show any particularized injury-in-fact traceable to Capital One's allegedly unlawful conduct.**

Plaintiffs also lack standing to assert their unjust enrichment claim for multiple reasons. By way of background, the latest version of Plaintiffs' constantly shifting unjust enrichment claim (which, by their own admission, is now completely untethered to the Cyber Incident) maintains that "Capital One's retention of class members' PII did not become unjust until the data was in the Card Production Account *and* it was inadequately protected." Dkt. 1507 at 3; *see also* Dkt. 1645 at 14-15. Plaintiffs further contend that Capital One was unjustly enriched in an amount equal to its fraud savings, on the theory that Capital One could not have achieved those savings without using Plaintiffs' credit card application data. To support this claim, Plaintiffs rely entirely on the opinions of their expert Gary Olsen, who purports ███████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████ .

As explained in Capital One's motion to exclude Olsen (*see* Dkt. 1432), ███████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████



Dkt. 1432-8, Supp. Decl. of K. Kauffman ¶ 27.

*See* Dkt. 1432-1, Olsen Am. Report ¶¶ 70-72 & Table 14.

Ultimately, Plaintiffs fail to meet their burden to establish Article III standing to assert their unjust enrichment claim for at least three reasons.

***First***, Plaintiffs have not satisfied the injury-in-fact requirement. Again, Article III requires a plaintiff's injury to be "concrete" and "particularized." *Spokeo*, 136 S. Ct. at 1548. Stated differently, the injury must be "real" and not "abstract" or "conjectural," and must have "affect[ed] the plaintiff in a personal and individual way." *Id*. at 1548-49 (internal quotation and citation omitted). Plaintiffs have not demonstrated how Capital One's use of their data in fraud models worked any concrete or particularized *harm* to them (it does not; as explained, the fraud models in fact *benefitted* Plaintiffs, *see* Dkt. 1440 at 31-32). And as *Ramirez* held, to demonstrate standing

plaintiffs must "factually establish" that they have suffered "concrete harm." 141 S. Ct. at 2212, 2214. Plaintiffs have not, and cannot, do so here.

True, an unjust enrichment claim measures damages in terms of the defendant's gain rather than the plaintiff's loss. *See Fessler v. Int'l Bus. Machines Corp.*, 959 F.3d 146, 157 (4th Cir. 2020) (noting that "recovery for unjust enrichment is limited to the benefit realized and retained by the defendant" (internal quotation and citation omitted)). But the fact that *damages* are measured by Capital One's alleged gain does not relieve Plaintiffs from their burden of establishing an injury-in-fact—a jurisdictional prerequisite. As Virginia courts have long held, the law of unjust enrichment addresses situations in which "a man … enrich[es] himself unjustly *at the expense of another*." *Kern v. Freed Co*., 299 S.E.2d 363, 365 (Va. 1983) (emphasis added) (internal quotation and citation omitted). Thus, to establish Article III standing to assert an unjust enrichment claim, "plaintiff's claim of injury in fact cannot be based solely on a defendant's gain; it must be based on a plaintiff's loss." *Silha v. ACT, Inc.*, 807 F.3d 169, 174-75 (7th Cir. 2015).[6] The Fourth Circuit has similarly held that a "bald allegation of unjust enrichment" does not "suffice[] to establish a concrete injury." *See Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 258 (4th Cir. 2020) (citing *Spokeo*, 136 S. Ct. at 1549).[7] Capital One's alleged gain, standing alone

---

[6] In *Silha*, the plaintiffs alleged that the defendants, administrators of college-entrance exams, unlawfully profited from voluntary "information exchange program[s]" under which the defendants shared plaintiffs' personal information "with participating educational organizations in order [for plaintiffs] to receive information about colleges, universities, scholarships, and other educational opportunities." *Id*. at 175. The court held that even though the defendants sold the information to third parties and "did not disclose this sale," the plaintiffs lacked Article III standing because the defendants' actions "did not make Plaintiffs worse off." *Id*.

