**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| IN RE CAPITAL ONE CONSUMER DATA SECURITY BREACH LITIGATION | ) MDL No. 1:19-md-02915 (AJT-JFA) <br> ) <br> ) <br> ) |

**This Document Relates to the Consumer Cases**


**REPLY IN SUPPORT OF AMAZON'S MOTION FOR SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

Page

INTRODUCTION ...................................................................................................1

PLAINTIFFS FAIL TO DISPUTE AMAZON'S STATEMENT OF MATERIAL FACTS..........1

ARGUMENT .......................................................................................................12

I.      AMAZON IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' NEGLIGENCE CLAIM...................................................................................12

      A.      Plaintiffs Fail to Meet Their Burden to Show Amazon Owed A Duty of Care...................................................................................................12

            1.      Plaintiffs Cannot Claim That Amazon's Conduct Was Unreliable Without Identifying The Applicable Standard of Care. ...............................................................................................12

            2.      Amazon Did Not Assume A Duty to Plaintiffs. ............................13

                  a.      Amazon's Contract with Capital One Is Not Evidence of Foreseeability of The Incident Or Assumption of Duty to Plaintiffs. .......................................14

                  b.      Plaintiffs' Argument That Amazon Failed to Respond to Capital One's Security Concerns Is Not Supported by The Evidence And Does Not Relate to The Vulnerability Exploited by The Hacker.....................15

                  c.      Plaintiffs Fail to Dispute That AWS Did Not Have An Inherent SSRF Vulnerability.........................................15

                  d.      GuardDuty Did Not Make The Cyber Incident Foreseeable. ...................................................................16

                  e.      The Evidence Is Undisputed That Amazon Did Not Assume A Duty through Representation. .........................17

            3.      AWS Does Not Owe A Common Law Duty of Care to Plaintiffs. ...................................................................................20

            4.      Plaintiffs Failed to Prove The Threshold Requirement of A Special Relationship.................................................................21

            5.      The Economic Loss Rule Bars Plaintiffs' Claims Absent Privity of Contract.................................................................21

i

B.    Plaintiffs Cannot Establish Proximate Causation. .....................................22

II.    PLAINTIFFS' UNJUST ENRICHMENT CLAIM LACKS ANY FACTUAL SUPPORT AND FAILS AS A MATTER OF LAW.............................................24

A.    Virginia Law Requires Direct Dealings for Unjust Enrichment...............24

1.    Plaintiffs Did Not Convey A Benefit on Amazon. ........................24

2.    Plaintiffs Fail to Show That Amazon's Benefit from Providing Cloud Computing Services to Capital One Is Related to Their Detriment. ...........................................................26

B.    The Facts Do Not Support Plaintiffs' Ungrounded Legal Theory ███████████████████████████████████████ .............................................................27

III.    AMAZON'S MOTION FOR SUMMARY JUDGEMENT AS TO PLAINTIFFS' STATE LAW STATUTORY CLAIMS SHOULD BE GRANTED..................................................................................................28

IV.    AMAZON IS ENTITLED TO SMMARY JUDGMENT ON PLAINTIFFS' DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF CLAIMS...........30

CONCLUSION.............................................................................................................30

# **TABLE OF AUTHORITIES**

**Page(s)**

## Cases

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)...........................................................................................1

*In re Anthem, Inc. Data Breach Litig.*,
162 F. Supp. 3d 953 (N.D. Cal. 2016) .................................................................29

*Bd. of Supervisors of Fairfax Cty. v. Lake Servs., Inc.*,
440 S.E.2d 600 (Va. 1994)....................................................................................13

*Beard Plumbing and Heating, Inc. v. Thompson Plastics, Inc.*,
152 F.3d 313 (4th Cir. 1998) ................................................................................21

*Benedict v. Hankook Tire Co.*,
286 F. Supp. 3d 785 (E.D. Va. 2018) ...................................................................13

*Burch v. Whirlpool Corp.*,
No. 1:17-CV-18, 2017 WL 7370988 (W.D. Mich. Sept. 28, 2017) .................24, 25

*Burrows v. Purchasing Power, LLC*,
No. 1:12-CV-22800-UU, 2012 WL 9391827 (S.D. Fla. Oct. 18, 2012) ...............29

*Carolina, C. & O. Ry. v. Hill*,
89 S.E. 902 (Va. 1916)....................................................................................23, 24

*Crawford v. Deutsche Bank AG*,
244 F. Supp. 2d 615 (E.D. Va. 2003) ...................................................................21

*Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.*,
693 So. 2d 602 (Fla. Dist. Ct. App. 1997) ...........................................................30

*Fed. Ins. Co. v. Smith*,
144 F. Supp. 2d 507 (E.D. Va. 2001) ..............................................................25, 26

*Flaherty v. Legum & Norman Realty, Inc.*,
No. CIV.A.1:05-1492, 2007 WL 4694346 (E.D. Va. Jan. 4, 2007), *aff'd,* 281
F. App'x 232 (4th Cir. 2008) ................................................................................12

*Hunter v. Prince George's Cnty., Md.*,
36 F. App'x 103 (4th Cir. 2002) .............................................................................4

*LaCourte v. JP Morgan Chase & Co.*,
    2013 WL 4830935 (S.D.N.Y. Sept. 4, 2013), *aff'd sub nom. Ritchie v. Taylor*,
    701 F. App'x 45 (2d Cir. 2017) ...................................................................................28

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
    No. 8:19-md-02879, 2020 WL 6290670 (D. Md. Oct. 27, 2020)
    *reconsideration denied*, 2021 WL 1516028 (D. Md. Apr. 16, 2021) ..............................18, 19

*McCallum v. CSX Transp., Inc.*,
    149 F.R.D. 104 (M.D.N.C. 1993) ...................................................................................7

*Precision Piping & Instruments, Inc. v. E.I. du Pont de Nemours & Co.*,
    951 F.2d 613 (4th Cir. 1991) ...........................................................................................7

*Raven Red Ash Coal Co. v. Ball*,
    39 S.E.2d 231 (Va. 1946)................................................................................................28

*Redman v. Brush and Co.*,
    111 F.3d 1174 (4th Cir. 1997) ..................................................................................20, 22

*Sedar v. Reston Town Ctr. Prop., LLC*,
    988 F.3d 756 (4th Cir. 2021) ...........................................................................................1

*Seeman v. Oxfordshire, LLC*,
    83 Va. Cir. 442 (2011) ...............................................................................................24, 25

*Silverpop Sys., Inc. v. Leading Mkt. Techs., Inc.*,
    641 F. App'x 849 (2016) (per curiam)............................................................................12

*Sky Cable, LLC v. Coley*,
    No. 5:11CV00048, 2013 WL 3517337 (W.D. Va. July 11, 2013) ...................................24

*Stoney v. Franklin*,
    54 Va. Cir. 591 (2001) ....................................................................................................22

*T. Musgrove Constr. Co. v. Young*,
    840 S.E.2d 337 (Va. 2020)..............................................................................................27

*Terry v. Irish Fleet, Inc.*,
    818 S.E.2d 788 (Va. 2018).................................................................................14, 17, 20

*In re TFT–LCD (Flat Panel) Antitrust Litig.*,
    599 F. Supp. 2d 1179 (N.D. Cal. 2009) .........................................................................26

*In re TFT–LCD (Flat Panel) Antitrust Litig.*,
    No. M 07-1827 SI, 2011 WL 4501223 (N.D. Cal. Sept. 28, 2011)..............................26, 27

*Veridian Credit Union v. Eddie Bauer, LLC*,
    295 F. Supp. 3d 1140 (W.D. Wash. 2017)..............................................................29

*Wai Man Tom v. Hosp. Ventures LLC*,
    980 F.3d 1027 (4th Cir. 2020) ...............................................................................2

*Weiss v. Equifax, Inc*.,
    20-CV-1460 (BMC), 2020 WL 3840981 (E.D.N.Y. July 8, 2020) ......................29

**Statutes**

Civ. L ............................................................................................................................8

**Other Authorities**

Civ. R. 56(B).................................................................................................................2

Fed. R. Civ. P. 56.........................................................................................................4

Fed. R. Evid. 802 .........................................................................................................4

Federal Rule of Evidence 407....................................................................................10

