

TIMELY THIRD PARTY CORRECTION NOTICE DULY SERVED | FULL REDRESS CLAIM VALUE : $25,000.

CA40055182: C/O CAPITAL ONE SETTLEMENTS ADMINISTRATOR.

ATTN : HON. ANTHONY J. TRENGA.,

U.S. District Court for the Eastern District of Virginia, Alexandria Division.

# 401 COURTHOUSE SQ.,

## COURTROOM 701; ALEXANDRIA, V.A. 22314.

The Commonwealth of Virginia, United States.

| (TEL) : + 1 . 703 . 299 . . 2113 | ( FAX ) : + 1 . 703 . 299 . 2203 | D.O.I. TUESDAY, 10/31/2023, (A.D./M.X.) ; 1445, (A.H.).

DEAR YOUR HONOR ;

AN OVERVIEW OF THE REPORTING RESOLUTION IN PROGRESS — KEY PARTIES.

May it please the court to ACKNOWLEDGE this point of input at re-visitation, relative to the advisory that the Court has entertained to counsel thus far in connection to the complex Summer 2019, (A.D./M.X.) breach incident involving the **CapitalOne** data compromise, whose culminations would continue to seem to be ongoing, while elements of cooperation and detailing seem simultaneously less than forthcoming and consistent from the primary platform of responsibility, which, amongst other things, has deliberately

**concealed** from the very on-start of this incidence, the subsequent existence of the CLASS ACTION SUIT, which the institution was found to have originally hidden away from this affected class member and dutiful class registrant ( thereafter registered at self-initiative ) , despite knowing that the data breach very particularly affected the operations of this individual account ending in 6174 .

### CAPITAL ONE'S DEFICIENT USES OF " VERIFICATION " AS A MECHANISM OF REDRESS.

Further, in the claim of " securing the account ", CAPITALONE proceeded to indefinitely block the client's own access to the responsible uses of his personal account ending with 6174 to which no debts continue to since remain outstanding. The institution's only defense in this regard being " verification issues " , which, however, it has robotically sustained in precisely such a format, as that defies consultation, owing to technological mismatches and deficiencies which the institution has virtually refused to rectify or suitably amend ever since.

### CAPITAL ONE'S DEFICIENT REFUSAL TO PROCESS TIMELY MAILING ADDRESS UPDATES.

In relation to both the 6174 and 0368 accounts, furthermore, the financial institution has refused to rectify certain elementary details for years on end, as

specific to the designation of accurate MAILING ADDRESSES, preventing postally mediated billing statements from actually arriving at the client's (2) distinct legal addresses for over nearly the entire duration of this controversy, availing only ' CALL – IN PHONE BILLING ' as its medium of incidental resolutions in the applicable areas of shared commerce. This chronic disservice ultimately lead to the sole efficiency of " informal reporting " of costs incurred against the maximum settlement CLAIM value, through a standardization by a per-diem rate, as opposed to an audited and identified disclosure of financial statements, which could not be directly brought to bear against the CLAIM at directive, through the mechanistic oversight gap insistently perpetuated by the entity.

THE CREATION OF AN OVER-BROAD " PERSONAL JURISDICTION " THAT ACKNOWLEDGE VAST PRIVATE-PUBLIC SERVICING GAPS AT THE ROOT OF MACRO INFLATIONS, FURTHER MICRO-TRANSPOSED UPON THE PRIVATE INDIVIDUAL AS A FALSE ABSOLUTE, AND A DISPROPORTIONATE MANAGEMENT BURDEN, AND AT THE CLIENT'S LEGAL EXPENSE.

I, the plaintiff in the class membership, have since assumed direct and comprehensive regulatory responsibilities for ALL these compounded deficiencies created primarily by CAPITALONE leadership, by following through to the **objective** point of awareness, to the extent that my very inclusion in

the suit, itself, required extensive self-initiated due diligences involving manually ordering relations with the original third party privately managing the scope of organized action, with whom I have had to self-report the account, while rigorously meeting full timeliness and time contingent qualifications relative to the narrow deadlines set forth by the suit, and its secondary CLAIMS MANAGEMENT channels. These deficiencies, therefore, can not be " written off " at the afflicted party's expense, by either the court's non-objective and poorly informed judgments, <u>or</u> at the insistence of CAPITALONE leadership, being that they are not a charities institution, but a monetizing, high interest charging for-profit commercial enterprise, whose own oversight debts substantially account into these recursive client expenditures at behest of both the compounded oversight against both private and public created wrongs.