[7] Plaintiffs have tried to distinguish *Baehr* on the ground that, unlike the plaintiffs in *Baehr*, they have asserted a "private-right cause of action for unjust enrichment," and therefore have suffered a "*de facto* injury in fact." Dkt. 1570 at 4. This distinction is not only contradicted by the case law cited here, which shows that unjust enrichment claims are routinely dismissed for lack of an injury-in-fact, it is foreclosed by *Ramirez,* which held that "an injury in law is not an injury in fact." *Ramirez*, 141 S. Ct. at 2205. Asserting a cognizable cause of action—whether statutory or common

and unaccompanied by any concrete harm, cannot open the door to federal court. Any less of a standing threshold would lead to a windfall, by which a plaintiff could capture allegedly ill-gotten gains despite this lack of harm. Such an outcome would do violence to the "equitable principles" underlying unjust-enrichment and quasi-contract remedies, which are designed to compensate for ill-gotten gains received "at the expense of another," *Kern*, 299 S.E.2d at 365—not to provide a windfall to uninjured plaintiffs, *see also Nedrich v. Jones*, 429 S.E.2d 201, 207 (Va. 1993) (plaintiffs "may not recover under a theory of [unjust enrichment] simply by showing a benefit to the defendant").

Confirming this view of the law, courts routinely dismiss unjust enrichment claims arising from data breaches for lack of an injury-in-fact—considering only the real-world, concrete harms alleged by the plaintiff (*not* any purported "gain" by the defendant—which would virtually always exist where the defendant retained the plaintiff's data for some reason). *See, e.g., Tsao*, 986 F.3d at 1336, 1345 (dismissing unjust enrichment claim for lack of injury-in-fact in putative data breach class action); *Darnell v. Wyndham Cap. Mortg., Inc*., No. 3:20-CV-00690-FDW-DSC, 2021 WL 1124792, at *2-6 & n.3 (W.D.N.C. Mar. 24, 2021) (dismissing unjust enrichment claim in data breach case after finding that the stated injuries—which included diminution in the value of PII, loss of privacy, increased risk of harm, and mitigation costs—did not establish Article III standing); *Chambliss*, 189 F. Supp. 3d at 572 (finding a lack of standing to assert unjust enrichment claim for failure to allege an Article III injury-in-fact). Here, Plaintiffs do not claim that Capital One's use of their data in fraud models worked any concrete *harm* to them—only that Capital One

---

law—does not automatically afford Article III standing. *See Khan*, 188 F. Supp. 3d at 534 (rejecting argument that "the violations of state … common law alleged in the Complaint establish standing").

generally obtained a monetary *benefit or gain* from using it.[8] In short, Plaintiffs cannot sidestep their failure to articulate a concrete injury merely by asserting an unfounded claim for unjust enrichment tied only to some purported benefit to Capital One.[9]

*Second*, even if Capital One's "gain" could somehow be sufficient to establish Article III standing, Plaintiffs have not attempted to show that Capital One "gained" anything from the use of any particular Plaintiff's application data. An injury must be "particularized" to satisfy Article III; that is, it must affect a person as an individual. *See Spokeo*, 136 S. Ct. at 1548. Plaintiffs' expert Gary Olsen attempts to prop up their unjust enrichment claim by opining that ███████████

████████████████████████████████████████████████████████

███████████████████████ *See* Olsen Am. Report ¶¶ 66-73. ████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[8] If anything, the fraud models *benefitted* Plaintiffs and class members by reducing fraud. *See* Dkt. 1440 at 31-32.

[9] Even under Plaintiffs' incorrect view of unjust enrichment, two Plaintiffs—Hausauer and Edmondson—would still lack standing. Plaintiffs cannot carry their burden to establish standing because they have no evidence that Hausauer's and Edmondson's application data was ever used in a fraud model. And the record suggests that it was not. ████████████████████████████ ████████████████████████████ *See* Dkt. 1440-23, Kupiec Decl. ¶¶ 10-11. Hausauer and Edmondson applied for and received their credit cards *before* 2014. *See* Ex. A, Hausauer Dep. 41:22-24, 87:13-21; Ex. B, Edmondson Initial Interrog. Resps. No. 2; *see also* Ex. C, CAPITALONE_ MDL_002021106; Ex. D, CAPITALONE_MDL_002204932 (excerpt). Thus, even under Olsen's flawed framework, there is no evidence that Capital One ever benefitted from Hausauer's and Edmondson's stolen application data. These Plaintiffs accordingly lack standing for their unjust enrichment claims.