Federal Rule of Evidence 801(d)(2)(D)...................................................................7, 8

Federal Rules of Evidence 401, 402, and 403 ............................................................6

Rule 12(b)(6).........................................................................................................17, 29

Rule 30(b)(6)...............................................................................................................11

**TABLE OF EXHIBITS**

| No. | Exhibit |
|-----|---------|
| A. | Excerpted Transcript of the Deposition of Don Barber, taken on September 22, 2020 |
| B. | Excerpted Transcript of the Deposition of Michael Haken, taken on October 2, 2020 |
| C. | Excerpted Transcript of the Deposition of Stephen Schmidt, taken on September 18, 2020 |
| D. | Excerpted Transcript of the Deposition of Becky Weiss, taken on October 29, 2020 |
| E. | Excerpted Transcript of the Deposition of AWS 30(b)(6) Witness Steve Schuster, taken on June 11, 2020 |
| F. | Excerpted Transcript of the Deposition of AWS 30(b)(6) Witness Michael Haken, taken on June 9, 2020 |
| G. [1] | Ontario Superior Court of Justice, Reasons for Decision, Class Proceedings Act, 1992, Case No. CV-19-00625030-00CP, *Rina Del Guidice and Daniel Wood v. Paige A. Thompson*, *Capital One Financial Corporation, Amazon Web Services, Inc., and Amazon Web Services (Canada) Inc., et al.*, 2021 ONSC 5379 |

---

[1] This exhibit is further supported by the Declaration of Tyler Newby in support of Amazon's Reply filed concurrently herewith.

## INTRODUCTION

Plaintiffs do not dispute that Amazon had no knowledge or control over the unique combination of configurations of Capital One's Card Production AWS account or the ModSec web application firewall that the hacker exploited to access data containing Plaintiffs' personal information.  Nor do they dispute that Amazon lacked knowledge or control of the data in that account.  Instead, faced with these undisputed facts, Plaintiffs attempt to salvage their case against Amazon in two ways.  First, Plaintiffs mischaracterize evidence in an effort to generate a dispute of fact where there is none.  Plaintiffs further seek to extend the law of negligence and unjust enrichment beyond their reasonable bounds, and certainly beyond any bounds that have been drawn by courts applying Virginia law.  As set forth in detail below, the Court should reject both ploys.

## PLAINTIFFS FAIL TO DISPUTE AMAZON'S STATEMENT OF MATERIAL FACTS

Once a party moving for summary judgment demonstrates the absence of evidence to support the nonmoving party's case, the nonmovant must come forward with *specific* facts to show that there is a *genuine* issue for trial.  *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021) (noting "the nonmoving party, to survive the motion for summary judgment, must demonstrate specific, material facts that give rise to a genuine issue.") (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (stating, "[f]actual disputes that are irrelevant or unnecessary will not be counted.").  Thus, the relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251–52.  Under this standard, "[t]he mere existence of a scintilla of evidence" in favor of the non-movant's position is insufficient to survive summary judgment.  *Id.* at 252.

"Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion." *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020).

Plaintiffs do not dispute the majority of Amazon's statement of material facts, and those facts are therefore admitted.  L. Civ. R. 56(B).  Plaintiffs' efforts to dispute the facts stated in SUMF ¶¶ 7, 11, 13, 17, 26, 31, 33, 36, 39, 40 and 42 are not material, not supported by record evidence, or simply do not dispute the factual statement they purport to dispute.

**SUMF ¶ 7.**  Plaintiffs' attempt to dispute SUMF ¶ 7 concerning the shared responsibility model finds no support in the record.  Plaintiffs argue that AWS's 2015 contract with Capital One (the "2015 Agreement") is a different "paradigm" than the shared responsibility model described in ¶ 7.  Opp. at 3.  Not so.  The respective responsibilities of AWS and Capital One spelled out in Sections 3.1, 4.2 and Attachment A of the 2015 Agreement reflect the shared responsibility model described in SUMF ¶ 7.  ██████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████  Opp. Ex. 5 at -5866 (emphases added).

████████████████████████████████████████████

████████████████████████████████████████████

████████  *Id.* at -5883.  ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████  *Id.* at -5869.  ██████████

2

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████    The 2015 Agreement is consistent with the

shared responsibility model and the cited record testimony supporting SUMF ¶ 7.  *See* Dkt. 1694,

Amazon's Corrected Memorandum of Law in support of Motion for Summary Judgment ( "Mot.")

¶ 7 (citing Ex. 24 (Haken, AWS 30(b)(6) Tr.) at 57:2–20); *see also* Mot. Ex. 2 (Frei, Capital One

30(b)(6) Tr.) at 54:9–55:10; Mot. Ex. 30 (Barber Ex. 140).

SUMF ¶ 11.  Similarly, Plaintiffs' effort to dispute SUMF ¶ 11 that AWS does not access

customer data and applications is misleading.  Opp. at 4.  Plaintiffs point to one instance when

Amazon ████████████████████████████████    while assisting Capital One

investigate the data security incident.  Plaintiffs do not and cannot point to any record evidence

that Amazon accessed Capital One applications or data stored in its AWS accounts.

SUMF ¶ 13.  Plaintiffs' effort to dispute SUMF ¶ 13 that their technical expert, Dr.

Madnick, did not identify an industry standard of care for security for providers of infrastructure

as a service cloud services also fails.  Opp. at 4.  While Plaintiffs are correct that Dr. Madnick

testified that he did not compare AWS's security practices against Google or Microsoft, his expert

report is also bereft of any other identification of a standard of care that is applicable to AWS.

Because Plaintiffs have come forward with no evidence showing that Dr. Madnick identified a

standard of care applicable to AWS, this fact is undisputed.  *See also* Dkt. 1664, Amazon's Motion

to Exclude Testimony of Stuart Madnick ("Madnick Mot.") at 9–12.

SUMF ¶ 17.  The fact that "Capital one never had any concerns regarding Amazon's

commitment to security" is supported by the sworn deposition testimony of a Capital One

3

corporate representative witness.  Mot. Ex. 1.  In an effort to dispute this testimony, Plaintiffs mostly rely on cherry-picked hearsay instant message chatter between a small number of Capital One employees, or irrelevant documents that they mischaracterize.  Opp. at 5–8.  Opposition exhibits 10, 11, and 12 cited by Plaintiffs are classic hearsay statements that are not subject to any exception.  They are therefore inadmissible, and cannot be used to dispute SUMF ¶ 17.  Fed. R. Civ. P. 56; Fed. R. Evid. 802; *Hunter v. Prince George's Cnty., Md.*, 36 F. App'x 103, 106 (4th Cir. 2002) ("Only evidence that would be admissible at trial may be considered for summary judgment purposes.").  Moreover, no witness has testified about Opposition exhibit 13, so Plaintiffs can only speculate in their interpretation of the rough notes in the email, which was sent months after the Cyber Incident.  Nor is Plaintiffs' conclusory statement that "AWS should have provided much more security support to Capital One to mitigate known threats to its data" supported by any record evidence.  Opp. at 5.  Opposition exhibits 14 and 15 merely establish that ███████████████████████████████████, a fact that is not in dispute.  This statement is pure argument that cannot create a genuine dispute regarding SUMF ¶ 17.  It also ignores the fact that the companies' respective responsibilities regarding the security of Capital One's data and the responsibility for correctly configuring AWS's service offerings is clearly spelled out in Sections 3.1, 4.2 and Attachment A of the 2015 Agreement.  *See supra*, Amazon's Reply to SUMF ¶ 7 (discussing Opp. Ex. 5).

Next, Plaintiffs misconstrue the ███████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ███████████████████████████████████████████.  Reply Ex. A (Barber Tr.) at 53:16–54:16.  ███████████████████████████████

██████████████████████████████████████, this paper and related dialogue was not a reflection of Capital One expressing "concerns" about "Amazon's lack of commitment to security."  Opp. at 5; Reply Ex. A (Barber Tr.) at 131:20–133:10.  Plaintiffs' evidence to support their theory that "Capital One criticized AWS about AWS's failure to properly address Capital One's data exfiltration concerns" is a document from the personnel file of the author of the paper, which merely praises his ████████████████████ with respect to the paper.  Opp. at 6 (citing Ex. 15 at -127).  Finally, Plaintiffs' expert, Dr. Madnick, ██████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████.  *See* Madnick Mot. Ex. C (Madnick June 9 Tr.) at 143:22–144:4, 150:6–15.