MAXIMUM CLAIM OWNERSHIP AS <u>IRREFUTABLE</u>, SUBSTANTIVE, AND CONSISTENT — ADDITIONAL COSTS SURCHARGE TO BE LAWFUL, IF WRONGFUL DISCOUNTS ARE ATTEMPTED AGAINST THE FULL VALUE TO THE NON-DEFICIENT CLAIM.

The maximum claim of $25,000, must, therefore, remain **non-deficient** as well as affirmatively **non-forfeited** to the just recompense, while the administration over any challenges against the full and complete measure of

its objective claim administration, and as related to these divergent and clearly identified issues, can now be securely assessed <u>an additional</u> ( 40% ) rate of discharge, <u>against</u> CAPITALONE'S or any other party's bad-faith attempt at inducing a re-deprivation of these EARNED restitutions, essentially against the original uses of one's own private monies, which has been pouring into the coffers of the mismanaged private financial institution in a consistent stream of timely recompense against any and all responsible uses made, while the waste of these monies are relentlessly and abusively simultaneously exploited by corresponding public sector " agent provocateur " IDENTITY THEFTS " pandemic government " commissioners, involving the likes of the U.S. State Department, against whom a formal U.S.A.I.D. O.I.G. reportage documentation is herein within incorporated for your honor's candid oversight, peripherally accounting for, and providing a glimpse and sampling of the public-side created wrongs, jointly with financed receipts of so-called " Official Identity " of this U.S. Citizen, through the orifice of a patently abusive monopolistic **delegated** public power. Indeed, we now competently retain oversight actions on this basis with several jurisdictions, in the form of legal police reports and affidavits, attorney general filed cases, <u>and a subsequent and final Superior Court of Guam mediated INFORMATION VERIFICATION related name</u>

change order intended to FORMALIZE to the implicitly contested attributes foregoing otherwise undeniable legal facts, which many of these bad-faith public actors and agencies have been chronically and abusively utilizing as a straw-man mechanism in service to public exploitation through entitlements fraud, and by endlessly filibustering and evading foundational corrective obligations which are otherwise germane to them, and in so doing emulating CAPITALONE'S original underlying defects in administration, which appear to arise in the PRIVATE sector domain of behavioral-economics.

**PUBLIC – PRIVATE DEFICIENCY DYAD – AS A STATEMENT OF REFRAIN.**

May the Court take due notice also, that from the very onset of this ordeal, not only has the private financial institution at consideration chosen to act against its own client's interests, by relying solely upon **deficient** technological proxies ( which often do not work owing to technical syncopation deficiencies ) to utilize automation to impersonally deflect and disservice the full and true responsibilities and burdens of accounts authentication and verification; this " **systemic deficiency** ", to put it in a recital of due refrain, has consistently been further exploited by parallel deceits and recorded miscarriages by a prevalent public plutocracy, engaged in a lengthy and parallel form of historical technological subversions on the

basis of extensive TORTFEASOR MISCONDUCT and derived misfeasances, whose exponential abuses of both American and the global economy have since broadly attained to such extremes since MARCH 2020, (A.D./M.X.), as that they currently defy any instantaneous public assessment as to their compounded costs relative to root deficiencies towards whose items and peculiarities this reportage otherwise substantially hints.

**CAPITALONE <u>NOT</u> INDEMNIFIED AGAINST LOSSES THAT ITS OWN SEVERAL AND WITTING CONTRIBUTORY NEGLIGENCES HAS AMPLIFIED, AUGMENTED, AND APPROPRIATED.**

CAPITALONE has assuredly <u>not</u> borne those heaving costs, which, co-jointly with the vicarious and impersonal abuses of the monolithic public sector, <u>this private client</u> has <u>exclusively</u> borne through a vast and unprecedented compounded burden of holistically " wrestling with " multi-institution, agencies, and departmental regulations, as though this was the client's very own normative full-time job, while generously remunerated private sector <u>employees</u> such as CAPITALONE'S EXECUTIVE V.P. MS. AMY DAVIS and others have <u>made absolutely no attempt</u> at <u>merely responding</u> to formally structured communications, intended to otherwise assist the institution in <u>merely rectifying</u> informational value such as the accurate mailing address, and specifically for the purposes of receiving mailed-in financial statements, while

CAPITALONE'S own " security obstructions " seem to leave ONLINE access indefinitely in limbo through arbitrary verification proxies, whose mechanisms they will not change, nor accept ' in situ ', and equally valid scope of manually transmitted LEGAL documentation, against which no law of prohibition exists one earth, including those eloquent preambles so technically well drafted by prevalent institutional reporting best practices.