████████████████ Dkt. 1440-23, Kupiec Decl. ¶ 13. By incorrectly assuming—contrary to the record evidence—that each Plaintiff's application data was equally useful for preventing fraud, Plaintiffs fail to address how the alleged unjust gain "affect[ed] the plaintiff in a personal and individual way," as Article III requires. *Spokeo*, 136 S. Ct. at 1548. The simplistic conclusion that Capital One has realized some "gain" from using consumer data, divorced from the facts of any Plaintiff, is insufficient proof of Article III standing. *Ramirez*, 141 S. Ct. at 2202, 2212 (finding a lack of standing when the plaintiffs "did not present any evidence" of injury as to certain class members).

*Third*, and even if Plaintiffs could establish an injury-in-fact, they cannot prove that the injury is traceable to the unlawful conduct that forms the basis of their unjust enrichment claim— *i.e.*, Capital One's allegedly inadequate data security. Article III standing requires that a claimed injury be "fairly traceable to *the challenged conduct* of the defendant." *Spokeo*, 136 S. Ct. 1540, 1547 (emphasis added). Thus, to satisfy Article III's traceability requirement, a plaintiff asserting an unjust enrichment claim must establish a causal nexus between *her injury* and *the unjust conduct* about which she complains. *See Withrow v. FCA US LLC*, No. 19-13214, 2021 WL 2529847, at *10 (E.D. Mich. June 21, 2021) (plaintiff lacked standing to assert unjust enrichment claim because his injury was not traceable to the "allegedly *unlawful* conduct," *i.e.*, "Fiat-Chrysler's violation of Connecticut law" (internal quotation and citation omitted)); *Parker v. Stranburg*, No. 14-CIV-24010, 2015 WL 3863804, at *2 (S.D. Fla. June 22, 2015) (plaintiff lacked standing to assert unjust enrichment claim because their unlawful red-light-camera tickets "were wholly caused by the municipalities and the vendors with which they contracted," and therefore were not traceable to defendant); *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, No. 2:06-CV-5774 (SRC), 2010 WL 2346624, at *11 (D.N.J. June 9, 2010), *aff'd*, 678 F.3d 235 (3d

Cir. 2012) (dismissing unjust enrichment claim for lack of standing because "Plaintiffs have failed to demonstrate that they have suffered injury-in-fact fairly traceable to Defendants' alleged misconduct").

Here, Plaintiffs cannot prove any injury that "is fairly traceable *to the allegedly unlawful conduct* of which they complain"—Capital One's allegedly inadequate data security. *California v. Texas*, 141 S. Ct. 2104, 2113 (2021) (emphasis added) (internal quotation and citation omitted). Plaintiffs' unjust enrichment theory is not based on Capital One's having saved money by failing to spend enough on data security, or on Plaintiffs' having overpaid for credit card services because Capital One failed to employ adequate data security. Rather, Plaintiffs base their claim on Capital One's use of their data in fraud models. Critically, however, Plaintiffs do not (and could not) assert that Capital One achieved fraud savings *because of* its allegedly inadequate data security. In other words, Plaintiffs have no evidence that Capital One was able to use their data to achieve fraud savings *because* it employed inadequate data security measures (or, conversely, that it would *not* have been able to achieve fraud savings if it had employed adequate data security). There is no dispute that Capital One would have achieved the exact same fraud savings whether it had adequate data security measures or not. Thus, whatever "benefit" Capital One achieved through the use of Plaintiffs' data in fraud models is not traceable to any allegedly unlawful conduct at all, let alone the unlawful conduct Plaintiffs assert as the basis for their unjust enrichment claim (*i.e.*, inadequate data security). This disconnect between the unlawful conduct Plaintiffs allege Capital One engaged in and the unjust benefits Plaintiffs allege Capital One received defeats traceability.