Plaintiffs also mischaracterize Amazon's responses to product feature requests ("PFR") submitted by Capital One.  ████████████████████████████████████████████████

████████████████████████████████████████████████████.  Madnick Mot. Ex. C (June 9 Tr.) at 155:15–156:14.  ███████████████████████████████

████████████████████████████████ Reply Ex. B (Haken Oct. 2 Tr.) at 24:25–26:14. Contrary to Plaintiffs' claim that ██████████████████████████████████████████

████████████████, AWS's Chief Information Security Officer unequivocally denied that allegation. Reply Ex. C (Schmidt Sept. 18 Tr.) at 233:4–10.  Furthermore, ████████████████████

████████████████████████████████████████████████████████████

does not dispute SUMF ¶ 17.  In fact, the PFR Plaintiffs focus on—████████████████—was unrelated to the cause of the Cyber Incident, ██████████████████████████████████

████████████████████████ Reply Ex. B (Haken Oct. 2 Tr.) at 46:6–47:14).  ██████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████, which is not what took place in the Cyber Incident in this case.

Finally, Plaintiffs mischaracterize a whitepaper proposing a number of new AWS services that was authored by AWS engineer Becky Weiss, months after the breach. The whitepaper makes no mention of Capital One expressing concerns about Amazon's commitment to security. Nor does it mention forgery attacks, the Cyber Incident or the customer-controlled configuration issues that led to it. Ms. Weiss herself noted during her deposition on the topic: █████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████ *See* Madnick Mot. Ex. J (Weiss Oct. 29 Tr.) at 140:14–21. Finally, Amazon objects under Federal Rules of Evidence 401, 402, and 403 to Plaintiffs' use of Exhibit 22 for this purpose. *See* Opp. at 24–25. Ms. Weiss's testimony regarding the whitepaper, which she drafted months after the Cyber Incident, does not concern the Cyber Incident. Plaintiffs should be precluded from twisting this irrelevant testimony to contend that AWS acknowledged Capital One's concern about being able to ███████████████ Opp. at 24.

**SUMF ¶ 26.** Plaintiffs' allegations of disputed facts as to S3, the AWS Instance Metadata Service ("IMDS"), and GuardDuty are addressed in Amazon's replies to Heading F and SUMF ¶¶ 39 and 40.

**SUMF ¶ 31.** Plaintiffs fail to dispute SUMF ¶ 31 with the absence of any record evidence that Plaintiffs' personal information provided any benefit or value to AWS, ███████████████ ██████████████████████████████████████████ Without any facts to support their wild assertion, Plaintiffs simply double down on their expert's ████████████████ theory of unjust enrichment. For the reasons set forth in Amazon's motion to exclude Gary Olsen's testimony, that

opinion is unreliable and inadmissible. *See* Dkt. 1430 ("Olsen Mot."); *see also* Dkt. 1633, Amazon's Reply in support of Olsen Mot.  It therefore cannot create a dispute of fact to avoid summary judgment.

      **SUMF ¶ 36.**  Plaintiffs misconstrue an email snippet and speculative musings of an unidentified person in an instant message chat in an effort to dispute the fact that ███████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████  *See* Opp. Ex. 25 at -488.  Second, the snippet of an instant message chat from an unidentified person does not support Plaintiffs' claim that an "AWS engineer admitted that the intrusion did result from a compromise of AWS's infrastructure."  Opp. at 10 (citing Opp. Ex. 26 at -385).  Plaintiffs provide no basis for their assertion that this statement was made by an AWS engineer; the speaker's name and position is unidentified.  Moreover, it is clear from the context of the statement that the speaker's only source of information about the incident is his reading of the FBI affidavit supporting Paige Thompson's arrest rather than Amazon's investigation of the incident.  Because there is no foundation for who the speaker is, or whether the speaker was speaking within the scope of his employment, the statement is inadmissible hearsay that is not subject to the exception of Federal Rule of Evidence 801(d)(2)(D).  *See, e.g., Precision Piping & Instruments, Inc. v. E.I. du Pont de Nemours & Co.*, 951 F.2d 613, 620 (4th Cir. 1991) (affirming hearsay exclusion of statements made by employees outside the scope for their employment); *McCallum v. CSX Transp., Inc.*, 149 F.R.D. 104, 111

---

[2]  Amazon's citation in support of SUMF ¶ 36 contained a typographical error.  The cite should read,  "Ex. 25 (Schuster Tr.)" instead of "Exhibit 26 (Schmidt Tr.).  *See* Mot. at 11.

(M.D.N.C. 1993) (emphasizing that "employees do not come under Fed. R. Evid. 801(d)(2)(D) unless their job function has something to do with the issue at hand."). Furthermore, the only Amazon witness to have been questioned about this instant message statement disagreed with its characterization. *See* Reply Ex. D (Weiss Tr.) at 158:25–162:9. 

*Id.*

. *See* Madnick Mot. at 18–19 (citing Ex. C (June 9 Tr.) at 87:5–14, 94:5–8, 199:23–200:12). Finally, the cited statement does not state, as Plaintiffs argue, that the AWS infrastructure was compromised;

Opp. Ex. 26 at -385.

**Heading F.** Heading F is not a statement of undisputed material facts; it is a section heading followed by the numbered statements of undisputed material facts and the evidentiary support for those headings. Civ. L. R. 56(B). Plaintiffs' response to Heading F should therefore be disregarded. Opp. at 11–14. If the Court does consider it, Amazon addresses Plaintiffs' contentions about IMDS in SUMF ¶ 39 and the contentions about GuardDuty in SUMF ¶ 40 below.

**Heading F and SUMF ¶ 39.** The record evidence cited by Plaintiffs to dispute Heading F and SUMF ¶ 39 that there is no forgery attack or SSRF vulnerability in IMDS does not support a dispute that needs to be litigated. First, Plaintiffs rely heavily on the opinion testimony of their expert, Dr. Madnick, not facts in the record. Opp. at 11–13. As explained in Amazon's motion to exclude Dr. Madnick, this opinion is inadmissible and cannot be considered to create a dispute of fact. And even Dr. Madnick concedes

8

█████████████████. *See* Madnick Mot. Ex. C (June 9 Tr.) at 87:5–14, 94:5–8, 199:23–200:12.

████████████████████████████████████████████████████████

████████████████████████████. Opp. at 12. ███████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████    ██████████████

████████████████████████████████████████████████████████████

███████████ Opp. Ex. 28 at -958. It further explains that the attacker attempted to obtain credentials █████████████████████████████████████████████████

█████████████████ *Id.* at -959 (emphasis added). ████████████████████████

██████████████████████████████ *See* Reply Ex. E (Schuster 30(b)(6) Tr.) at 114:11–118:19 (stating, ██████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████); Reply Ex. F (Haken 30(b)(6) Tr.) at 53:4–15 █████████████████████████████████████

███████████████████████████████.

Third, Plaintiffs imply, incorrectly, that Steve Schuster of AWS ████████████████

██████████████████████ Opp. at 14–15, ¶ 39. Mr. Schuster's testimony immediately preceding the section cited by Plaintiffs states the opposite: ███████████████████

████████████████████████████████████████████████████████████



Reply Ex. E (Schuster 30(b)(6) Tr.) at 122:5–24.  Plaintiffs further incorrectly attribute inadmissible hearsay from "duo.com" to Mr. Schuster's testimony for their position that ████████████████████████████████████████

████████████████████████████ Opp. at 14–15. ████████████

██████████████████████ Reply Ex. E (Schuster 30(b)(6) Tr.) at 119:1–8.

The remainder of the record cited by Plaintiffs does not raise a dispute as to whether there was an SSRF vulnerability in IMDS.  To the contrary, it only establishes that Mr. Schuster was aware that ████████████████████████████████████████

██████████████████████. Opp. Ex.27 at 125:10–126:1.  Moreover, the addition of enhanced features in IMDSv2 to help customers prevent SSRF attacks does not show that IMDS had a "vulnerability."  Finally, to the extent that Plaintiffs contend that the release of IMDSv2 is evidence of Amazon's negligence in the incident, that evidence is inadmissible under Federal Rule of Evidence 407.