<u>WHO BEARS THE HIGHER BURDEN PROOF?</u> — MANUFACTURER'S LIABILITY TO BE CLINICALLY, AND CATEGORICALLY APPLIED TO PUBLIC AND PRIVATE TORTS ON <u>HORIZONTAL</u> ACCOUNTABILITY ISSUES, AND RELATIVE TO <u>NON – REPRESENTED</u> THIRD PARTIES.

In actual fact, CAPITALONE from the very on-start of the data compromise has been served a comprehensive AFFIDAVIT form account of these happenings, acknowledgement of relevant POLICE REPORTS, reportage to Attorney General frameworks, and detailing of governmental transactions by whose aggregate reliance the institution was requested to restore formal accessibility to the affected 6174 account, while rectifying tactical data updates on the basis of tangible and manually promulgated verification modalities. CAPITALONE, instead of actually respecting the commerce which it regularly and consistently monetizes, has seen it prudent to robotize vast chunks of

clientele interactions with a studied disregard of particulars, committed itself to the wholesale reliance on outsourced support services in foreign lands programmed and conditioned to this routinized ethos through COMPLIANCE programming which tend to blindly reenforce the deficiencies, thereby compounding real-costs at iteration, and creating a " controversy currency " of inflation with bad macro externality results, while the routinized foreign employees are not themselves granted any legally appropriate frames of reference as that which would allow them to prepare case files correctly, and on the basis of legally diversified frame of reference inputs.

**THE <u>FINAL EXPLOITATION</u> OF <u>THE BREACH</u> BY PUBLIC TORTFEASORS AND AGENCIES.**

These are actions which, in their <u>final account</u>, have contributed to <u>vastly</u> multiplied redundancies and corrective procedures against the torts routinely committed and wholeheartedly and willfully re-perpetrated by diverse predatory publicans, under the ruse and pretense of providing actually non-existent, and <u>non-obtainable</u> " **governmental services** ", while creating a jointly compounding and seemingly exponential parallel costs structure, whose net cost of management would, as estimated in prior reporting, be liable to exact some <u>three times</u> above the secure maximum claim value awarded within the ceiling standard of this class at its $25,000 final award

assessment, a fact, that this aggrieved plaintiff shall be prompt to prove to his honor's court solely by having CAPITALONE release the aggregated financial statements, which clinically substantiate to attest to a transparent PORTION of these incurred costs, across the duration of the controversy induced forbearance, at already some 4.8 years ' in continuum ' ( since the incident of THE BREACH coinciding in the identical time frame with the public side IDENTITY THEFT, as perpetrated by the responsible U.S. Consular Clerics, and well accounted to the receipts as de facto public misappropriations ) .

FINAL NOTICE OF NON-CONCESSION OF EARNED REDRESS, IN A SECURE CLAIM.

Therefore, and with all due respect, this aggrieved plaintiff hereby LEGALLY REFUSES to concede to any settlement less than the full attested EARNED REDRESS claim value of $25,000 , any exaggerated exacerbations and excess administration against whose FINAL RECEIPT, shall competently assess an ADDITIONAL 40% oversight surcharge, as payable equally, by THE PARTY AT FINAL RESPONSIBILITY.     Respectfully;

*[signature]*

MR. ALEXANDER K. RAI, M.S.M.A., SUI IURIS, 6174, AND 0368 ACCOUNTS.

P.O. BOX 10210, TAMUNING, GUAM 96931-0210 ; THE UNITED STATES OF AMERICA.

( TEL ) : + 1 . 928 . 485 . 4509 . | ( E ) : ALEXANDER.IN.GUAM@GMAIL.COM.