Plaintiffs' unjust enrichment claim also independently fails the traceability test because the purported "gain" Capital One received is not traceable to Capital One's use of *Plaintiffs' data* specifically. To establish traceability, Plaintiffs must show that Capital One would not have

realized its allegedly unlawful gains without their data. *See, e.g.*, *Warth v. Seldin*, 422 U.S. 490, 504 (1975) (even if a zoning ordinance contributed "perhaps substantially" to the asserted injury, plaintiffs lacked standing because they failed to prove that third parties would have built and offered low- or moderate-income housing "absent the … restrictive zoning practices"). Yet Plaintiffs have no evidence that Capital One's fraud models—which themselves are proprietary technology—would be any less effective (or somehow result in lower fraud savings) without the data of the eight individual Plaintiffs. Instead, Plaintiffs (and their expert Olsen) merely assume that ███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

█████████████████████████████████████████[10] █████████████████

███████████████████████████████████████████████████████████████

████████████████████████[11] Capital One's "gain" in terms of fraud savings is therefore not traceable to Capital One's use of *Plaintiffs' application data*, as opposed to these other tools and inputs. Plaintiffs have no evidence of the supposed "gain," if any, attributable to the alleged use of their specific data in the identified fraud models, and they made no attempt to account for the fact that those "gains" could have been caused by a wide variety of other fraud-model inputs. Plaintiffs' failure to account for these other possibilities is fatal to their standing. *See Friends for Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315, 323-24 (4th Cir. 2002) (injuries were not fairly traceable because injuries could be caused by other factors); *see also Fulani v. Brady*, 935 F.2d 1324, 1329

---

[10] *See* Dkt. 1432-10, CAPITALONE_MDL_000188370-71 (showing other sources of fraud savings).

[11] *See* Dkt 1432-8, Supp. Decl. of K. Kauffman ¶ 23 (fraud models "use a wide range of inputs from various sources," including information from credit bureaus and other third parties); Dkt. 1123-1, Decl. of J. Morgan ¶¶ 5-7, 9 (Capital One's fraud models use data from a variety of sources such that is impossible to quantify the value application data contributes to them).

(D.C. Cir. 1991) (traceability not established when challenged IRS decision was one of many "independent causal factors necessary to achieve this injury").

Additionally, as explained in Kathy Kauffman's declaration, ███████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████. *See*

Dkt. 1432-8, Supp. Decl. of K. Kauffman ¶¶ 26-28. In other words, there is no evidence showing how much (if at all) Capital One actually benefited financially from preventing any instance of application fraud, much less from application fraud prevented (in part) by fraud models that used *Plaintiffs'* data specifically. Nor do Plaintiffs try to make any such showing. Thus, any financial benefit Capital One received from using its fraud models is not fairly traceable to the eight Plaintiffs.

***

For these reasons, the Court should dismiss Plaintiffs' breach of contract, breach of implied contract, and unjust enrichment claims for lack of subject matter jurisdiction.

Dated:  July 30, 2021            Respectfully submitted,

<u>/s/</u>_____
David L. Balser (*pro hac vice*)
S. Stewart Haskins II (*pro hac vice*)
Susan M. Clare (*pro hac vice*)
John C. Toro (*pro hac vice*)
Kevin J. O'Brien (VSB No. 78886)
Robert D. Griest (*pro hac vice*)
**KING & SPALDING LLP**
1180 Peachtree Street, N.E.
Atlanta, GA 30309
Tel.: (404) 572-4600
Fax: (404) 572-5140
dbalser@kslaw.com
shaskins@kslaw.com
sclare@kslaw.com
jtoro@kslaw.com

kobrien@kslaw.com
rgriest@kslaw.com

Robert A. Angle (VSB No. 37691)
Tim St. George (VSB No. 77349)
Jon S. Hubbard (VSB No. 71089)
Harrison Scott Kelly (VSB No. 80546)
**TROUTMAN PEPPER HAMILTON SANDERS LLP**
1001 Haxall Point
Richmond, VA 23219
Tel.: (804) 697-1200
Fax: (804) 697-1339
robert.angle@troutman.com
timothy.st.george@troutman.com
jon.hubbard@troutman.com
scott.kelly@troutman.com

Mary C. Zinsner (VSB No. 31397)
S. Mohsin Reza (VSB No. 75347)
**TROUTMAN PEPPER HAMILTON SANDERS LLP**
401 9th Street, NW, Suite 1000
Washington, DC 20004
Tel.: (202) 274-1932
Fax: (202) 274-2994
mary.zinsner@troutman.com
mohsin.reza@troutman.com

*Counsel for Capital One Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 30, 2021, I caused the foregoing document to be filed with the Clerk of Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

/s/
David L. Balser

*Counsel for Capital One Defendants*