**Heading F and SUMF ¶ 40.**  The materials Plaintiffs cite in their responses to Heading F and SUMF ¶ 40 with respect to GuardDuty do not contradict the fact that Amazon and Capital One's investigations determined that there was no vulnerability on the AWS side of the shared responsibility model.  Opp. at 15.  First, as discussed above in the reply to SUMF ¶ 36, ██

████████████████████████████████████████

██████████████████████████ *See* Opp. Ex. 25 at -488.  Second, the ████████

████████████ report cited by Plaintiffs did not, as Plaintiffs claim, state that ████████████

████████████████████████████████████████

████████████████████████████ Opp. at 15 (citing Opp. Ex. 31 at -391). The document does not make that conclusion. Instead, it notes that ████████████████████████ ████████████████████████████████ The document states ████████████████████████████████ , not that the Cyber Incident took place "because" GuardDuty was not working properly or that GuardDuty had a vulnerability. Opp. Ex. 31 at -391, -435 ███████████████████████ ███████████████ . Plaintiffs also mischaracterize an instant message statement made by an AWS employee on the day the Cyber Incident was announced, which stated that he █████ ████████████████████████████ . Opp. at 14. That employee testified that when he made that statement, ████████████████████████████████ ████████████████████████████ . Reply Ex. B (Haken Oct. 2 Tr. 168:17–170:9).

Moreover, Plaintiffs cannot dispute that ████████████████████████ ███████████████ . Reply Ex. C (Schmidt Sept. 18 Tr.) at 55:23–56:9; Reply Ex. E (Schuster 30(b)(6) Tr.) at 49:14–23. The fact that Amazon had not yet released the service in the Stockholm region, which it made known to its customers, is not a "vulnerability." Furthermore, Plaintiffs' statement that Capital One would have "been able to stop or mitigate the exfiltration of data" had GuardDuty been active in the Stockholm region is unsupported speculation, not a fact. Opp. at 14.

**SUMF ¶¶ 33 & 42.** Plaintiffs' other disputed facts are immaterial or unsupported. In disputing ¶ 33, Plaintiffs contend that ████████████████████████ . Opp. at 10. However, as the Capital One Rule 30(b)(6) testimony cited in ¶ 33 made clear, ████████████████████ ███████████████ . *See* Mot. at 10, SUMF ¶ 33 (citing Ex. 8 (Lye, Capital One 30(b)(6) Tr.) at 54:2-9). Plaintiffs' effort to dispute SUMF ¶ 42 also fails. While Plaintiffs contend that

███████████████████████████████████████████████████

████████████████████████████████████████████ Opp.

at 15–16, ¶ 42 (citing Ex. 34 at -352).

Plaintiffs have failed to create a dispute of material fact to avoid summary judgment.

## ARGUMENT

I.    **AMAZON IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' NEGLIGENCE CLAIM**

A.    **Plaintiffs Fail to Meet Their Burden to Show Amazon Owed A Duty of Care.**

1.    **Plaintiffs Cannot Claim That Amazon's Conduct Was Unreliable Without Identifying The Applicable Standard of Care.**

Plaintiffs' Opposition suffers from a lack of specific facts that could create a triable issue on the elements of duty and causation.  After hiring an expert to opine on how Amazon ██████ ██████████████████████████████████████ Plaintiffs now assert that Dr. Madnick's testimony is "not required to establish the standard of care in this case."  Dkt. 1664-1 Ex. A, Madnick Rep. at 45; *see* Opp. at 19.  With this response, Plaintiffs concede that their technical expert has failed to identify the applicable standard of care, rendering his opinions untethered to anything but his own *ipse dixit*.  *See* Madnick Mot. at 9–12; Reply in Support of Madnick Mot. filed concurrently herewith at 6–11.  Dr. Madnick's failure to establish or apply an objective standard of care to Amazon is a failure of proof on the required element of "duty" and precludes Plaintiffs' negligence claim.  *See Flaherty v. Legum & Norman Realty, Inc.,* No. CIV.A.1:05-1492, 2007 WL 4694346, at *6 (E.D. Va. Jan. 4, 2007) (granting summary judgment on negligence in favor of the defendant where the plaintiff's expert did not establish the applicable standard of care), *aff'd,* 281 F. App'x 232 (4th Cir. 2008); *see also Silverpop Sys., Inc. v. Leading Mkt. Techs., Inc.*, 641 F. App'x 849, 852 (2016) (per curiam) (affirming summary judgment for the defendant in data breach case where the plaintiff failed to identify a standard of care in the industry).

12

The cases Plaintiffs cite to support their argument that an expert need not establish a standard of care do not help them. Those cases stand for the proposition that expert testimony is "generally required" in cases "involving the practice of professions requiring advanced, specialized education, such as engineering" which is exactly the case here. *Bd. of Supervisors of Fairfax Cty. v. Lake Servs., Inc.*, 440 S.E.2d 600, 602 (Va. 1994); *see also Benedict v. Hankook Tire Co.,* 286 F. Supp. 3d 785, 791 (E.D. Va. 2018) (noting that "technical" cases involving "engineering" ordinarily require expert testimony "to establish the appropriate standard of care, a deviation from that standard, and that such deviation was the proximate cause of damages"). The standard of care for security for cloud computing service providers cannot be compared to the commonsense opinions offered in Plaintiffs' cited cases. *See* Opp. 19. This lawsuit requires, at its core, an understanding of the technical causes of the Cyber Incident, carried out by a sophisticated hacker with criminal intent. Other central issues relate to the security of Capital One's web applications, the security of AWS's cloud infrastructure, and the findings of Capital One and Amazon's respective post-breach investigations. These complex topics are not analogous to signage on a ski slope or whether a surgeon has a duty of ordinary care not to leave a medical instrument in a patient's body. Plaintiffs' failure to present expert testimony on the standard of care is dispositive.

### 2.    Amazon Did Not Assume A Duty to Plaintiffs.

Plaintiffs' conclusory allegations that Amazon voluntarily assumed a duty to safeguard Plaintiffs' personal information cannot withstand summary judgment. Plaintiffs do not dispute that they lack any evidence supporting the allegations the Court identified in its motion to dismiss order finding that Plaintiffs adequately *alleged* the incident was foreseeable. *See* Mot. at 20–24. Plaintiffs' theory that the Cyber Incident carried out by a third-party criminal against its customer was foreseeable is disfavored under Virginia law even without consideration of the undisputed

facts that Amazon lacked knowledge of the Capital One configurations that enabled the Cyber Incident.  *See* SUMF ¶¶ 4–5, 10–11, 18–30; Reply to SUMF ¶¶ 11, 26.  The existence of a duty to protect against criminal acts of third parties is the "exception" which arises only in "rare circumstances."  *Terry v. Irish Fleet, Inc.*, 818 S.E.2d 788, 794, 795 (Va. 2018) ("If we were to recognize that a duty to warn or protect against the danger of criminal assault by third persons could arise outside the context of a special relationship or an express undertaking, the exception would swallow the rule.").  Here, the record is undisputed that AWS had no control over or knowledge of Capital One's account configurations ████████████████████████████ ████████████████████████  *See* Mot. at 21–26.

> **a.    Amazon's Contract with Capital One Is Not Evidence of Foreseeability of The Incident Or Assumption of Duty to Plaintiffs.**

The only purported "fact" Plaintiffs can muster on foreseeability is Amazon's contract with Capital One.  *See* Opp. at 21–22 (referencing Amazon's 30(b)(6) testimony and its confidential agreement with Capital One); *see also id.* at 27 (same), 31 (same), 33 (same).  As discussed above Amazon's reply to SUMF ¶ 7, the contractual provisions make clear that Amazon is responsible for securing the aspects of the AWS network under its control, while Capital One is responsible for properly configuring the AWS services it uses, ███████, and the applications and data it uses within its AWS account.  *See also* Mot. at 3, 6, SUMF ¶¶ 6–7, 18; Reply to SUMF ¶ 7.  The immaterial fact regarding Amazon's contractual obligations to its customer fails to raise a genuine triable issue on foreseeability of harm.  Even if it were material, Amazon's contractual obligations to Capital One do not create a duty in tort to Plaintiffs.

**b.      Plaintiffs' Argument That Amazon Failed to Respond to Capital One's Security Concerns Is Not Supported by The Evidence And Does Not Relate to The Vulnerability Exploited by The Hacker.**

Plaintiffs' argument that "AWS failed to heed and respond to Capital One's security concerns and requests for help" relies on a mix of inadmissible casual chatter between Capital One employees, and unrelated product feature requests and guidance provided by Amazon to Capital One.  As discussed above in Amazon's reply to SUMF ¶ 17 and explained in turn below, none of these red herrings concerned the configurations exploited by the hacker, ███████████

████████████████████████████████████████

████████████  And none shows that the Cyber Incident was foreseeable to AWS.

**c.      Plaintiffs Fail to Dispute That AWS Did Not Have An Inherent SSRF Vulnerability.**

Plaintiffs come forward with no evidence that AWS had inherent vulnerabilities within its services that contributed to the Cyber Incident, let alone a vulnerability to SSRF attacks.  *See* Reply to SUMF ¶ 39; Reply Ex. E (Schuster 30(b)(6) Tr.) at 122:5–16 █████████████

█████████████████████████████.

The only evidence that Plaintiffs provide ██████████████████████

████████████████████████████████████████

█████████████████████  *See* Opp. at 25.  As discussed above in the reply to SUMF Heading F and ¶ 39, none of the record evidence Plaintiffs cite describes an AWS vulnerability.  Instead, they confirm that █████████████████████████

████████████████████████████████████—not that IMDS had a vulnerability.  Indeed, as Plaintiffs' own expert confirmed, █████████████████████

█████████████████████  *See* Madnick Mot. at 19 (listing the numerous times that Plaintiffs' technical expert, Dr. Madnick, testified to the same effect).

Second, while ███████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████ Madnick Mot. at 18–19.  Again, Plaintiffs offer

out-of-context evidence intended to mislead the Court; but their cited evidence actually supports

the fact that an SSRF vulnerability is created by a customer's configuration.

Third, Plaintiffs argue that AWS's release of IMDSv2 eight months after the Cyber

Incident ████████████████████████████████████████ Opp. at 26.

███████████████████████████████████████████████████

██████████████████████████████.  Moreover, IMDSv2 was created to provide customers

with additional features to help prevent attacks resulting from misconfigurations by customers, not

to address any flaw with AWS services. ████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████ *See id.;* Reply to Heading F and SUMF ¶ 39.

### d.    GuardDuty Did Not Make The Cyber Incident Foreseeable.

Plaintiffs' argument that the Cyber Incident was foreseeable because GuardDuty, a threat

detection service AWS offers to customers, ████████████████████████████

███████████████████████████████, is irrelevant and nonsensical.

Plaintiffs themselves admit that GuardDuty is a "threat detection service."  Opp. at 26–27

(emphasis added).  They do not, and cannot, argue that GuardDuty is a threat prevention service

or has any capabilities beyond sending alerts about certain activities. *See id.* ███████████

███████████████████████████████████████████████████

16

███████████████████████████████    *See* Reply to Heading F and SUMF ¶ 40.  Nor is there any

evidence that GuardDuty failed to perform; it had not yet launched in the Stockholm region.

**e.    The Evidence Is Undisputed That Amazon Did Not Assume A Duty through Representation.**

Plaintiffs' broad assertion that "AWS undertook an affirmative course of action to secure

its cloud infrastructure" (Opp. at 31) is insufficient to establish that it assumed a duty to Plaintiffs

to survive summary judgment.  Tellingly, Plaintiffs in their Opposition can only rely on the Court's

rationale in its motion to dismiss order and factually inapplicable Rule 12(b)(6) cases.  For factual

support, Plaintiffs again rely on the 2015 Agreement to hinge their entire theory of Amazon's

voluntary assumption of duty "through its acts and representations."  *See* Opp. at 27–28.  As

discussed in Section I.A.2.a and Amazon's reply to SUMF ¶ 7 above, Plaintiffs mischaracterize

Amazon's agreement with Capital One, which merely reflects the shared responsibility model.

Moreover, Plaintiffs can cite no legal authority for their proposition that Amazon's

contractual agreement with Capital One, which no Plaintiff had knowledge of, establishes a duty

through a "representation" to the Plaintiffs.  To the contrary, "[r]easonable bounds to the concept

of assumed duty require that liability should be limited to duties assumed toward a specific person

or a limited and identifiable class."  *Terry*, 818 S.E.2d at 796–97 (Dissenting, J. McCullough,

Mims, Powell) (citing *November v. Chesterfield Cnty.*, 2017 WL 4922017, at *6, 2017 U.S. Dist.

LEXIS 180631, at *15–16 (E.D. Va. Oct. 31, 2017) (rejecting plaintiff's assumption of duty theory

because it would impose a duty on the defendant to "protect virtually the entire population of the

planet," and "[n]o Virginia case imposes a duty to such an enormous and amorphous class")).

Plaintiffs do not dispute that (1) Amazon never accessed or used Plaintiffs' data (*see* SUMF ¶¶ 4–

5, 10); (2) Amazon had no knowledge of Capital One's configurations ██████████████████

████████████████████████████████████████████    (*see* SUMF ¶¶ 20–30;

17

Amazon's Reply to SUMF ¶ 26); and (3) most Plaintiffs were unaware of AWS, and none had any interaction with AWS whatsoever (*see* SUMF ¶¶ 50–58). Additionally, Plaintiffs' argument that Amazon seeks to require that Plaintiffs demonstrate "subjective reliance" is wrong. Plaintiffs' lack of any awareness of AWS or its relationship with Capital One whatsoever makes it impossible for Amazon to have assumed a duty through representation.

The 12(b)(6) cases Plaintiffs cite are easily distinguishable. First, contrary to Plaintiffs' unsupported allegation, the evidence is undisputed that Amazon does not "profit off of the use of consumers' personal data." *See* Opp. at 29–30 (citing *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1325 (N.D. Ga. 2019)). Unlike Equifax's use of consumer data, Amazon does not obtain or use any consumer data from Capital One, nor does it use or monetize the data Capital One stores in its AWS accounts. *See* SUMF ¶¶ 4–5, 31; Reply to SUMF ¶ 31.

Second, Amazon did not "contractually agree[] to take reasonable measures to protect [plaintiffs'] personal financial information." *See* Opp. at 30 (citing *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, No. 8:19-md-02879, 2020 WL 6290670 (D. Md. Oct. 27, 2020) *reconsideration denied*, , 2021 WL 1516028 (D. Md. Apr. 16, 2021)). The *Marriott* court relies on allegations that Accenture, a third-party vendor to Marriott, (1) "knew that the database stored confidential information," (2) "was specifically tasked with identifying security threats to prevent disclosure of this sensitive information," and (3) "failed to identify those threats." 2020 WL 6290670, at *3. These allegations have little overlap with the record evidence here. The facts are undisputed that Amazon lacked knowledge of ██████████████████████████ ████████████████████████████████████████████████████████ *See* SUMF ¶¶ 4–5, 10, 18–30; Reply to SUMF ¶ 26.

Third, the facts and rationale of *Sackin v. TransPerfect Glob., Inc.* are inapplicable here. The *Sackin* court found that the employer who collected sensitive information from its employees had a duty to safeguard the information. 278 F. Supp. 3d 739, 744 (S.D.N.Y. 2017). The employer allegedly "did not train employees on data security; did not erect digital firewalls and did not maintain PII retention and destruction protocols," while it had "a corporate privacy policy and security manual that describes 'robust procedures designed to protect the PII with which it is entrusted.'" *Id.* Here, in stark contrast, Plaintiffs never entrusted their information to Amazon, and in accordance with its contractual arrangement, Amazon did not know what personal information Capital One stored or where Capital One stored it. *See* SUMF ¶¶ 29–30.

Plaintiffs' argument grounded in public policy equally fails. Plaintiffs' application of the rationale applied in *Sackin* is inapposite here given the factual discrepancies discussed above. *See* Opp. at 28–29 (citing *Sackin*, 278 F. Supp. 3d at 748). The law does not go so far as to hold a third party service provider liable for the secure storage of personal data when: (1) the third party provider never collected the personal information nor interacted with the owners of the personal information; (2) the third party provider never accessed, used for any purpose, or benefited in any way from the personal data; and (3) the third party provider was unaware that an account hacked by a third party criminal actor stored such data. To hold otherwise would undermine the clear intent expressed in the contracts of AWS and all of its customers that the customer configure their own environment, including the control of all security settings, and that AWS stay out of the customers' private environments. It would also undermine the well-established industry standard and defy common sense to impose on cloud service providers such as Amazon, Google, and Microsoft, the responsibility of securing its customers' accounts beyond securing their own underlying infrastructures.

19

### 3.    AWS Does Not Owe A Common Law Duty of Care to Plaintiffs.

Plaintiffs have come forward with *no* evidence to dispute the fact that Amazon had no common law duty of care toward Plaintiffs, with whom it had no relationship.  Once again, Plaintiffs can only rely on the Court's prior Order and their disproven allegations to argue that a common law duty exists here.  *See* Opp. at 31–32.  However, Plaintiffs can no longer rely on mere allegations to avoid dismissal.  In addition to their lack of evidentiary support, Plaintiffs' cited cases—*In re Equifax*, *In re Target*, *In re Premera Blue Cross*, and *Brush*—are all inapplicable, as they all concern the defendant companies' collection and direct use of personal information from their consumers or employees.  *See* Opp. at 32.  In all of these cases, the companies maintain privacy policies with representations to their consumers and employees regarding safeguarding their personal information.  These cases are inapplicable to Amazon, which, as a third-party provider, had no access to, or control over, Capital One's AWS accounts and their configurations.  Here, Plaintiffs have no evidence to controvert Amazon's Statement of Undisputed Facts, and therefore admit that Amazon never collected Plaintiffs' information, accessed it, nor used it.  *See* SUMF ¶¶ 4–5, 10–11, 50–58; Reply to SUMF ¶ 11.  Under these undisputed facts, there is no basis for a common law duty to protect Plaintiffs' personal information from theft by a criminal actor.  Indeed, dismissing negligence claims brought under Canadian law by Canadian consumers against Amazon concerning the same Cyber Incident, the Ontario Superior Court of Justice observed that the harm experienced by Capital One's account holders was not foreseeable to Amazon, particularly where there was no relationship whatsoever between AWS and the plaintiffs.  *See* Reply Ex. G at 47–50 (Reasons for Decision in *Del Guidice v. Thompson,* 2021 ONSC 5379 (Aug. 4, 2021)).

4.      **Plaintiffs Failed to Prove The Threshold Requirement of A Special Relationship.**

The Supreme Court of Virginia has "repeatedly stated" that the finding of a special relationship is a "threshold requirement" before "any duty can arise with regard to the conduct of third persons." *Terry*, 818 S.E.2d at 792 (citing cases); *see also id.* at 794–95 ("If we were to recognize that a duty to warn or protect against the danger of criminal assault by third persons could arise outside the context of a special relationship or an express undertaking, the exception would swallow the rule."). Here, Plaintiffs fail to dispute that Plaintiffs and Amazon have no relationship, and do not provide any factual basis for a legally recognized special relationship. SUMF ¶¶ 50–58. Absent a special relationship, there can be no basis for a duty of care.

5.      **The Economic Loss Rule Bars Plaintiffs' Claims Absent Privity of Contract.**

"Virginia law is clear that, absent privity of contract, the economic loss rule prevents a plaintiff from maintaining a negligence action against an individual to recover purely economic losses." *Crawford v. Deutsche Bank AG*, 244 F. Supp. 2d 615, 616–17 (E.D. Va. 2003) (dismissing tort claim against bank's agent where the plaintiff had no contractual privity with agent). Plaintiffs concede they have not alleged any contractual relationship with Amazon, or that Amazon had any contractual duty to them. Opp. at 35. And Plaintiffs do not refute that their claims are purely economic. *See* Dkt. No. 971, Second Amended Compl. ¶ 169 (alleging purely economic harms against Amazon including monetary loss, lost work time, lost value of PII, and other similar claims). For these reasons, Plaintiffs' claims are barred under the economic loss doctrine.[3]

---

[3] Ontario's Superior Court found that Canada's economic loss doctrine was an additional ground for dismissal of the Canadian plaintiffs' negligence claims against Amazon and Capital One, because "an overwhelming majority of the Class Members will not have any losses not even a pure economic loss and for those that suffer a pure economic loss, those losses are not compensable in negligence." *See* Reply Ex. G at 45–47.

Plaintiffs misconstrue the doctrine as inapplicable to this case, arguing that the rule "prohibits recovery for purely economic losses *arising out* of a contractual relationship." Opp. at 34. But this is incorrect. In Virginia, the economic loss doctrine stands for the proposition that a plaintiff will be precluded from pursuing economic damages in a negligence action where there is *no* privity of contract—as is already conceded here. *Beard Plumbing and Heating, Inc. v. Thompson Plastics, Inc.*, 152 F.3d 313, 316 (4th Cir. 1998) ("Virginia law is clear that, absent privity of contract, economic losses cannot be recovered in a negligence action"); *see also Redman v. Brush and Co.*, 111 F.3d 1174, 1182 (4th Cir. 1997) ("a plaintiff who is not in privity of contract with the defendant cannot maintain an action for negligence . . . based on purely economic losses"). For example, in *Stoney v. Franklin*, the court barred negligence claims brought by a home purchaser against companies that supplied their contractor with defective materials. The court concluded: "[u]nder Virginia law, these allegations do not state a viable cause of action. The common law does not recognize a negligence claim for purely economic damages against one not in contractual privity with the claimant." *Stoney v. Franklin*, 54 Va. Cir. 591, at *3 (2001). Similarly here, Plaintiffs' negligence claim must fail against Amazon, a company with which they admittedly have no contractual privity and where they only seek economic damages.

**B.    Plaintiffs Cannot Establish Proximate Causation.**

In an apparent ploy to pit Amazon and Capital One against one another, Plaintiffs contend that Amazon is "attempting to cast all the blame for the Breach solely on Capital One." Opp. at 1, 17. Not so. Amazon had identified the undisputed facts that the Cyber Incident resulted ██ ████████████████████████████████████████████████████████████ ████████████████████████████████████ Plaintiffs have come forward with no evidence to dispute these facts. ██████████████████████████████

███████████████████████████████████████████████████████████████████████.

SUMF ¶¶ 18–29, 37; Dkt. 1463 at 2–3, Capital One's SUMF ¶¶ 2, 6.

Plaintiffs resort to mischaracterizing isolated, inadmissible emails and instant message chats, some of which are between unidentified persons, speculating about the Cyber Incident or commenting on unrelated topics. First, Plaintiffs incorrectly contend that an "AWS engineer admitted that Thompson's intrusion resulted from a compromise of AWS's infrastructure." Opp. at 35. As discussed in response to Plaintiff' effort to dispute SUMF ¶ 36 above, Plaintiffs do not identify who the author of the instant message is. Moreover, it is clear from the message that the writer is basing his speculation on a public document describing the Cyber Incident. Finally, the writer does not state that the incident was a compromise of AWS's infrastructure, but rather, that it involved the cloud. *See* Reply to SUMF ¶ 36.

Second, Plaintiffs cite to a conversation between ████████████████████████████ ███████████████████████████████████████████████████████████████████████. Opp. at 35. Once again, Plaintiffs cite to an internal discussion days after the Cyber Incident by an individual who is not an officer and never deposed in this case. Moreover, the statement was the individual's speculation about the topic of a news reporter's question, not about the cause of the Cyber Incident. Most critically, ████████████████████████████████████████ ███████████ Reply Ex. B (Haken Oct. 2 Tr.) at 92:21–93:5 ████████████████████ ███████████████████████████████████████████████████████████████████████

███████. Thus, even the best evidence Plaintiffs put forth does not create a genuine issue of material fact as to whether Amazon's conduct was a proximate cause of Plaintiffs' injuries.

Finally, Plaintiffs misconstrue Virginia law regarding proximate cause. Plaintiffs argue that they may show "AWS's conduct is the proximate cause of their injuries, even if there are

several concurrent causes." Opp. at 36. But in the over one hundred-year-old case Plaintiffs cite for that proposition, *Carolina, C. & O. Ry. v. Hill*, 89 S.E. 902, 903 (Va. 1916), liability was permitted in part because "the acts of the defendants *alone* were sufficient to have produced the entire damage complained of." *Id.* (emphasis added). The doctrine set forth in *Carolina* states: "where there are several concurrent negligent causes, the effects of which are not separable . . . either of which is sufficient to produce the entire loss, all are jointly or severally liable for the entire loss." *Id.* Plaintiffs have produced no evidence demonstrating any actions by Amazon were the proximate cause of the breach, let alone that any actions by Amazon were the sole cause "sufficient to produce the entire loss." *Id.* Accordingly, the facts are undisputed that Amazon did not proximately cause the Cyber Incident.

## II.    PLAINTIFFS' UNJUST ENRICHMENT CLAIM LACKS ANY FACTUAL SUPPORT AND FAILS AS A MATTER OF LAW

### A.    Virginia Law Requires Direct Dealings for Unjust Enrichment.

#### 1.    Plaintiffs Did Not Convey A Benefit on Amazon.

Plaintiffs concede that they provided their personal information only to Capital One, not Amazon, without any direct dealings with Amazon. Opp. at 37. Plaintiffs do not dispute that the Representative Plaintiffs did not know about or consider AWS's cloud computing services when conferring their data to Capital One. *Id.* at 16; SUMF ¶¶ 50–58. Nor do Plaintiffs dispute that Amazon is contractually prohibited from accessing the data and applications Capital One chooses to store in the cloud. *Id.* at 3, ¶¶ 4–5. The undisputed facts reflect that Plaintiffs only directly dealt with Capital One, and Capital One separately dealt with Amazon. In light of these undisputed facts, Amazon is entitled to summary judgment on Plaintiffs' unjust enrichment claim.

Virginia unjust enrichment law requires at least direct dealings between the parties. *See Burch v. Whirlpool Corp.*, No. 1:17-CV-18, 2017 WL 7370988, at *7 (W.D. Mich. Sept. 28, 2017);

*Sky Cable, LLC v. Coley*, No. 5:11CV00048, 2013 WL 3517337, at *15 (W.D. Va. July 11, 2013) (Virginia unjust enrichment claim failed as a matter of law because there was "no evidence of any relationship" between plaintiff and defendant); *Seeman v. Oxfordshire, LLC*, 83 Va. Cir. 442 at *5 (2011) (dismissing homeowner's unjust enrichment claim against drywall manufacturers where there was no allegation that plaintiff and defendant "ever dealt directly with each other"). Plaintiffs' citations to New York and Iowa case law are irrelevant; Plaintiffs have conceded Virginia law controls. Opp. at 38.

While Plaintiffs cite *Burch* to argue that Virginia does not require proof of a direct benefit from the plaintiff to the defendant, they neglect to mention that Virginia recognizes unjust enrichment for an indirect benefit in only "limited circumstances." *Burch*, 2017 WL 7370988, at *7 (citing *Seeman*, 83 Va. Cir. 442 at *5). In *Burch*, there were direct dealings between the parties about an allegedly defective part manufactured by the defendant. During those dealings, the defendant directed the plaintiff to acquire replacement parts from a specified retailer. *Id.*[4] There was no analogous relationship between Amazon and plaintiffs here. Instead, as in *Seeman*, Amazon had no interactions whatsoever with Plaintiffs concerning their Capital One accounts or account applications or the data they provided to Capital One. *See Seeman*, 83 Va. Cir. 442 at *5.

The other Virginia case Plaintiffs cite also requires sufficient connection between the plaintiff and defendant to support a claim. *See Fed. Ins. Co. v. Smith*, 144 F. Supp. 2d 507, 522–25 (E.D. Va. 2001). In *Smith*, a widow was found liable for unjust enrichment for retaining the proceeds of her husband's insurance fraud. The court held that the widow was "plainly liable to

---

[4] The court in *Burch* nonetheless dismissed the unjust enrichment claim because the defendant paid for the value of its "enrichment" by providing replacement parts to the third-party vendors who sold the parts to the plaintiff. *Burch*, 2017 WL 7370988, at *7 (finding that the parties "did have contact, and that contact led directly to the sale of the defective [replacement] product").

make restitution" of the proceeds that "directly inured to defendant's benefit" as a result of the fraud. *Id.* at 524. Plaintiffs try to stretch that ruling into a broad third-party liability rule, but the "third party" in *Smith* was the wife of the fraudster and the "benefit" conferred was the funds stolen from the plaintiff. *Cf.* Opp. at 37–38. In other words, there was a direct connection between the plaintiff, the defendant, and the benefit conferred. *Smith*, 144 F. Supp. 2d at 522–25. Applying Virginia law here, the lack of any direct dealing between Plaintiffs and Amazon defeats Plaintiffs' unjust enrichment claim.

> **2.    Plaintiffs Fail to Show That Amazon's Benefit from Providing Cloud Computing Services to Capital One Is Related to Their Detriment.**

Plaintiffs also cannot show that "[their] detriment and [Amazon's] benefit are related and flow from the challenged conduct." *See* Opp. at 38 (quoting *In re TFT–LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179, 1189–90 (N.D. Cal. 2009)). First, as discussed extensively in Capital One's motion for summary judgment, the evidence is undisputed that Plaintiffs suffered no cognizable injury whatsoever. *See* Dkt. 1463 at 13–21. Second, there is no equitable basis for

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████.

The primary authority Plaintiffs cite holds that Plaintiffs' injury must flow from Amazon's conduct. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d at 1189–90 (motion to dismiss); *In re TFT–LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2011 WL 4501223 (N.D. Cal. Sept. 28, 2011) (summary judgment). In that case, a class of consumers who purchased flat panel screens sued electronics manufacturers for price fixing. While the Court did not apply Virginia law, it found that numerous courts have found unjust enrichment claims to fail where there are attenuated, indirect relationships between the plaintiffs' injury and the defendants' gain and where "the defendant's benefit did not originate with the plaintiff." *In re TFT–LCD (Flat*

*Panel) Antitrust Litig.*, 2011 WL 4501223 at *7 (citing cases). Such is the case here. Amazon's gain—profits earned from providing a range of cloud computing services to Capital One—originate from Capital One, not Plaintiffs. *See* Opp. at 3, ¶¶ 4–5. In *In re TFT-LCD (Flat Panel) Antitrust Litig.*, there were "no intervening events that disrupt the flow of money from plaintiffs to defendants" from the plaintiffs' purchase of flat panels. 2011 WL 4501223 at *8. Here, on the other hand, there is only the most "tenuous," "attenuated" relation between ███████████████ █████ from providing numerous services to Capital One and the "injury" to Plaintiffs.

**B.    The Facts Do Not Support Plaintiffs' Ungrounded Legal Theory That They Are Entitled to ████████████████████████████████ ████████████.**

There is no evidence that the storage of Plaintiffs' data in Capital One's ███████████ account provided a benefit to Amazon, ██████████████████████████. Plaintiffs' vague reference to "the data industry" does not change that. Opp. at 39. It is undisputed that AWS does not sell Capital One's customer's data or use it for its own purposes; AWS does not even have visibility into Capital One's customer data. Mot. at 34.

Plaintiffs' attempt to reframe their groundless legal theory as a burden of proof issue cannot save it. Plaintiffs' inability to find any nexus between their claimed harm and Amazon's earnings from providing services to Capital One speaks more to the weakness of their claim than lack of evidence. There is no dispute regarding the amount of data impacted. *See* Mot. at 10, SUMF ¶ 33; Opp. at 10. All the evidence Amazon's rebuttal expert, W. Christopher Bakewell, relied on to propose alternative calculations was also available to Plaintiffs, including the number of Capital One accounts, the percentage of data impacted, the number of impacted services, and many other variables. *See* Dkt. 1540-2 (Rebuttal Expert Report of W. Christopher Bakewell Regarding Unjust Enrichment) ¶¶ 67–81. There is also no dispute that Amazon did not know of or reasonably expect to pay Plaintiffs for their data, or that Amazon accepted any benefit paid by Capital One without

27

providing services in return. *See, e.g., T. Musgrove Constr. Co. v. Young*, 840 S.E.2d 337, 341 (Va. 2020).[5]  Plaintiffs' claim fails as a matter of law.

## III.    AMAZON'S MOTION FOR SUMMARY JUDGEMENT AS TO PLAINTIFFS' STATE LAW STATUTORY CLAIMS SHOULD BE GRANTED

Amazon is entitled to summary judgment on Plaintiffs' state law statutory claims because there is no evidence that the Plaintiffs suffered a cognizable injury resulting from an unfair or deceptive business practice by AWS.  Because Plaintiffs cannot refute their lack of reliance on any representation or omission from AWS regarding the security of their personal information, Plaintiffs' Opposition attempts to reframe the basis for their state statutory claims to exclusively argue that AWS's business practice *itself* violated California's UCL, Florida's DUTPA, New York's GBL, and Washington's CPA.  *See* Opp. at 45.  In doing so, Plaintiffs abandon their previous allegations of misrepresentations and/or omission by AWS.[6]  Plaintiffs, however, not only lack evidence to support their claim that AWS inadequately maintained their data security (the alleged unfair business practice), but they fail to establish causation or dispute that they suffered cognizable injury resulting from AWS's alleged unfair practice.

First, Plaintiffs are incorrect that they need not prove a misleading representation to state a claim under GBL § 349.  A necessary element of a GBL § 349 claim is that the challenged act or practice is "misleading in a material way." *LaCourte v. JP Morgan Chase & Co.*, 2013 WL 4830935, at *10 (S.D.N.Y. Sept. 4, 2013), *aff'd sub nom. Ritchie v. Taylor*, 701 F. App'x 45 (2d Cir. 2017).  The sole GBL § 349 case Plaintiffs cite does not hold differently.  Opp. at 45 (citing

---

[5] Even the case Plaintiffs cite to support their all-or-nothing theory holds that defendants must only disgorge the value of the impacted property—in that case, an easement—rather than all of defendant's gained profits. *Raven Red Ash Coal Co. v. Ball*, 39 S.E.2d 231, 239 (Va. 1946).
[6] Plaintiffs concede that they may not proceed to trial on their claims under the Virginia and Washington data breach notification statutes (Counts 13 and 14); and they do not oppose Amazon's motion for summary judgment as to their CLRA or DTPA claims (Counts 9 and 12).

*Weiss v. Equifax, Inc.*, 20-CV-1460 (BMC), 2020 WL 3840981, at *3 (E.D.N.Y. July 8, 2020)).  In *Weiss*, the Court denied a Rule 12(b)(6) motion to dismiss a GBL § 349 claim by an individual whose personal information was stolen in a breach of a credit bureau.  The Court found that the plaintiff had adequately alleged a GBL § 349 claim because the plaintiff alleged Equifax had "(4) misrepresented to plaintiff that it would protect his information, (5) misled and concealed from him that defendants in fact did not secure his information from the risks pertaining to the hack." *Weiss*, 2020 WL 3840981, at *3.  Here, the facts are undisputed that New York Plaintiff Gershen was not exposed to any misrepresentations by Amazon.  SUMF ¶ 54; Opp. at 16.

Second, each of the cases cited by Plaintiffs confirms that Plaintiffs' state statutory claims fail without *proof* of causation and actual economic injury.  Each of those cases was decided at the Rule 12(b)(6) phase where the court found that the plaintiffs had adequately *alleged* an economic injury caused by the defendant's acts or statements.  *See, e.g., In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 985 (N.D. Cal. 2016) (denying motion to dismiss because Plaintiffs alleged they overpaid for their health insurance premiums when they relied on the insurer's representations about data security practices that it failed to deliver) (citing *In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1224 (N.D. Cal.2014) (finding standing under the UCL because "[f]our of the six [p]laintiffs allege they personally spent more on Adobe products than they would had they known Adobe was not providing the reasonable security Adobe represented it was providing.")); *Burrows v. Purchasing Power, LLC*, No. 1:12-CV-22800-UU, 2012 WL 9391827, at *5 (S.D. Fla. Oct. 18, 2012) (FDUTPA requires causation and actual damages); *Weiss*, 2020 WL 3840981, at *3 (denying motion to dismiss where plaintiff adequately alleged defendant's actions and representations caused  pecuniary harm); and *Veridian Credit Union v. Eddie Bauer, LLC*, 295 F. Supp. 3d 1140, 1161 (W.D. Wash. 2017) (CPA claim requires proof of

injury to plaintiff's business or property and causation) (internal citation omitted).  In each of these cases, the plaintiffs alleged they had either paid more for products or services based on misrepresentations or that they suffered an actual, pecuniary injury.  Finally, Plaintiffs' FDUTPA claim fails for the additional reason that under the FDUTPA, a plaintiff may recover "economic damages related solely to a product or service purchased in a consumer transaction infected with unfair or deceptive trade practices or acts." *Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.*, 693 So. 2d 602, 606 (Fla. Dist. Ct. App. 1997) (emphasis added).  Plaintiffs have not purchased anything from AWS in a consumer transaction.

As established by Capital One in its motion for summary judgment and motion to dismiss for lack of standing, there is no evidence that the Plaintiffs were in fact harmed as a result of the data breach.  Dkts. 1388 and 1463.  Further, there is no nexus between AWS's alleged unfair business practice and the data breach itself.  The facts are undisputed that the breach was caused by a unique combination of configurations by Capital One.  SUMF ¶¶ 18–29.

For these reasons, in addition to those set forth in AWS's moving papers, each of the Plaintiffs' state law statutory claims against AWS are unsupported and fail as a matter of law.

## IV.    AMAZON IS ENTITLED TO SMMARY JUDGMENT ON PLAINTIFFS' DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF CLAIMS

Plaintiffs' Opposition confirms that these claims are entirely derivative of their negligence claims.  Because those claims are unsupported, and because Plaintiffs have not come forward with any evidence of imminent risk to their assets, summary judgment should be entered for AWS.

## CONCLUSION

For the reasons stated above, and in Amazon's opening brief, Amazon respectfully requests that the Court grant summary judgment to Amazon on all of Plaintiffs' remaining claims.

Dated:    August 23, 2021                Respectfully submitted,

/s/ *Robert R. Vieth*

Robert R. Vieth, Esq. (VSB No. 24304)
**HIRSCHLER FLEISCHER, PC**
8270 Greensboro Drive, Suite 700
Tysons Corner, VA  22102
Telephone:  (703) 584-8366
Facsimile:  (703) 584-8901
Email:   rvieth@hirschlerlaw.com

*Local counsel for Defendants Amazon.com, Inc.
and Amazon Web Services, Inc.*

Tyler G. Newby (admitted *pro hac vice*)
Brian Buckley (admitted *pro hac vice*)
Laurence F. Pulgram (admitted *pro hac vice*)
Jedediah Wakefield (admitted *pro hac vice*)
Vincent Barredo (admitted *pro hac vice*)
Andrew M. Lewis (admitted *pro hac vice*)
Janie Y. Miller (admitted *pro hac vice*)
Meghan E. Fenzel (admitted *pro hac vice*)
Sarah V. Lightstone (admitted *pro hac vice*)
Rina Plotkin (admitted *pro hac vice*)
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone: (415) 875-2300
Facsimile:  (415) 281-1350
Email:      tnewby@fenwick.com
              bbuckley@fenwick.com
              lpulgram@fenwick.com
              jwakefield@fenwick.com
              vbarredo@fenwick.com
              alewis@fenwick.com
              jmiller@fenwick.com
              mfenzel@fenwick.com
              slightstone@fenwick.com
              rplotkin@fenwick.com

*Counsel for Defendants Amazon.com, Inc. and
Amazon Web Services, Inc.*

31

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 23, 2021 I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

<u>s/ *Robert R. Vieth*</u>
Robert R. Vieth, Esq. (VSB No. 24304)
**HIRSCHLER FLEISCHER, PC**
8270 Greensboro Drive, Suite 700
Tysons Corner, VA  22102
Telephone:      (703) 584-8366
Facsimile:      (703) 584-8901
Email:            rvieth@hirschlerlaw.com

*Local counsel for Defendants Amazon.com, Inc. and Amazon Web Services, Inc.*